FILED

JAN 1 6 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

'08 CV 0104 JAH NLS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man, | No. CV 07-1844-PHX-JAT |
| Plaintiff, | |
| vs. | **ORDER GRANTING TRANSFER TO THE SOUTHERN DISTRICT OF CALIFORNIA** |
| Libby Rauch, a single woman, | |
| Defendant. | |

The Court having considered the Joint Motion to transfer this matter to the Southern District of California pursuant to 28 U.S.C. § 1404(a) (Doc. #21), and good cause appearing therefor,

IT IS ORDERED granting the Motion and transferring the above captioned and numbered action to the United States District Court for the Southern District of California (as a result, the Rule 16 conference is vacated).

Dated this 3rd day of January, 2008.

James A. Teilborg
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
SANDRA DAY O'CONNOR U.S. COURTHOUSE
401 W. Washington St., SPC1 Suite 130
Phoenix, AZ 85003-2118


Clerk of Court
U.S. District Court Southern District of California
4290 Edward J. Schwartz United States Courthouse
940 Front Street
San Diego, CA 92101

Re: CV 07-1844-PHX-JAT
    Russell Piccoli v. Libby Rauch

Dear Clerk:

Pursuant to the order of this court entered Jan 3, 2008, the above case is being transferred
to your court for all further proceedings. Enclosed is a certified copy of the docket sheet.
This entire action is electronically filed and available on PACER:

Please acknowledge receipt of the case, indicate your district's case number on the enclosed
copy of this letter and return the copy to this office.

Dated this 14th day of January, 2008

                                        Sincerely,

                                        Richard H. Weare
                                        Clerk of Court/DCE


                                        By:  s/ D. Taylor
                                            Deputy Clerk


Enclosures
cc: All counsel

Receipt is acknowledged of the documents described herein.
Case Number:_____


                                        Deputy Clerk

25MAG, CLOSED, STD

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CIVIL DOCKET FOR CASE #: 2:07-cv-01844-JAT

Piccoli v. Rauch
Assigned to: Judge James A Teilborg
Case in other court: Maricopa County Superior Court, CV2007-015784
Cause: 28:1441 Petition For Removal--Other Contract

Date Filed: 09/26/2007
Date Terminated: 01/03/2008
Jury Demand: Defendant
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Russell Piccoli**
*a single man*

represented by **Russell Piccoli**
Mariscal Weeks McIntyre & Friedlander PA
2901 N Central Ave
Ste 200
Phoenix, AZ 85012-2705
602-285-5000
Fax: 602-285-5100
Email: russ.piccoli@mwmf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C Lincoln Combs**
Gallagher & Kennedy PA
2575 E Camelback Rd
Ste 1100
Phoenix, AZ 85016-9225
602-530-8000
Fax: 602-530-8500
Email: lincoln.combs@gknet.com

V.

**Defendant**

**Libby Rauch**
*a single woman*

represented by **C Lincoln Combs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark M Deatherage**
Gallagher & Kennedy PA
2575 E Camelback Rd
Ste 1100
Phoenix, AZ 85016-9225
602-530-8335
Fax: 602-530-8500
Email: mmd@gknet.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Libby Rauch**

represented by **C Lincoln Combs**

*a single woman* (See above for address)

V.

**Counter Defendant**

**Russell Piccoli**
*a single man*

represented by **Russell Piccoli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C Lincoln Combs**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/26/2007 | 1 | NOTICE OF REMOVAL from Maricopa County Superior Court, case number cv2007-015784 Filing fee received: $ 350.00, receipt number 1471773, filed by Libby Rauch. (Attachments: # 1 Civil Cover Sheet # 2 Exhibit to Notice of Removal# 3 Supplement cover sheet)(Combs, C) (Entered: 09/26/2007) |
| 09/26/2007 | 2 | Notice re Rule 37 Notification by Libby Rauch re 1 Notice of Removal, (Combs, C) (Entered: 09/26/2007) |
| 09/26/2007 | | This case has been assigned to the Honorable Stephen M. McNamee. All future pleadings or documents should bear the correct case number: CV07-01844-PHX-SMM. (entered by HIH) (Entered: 09/27/2007) |
| 09/26/2007 | | *****State Court record received 9/26/2007*****SUMMONS Returned Executed by Russell Piccoli. Libby Rauch served on 8/29/2007.*****docketed in U.S. District Court on 9/26/2007 for case management purposes.***** (HIH) (Entered: 09/27/2007) |
| 09/27/2007 | 3 | Miscellaneous Document: Notice of Removal letter from USDC, District of Arizona (Attachments: # 1 Notice of Availability form)(HIH) (Entered: 09/27/2007) |
| 10/03/2007 | 4 | ANSWER to Complaint by Libby Rauch.(Deatherage, Mark) (Entered: 10/03/2007) |
| 10/05/2007 | 5 | ORDER Scheduling Conference set for 1/7/2008 10:00 AM in Courtroom 605, 401 West Washington Street, Phoenix, AZ 85003 before Judge Stephen M McNamee.. Signed by Judge Stephen M McNamee on 10/5/2007. IT IS FURTHER ORDERED that the Clerk of the Court send copies of this Order to all counsel of record and to all parties, if any, appearing in propria persona.(TCA, ) (Entered: 10/05/2007) |
| 10/10/2007 | 6 | ORDER that matter is reassigned by random lot to Judge Earl H. Carroll.All future pleadings and papers submitted for filing shall bear the following complete case number: CV 07-1844-PHX-EHC. Judge Earl H Carroll added. Judge Stephen M McNamee no longer assigned to case.. Signed by Judge Stephen M McNamee on 10/10/07. (DMT, ) (Entered: 10/10/2007) |
| 10/11/2007 | 7 | ORDER REASSIGNING CASE. That the undersigned hereby recuses himself from further participation in the above-entitled case and the case is reassigned to Magistrate Judge Edward C. Voss by random draw. Future pleadings filed in this case shall bear the new case number: CIV 07-1844-PHX-ECV. Signed by Judge Earl H Carroll on 10/10/07. (Attachments: # 1 Instructions# 2 Consent Form)(MAP) (Entered: 10/11/2007) |
| 10/11/2007 | | Magistrate Election Form Deadline (MAP) (Entered: 10/11/2007) |
| 10/16/2007 | 8 | ORDER REASSIGNING CASE. Judge Voss having recused,and directing the Clerk of the Court to reassign this case to another judge. By random draw, case reassigned to Judge James A Teilborg for all further proceedings. Judge Edward C Voss no longer assigned to case. Signed by Judge Edward C Voss on 10/15/07. (Attachments: # 1 Reassignment letter)(DMT, ) (Entered: |

| | | |
|---|---|---|
| | | 10/16/2007) |
| 10/16/2007 | 9 | STANDARD TRACK ORDER. Signed by Judge James A Teilborg on 10/16/07. (TLB, ) (Entered: 10/16/2007) |
| 10/16/2007 | 10 | ORDER - Rule 16 Scheduling Conference reset from 1/7/2008 to Monday 12/10/2007 at 11:30 AM before Judge James A Teilborg. Signed by Judge James A Teilborg on 10/16/07. (TLB, ) (Entered: 10/16/2007) |
| 10/23/2007 | 11 | STIPULATION *for Settlement Conference* by Libby Rauch. (Attachments: # 1 Text of Proposed Order)(Combs, C) (Entered: 10/23/2007) |
| 10/24/2007 | 12 | ORDER (TEXT-ONLY) - IT IS ORDERED that the stipulation for settlement conference (Doc. #11) is granted as follows: the Clerk of the Court has, by random draw, selected Magistrate Judge David Duncan to conduct a settlement conference. This case is referred to Judge Duncan for purposes of conducting this conference. The parties shall jointly contact Judge Duncan's chambers (at 602-322-7630) to schedule a time for the settlement conference. IT IS FURTHER ORDERED that all other relief requested in the stipulation is denied due to the parties failure to submit a proposed form of order to the chambers' email address as required by the administrative policies and procedures manual governing CM/ECF. Entered by Deputy Clerk for James A Teilborg on 10/24/07. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (TLB, ) (Entered: 10/24/2007) |
| 10/31/2007 | 13 | STIPULATION *(Joint) for Settlement Conference* by Russell Piccoli, Libby Rauch. (Attachments: # 1 Text of Proposed Order)(Combs, C) (Entered: 10/31/2007) |
| 11/01/2007 | 14 | ORDER Settlement Conference set for 12/10/2007 01:30 PM before Magistrate Judge David K Duncan.. Signed by Judge David K Duncan on 10/31/07. (DMT, ) (Entered: 11/01/2007) |
| 11/01/2007 | 15 | ORDER re 13 STIPULATION - that the Defendants time to file an amended responsive pleading without leave of Court pursuant to Federal Rule of Civil Procedure 15(a) is extended to December 21, 2007. That if the case is not resolved at the Settlement Conference, by January 2, 2008, the parties shall move to transfer venue of this case to the Southern District of California, pursuant to 28 U.S.C. § 1404(a), as the more appropriate venue for convenience of the parties and witnesses and in the interests of justice.. Signed by Judge James A Teilborg on 11/1/07. (DMT, ) (Entered: 11/01/2007) |
| 11/28/2007 | 16 | STIPULATION *(Joint) to Vacate Rule 16 Scheduling Conference* by Russell Piccoli, Libby Rauch. (Attachments: # 1 Text of Proposed Order)(Combs, C) (Entered: 11/28/2007) |
| 11/29/2007 | 17 | ORDER re 16 STIPULATION (Joint) to Vacate Rule 16 Scheduling Conference - Vacating the Rule 16 Scheduling conference set for 12/10/07.. Signed by Judge James A Teilborg on 11/29/07. (DMT, ) (Entered: 11/29/2007) |
| 12/10/2007 | 18 | Minute Entry. Proceedings held before Magistrate Judge David K Duncan: Settlement Conference held on 12/10/2007. Settlement not reached. (DMT, ) (Entered: 12/12/2007) |
| 12/21/2007 | 19 | AMENDED ANSWER to *Plaintiff's August 28, 2007 Complaint and*, COUNTERCLAIM against Russell Piccoli by Libby Rauch. (Combs, C) (Entered: 12/21/2007) |
| 01/02/2008 | 20 | ORDER - Rule 16 Scheduling Conference set for 2/25/2008 at 10:00 AM before Judge James A Teilborg. Signed by Judge James A Teilborg on 1/2/08. (TLB, ) (Entered: 01/02/2008) |
| 01/02/2008 | 21 | Joint MOTION to Change Venue/Transfer Case to Southern District of California by Russell Piccoli, Libby Rauch. (Attachments: # 1 Text of Proposed Order)(Combs, C) (Entered: 01/02/2008) |
| 01/03/2008 | 22 | ORDER granting 21 Motion to Change Venue/Transfer Case to the United States District Court for the Southern District of California (as a result, the Rule 16 conference is vacated).. Signed by Judge James A Teilborg on 1/3/08.(DMT, ) (Entered: 01/03/2008) |
| 01/14/2008 | | Case transferred to U.S. District Court Southern District of CA. Certified copy of docket sent. Entire action is electronically filed and availble on PACER. (DMT, ) (Entered: 01/14/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/14/2008 10:41:14 | | | |
| **PACER Login:** | us4935 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:07-cv-01844-JAT |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

I hereby attest and certify on  *1-14-08*
that the foregoing document is a full, true and correct
copy of the original on file in my office and in my custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF ARIZONA

By____*D. Taylor*_____ Deputy

1  Mark Deatherage (010208)
   C. Lincoln Combs (#025080)
2  GALLAGHER & KENNEDY, P.A.
   2575 East Camelback Road
3  Phoenix, Arizona 85016
   Telephone: (602) 530-8000
4  Facsimile: (602) 530-8500
   E-mail: mmd@gknet.com
5  E-mail: Lincoln.combs@gknet.com

6  Attorneys for Defendant Rauch

7              IN THE UNITED STATES DISTRICT COURT

8               FOR THE DISTRICT OF ARIZONA

9

10  Russell Piccoli, a single man,          No. _____

11              Plaintiff,
                                            **NOTICE OF REMOVAL**
12       vs.

13  Libby Rauch, a single woman

14              Defendant.

15          Defendant Libby Rauch, by and through her undersigned counsel, hereby

16  gives notice of the removal of the above-entitled civil action from the Superior Court of

17  the State of Arizona, in and for the County of Maricopa, to the United States District Court

18  for the District of Arizona, based upon the following facts:

19          1.  Defendant is named in the above-entitled civil action, which has been

20  commenced and is pending in the Superior Court of the State of Arizona, in and for the

21  County of Maricopa.  A copy of all process, pleadings, orders, and other papers or exhibits of

22  every kind received and filed by the parties in this action are attached. (*See* Summons,

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1    Exhibit 1; Complaint, Exhibit 2; Certificate of Compulsory Arbitration, Exhibit 3; and

2    Acceptance of Service, Exhibit 4)

3        2.  This is a civil action in which Plaintiff Russell Piccoli asserts claims of

4    fraud, breach of contract, and various breaches of fiduciary duty against Defendant.

5        3.  Plaintiff and Defendant had an agreement to purchase and renovate

6    residential property in southern California for resale. *Inter alia*, Plaintiff alleges that

7    Defendant mishandled funds from a construction account and a) made secret payments to

8    her fiancée totaling $126,330.00, b) directed "tens of thousands of dollars in checks and

9    credit charges for her own benefit," c) wrote herself "checks totaling $34,500," and d) took

10    "yet unknown amounts for herself." Plaintiff's Complaint at 15, ¶ 69, Exhibit 2 hereto.

11    Thus, the amount in controversy in this action exceeds $75,000.00.

12        4.  At the time this action was commenced, Defendant was, and currently is,

13    a resident of California.

14        5.  Upon information and belief, Plaintiff is a resident of Arizona.

15        6.  Plaintiff stated in his Complaint that he is a resident of Maricopa County,

16    Arizona.  Plaintiff's Complaint at 1, ¶ 1.

17        7.  This Court has original jurisdiction of this action pursuant to 28 U.S.C.

18    § 1332(a), and this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

19        8.  Defendant accepted service of Plaintiff's Summons and Complaint on

20    August 29, 2007.  Exhibits A and B hereto.  Upon information and belief, no other process,

21    pleadings, or orders have been served or filed in this action.

22

1      9.  In accord with 28 U.S.C. § 1446(b), Defendant is filing this notice of

2  removal within 30 days after its receipt of the Summons and Complaint in the state court

3  action.

4      10.  In accord with 28 U.S.C. § 1446(d), Defendant is filing a copy of this

5  notice with the Clerk of the Superior Court of the State of Arizona, in and for the County

6  of Maricopa.  Plaintiff has been given written notice of Defendant's Notice of Removal as

7  required by 28 U.S.C. § 1446(b).  A copy of the notice to the Plaintiff of filing of the

8  Notice of Removal of Action from State Court is attached hereto as Exhibit 5.

9      WHEREFORE, defendant respectfully requests that this action now pending

10  in the Superior Court of the State of Arizona, in and for the County of Maricopa, be

11  removed to this Court, and that all further proceedings in this action be conducted in this

12  Court as provided by law.

13      Respectfully submitted this <u>26th</u> of September, 2007.

14      **GALLAGHER & KENNEDY, P.A.**

15

16      By: <u> /s/    C. Lincoln Combs        </u>
             Mark Deatherage

17               C. Lincoln Combs
             2575 East Camelback Road

18               Phoenix, Arizona 85016
             Attorneys for Defendant

19

20

21

22

3

1                              **CERTIFICATE OF SERVICE**

2          I hereby certify that on September 26, 2007, I electronically transmitted a PDF

3 version of this document to the Clerk of the Court, using the CM/ECF System for filing,

4 and that I sent by United States mail a copy of this document, along with a copy of the

5 Notice of Electronic Filing to the following:

6

7                  Russell Piccoli
                 6039 North 41st Place

8                  Paradise Valley, Arizona 85253
                 Plaintiff Pro se

9       /s/    Cherise M. Gilbert

10

11

12

13

14

15

16

17

18

19

20

21

22

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS
Russell Piccoli, a single man,
**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF:
Maricopa

## DEFENDANTS
Libby Rauch, a single woman,
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT:
Resides in another State

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Russell Piccoli (#004492)
6039 North 41st Place
Paradise Valley, Arizona 85253
(602) 285-5100

ATTORNEYS (IF KNOWN)
Mark Deatherage (#010208) mmd@gknet.com
C. Lincoln Combs (#025080) Lincoln.combs@gknet.com
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

3  Federal Question (U.S. Government Not a Party)

X 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | | ☐ 2 ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of A Foreign Country | ☐ 3 | ☐ 3 | | | |
| | | | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 310 Airplane | ☐ 362 Personal Injury—Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 315 Airplane Product Liability | | | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Case is being removed from state court under 28 U.S.C. §1441

## VII. REQUESTED IN COMPLAINT:
check if this is a **CLASS ACTION** ☐ under F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:

JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE:_____   DOCKET NUMBER:_____

DATE   SIGNATURE OF ATTORNEY OF RECORD
September 26, 2007   /s/ C. Lincoln Combs

FOR OFFICE USE ONLY

receipt #_____ amount _____ applying ifp _____ judge _____ mag. judge _____

1 | Mark Deatherage (010208)
C. Lincoln Combs (#025080)
2 | GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
3 | Phoenix, Arizona 85016
Telephone: (602) 530-8000
4 | Facsimile: (602) 530-8500
E-mail: mmd@gknet.com
5 | E-mail: Lincoln.combs@gknet.com

6 | Attorneys for Defendant Rauch

7 | **IN THE UNITED STATES DISTRICT COURT**

8 | **FOR THE DISTRICT OF ARIZONA**

9 |

10 | Russell Piccoli, a single man,            No. _____

11 |             Plaintiff,

12 |     vs.                                    **INDEX OF EXHIBITS ATTACHED TO NOTICE OF REMOVAL**

13 | Libby Rauch, a single woman

14 |             Defendant.

15 |                      **EXHIBITS 1-5**

16 | **EXHIBIT 1:**        **Summons**

17 | **EXHIBIT 2:**        **Complaint**

18 | **EXHIBIT 3:**        **Certificate of Compulsory Arbitration**

19 | **EXHIBIT 4:**        **Acceptance of Service**

20 | **EXHIBIT 5:**        **Notice of Filing of Notice of Removal (without Exhibits)**

21 | 20487-0001/1650771

22 |

GALLAGHER & KENNEDY, P.A.
2575 E. EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

# EXHIBIT 1

Russell Piccoli (#004492)
6039 North 41st Place
Paradise Valley, Arizona 85253
Phone: (602) 285-5000
Fax: (602) 285-5100

Attorney Pro se

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| RUSSELL PICCOLI, a single man | NO. CV2007-015784 |
| Plaintiffs, | |
| vs. | SUMMONS |
| LIBBY RAUCH, a single woman | |
| Defendant. | |

IF YOU WANT THE ADVICE OF A
LAWYER, YOU MAY WISH TO CONTACT
THE LAWYER REFERRAL SERVICE AT
602-257-4434 OR ON-LINE AT
WWW.LAWYERFINDERS.ORG. LRS IS
SPONSORED BY THE MARICOPA
COUNTY BAR ASSOCIATION

TO:   LIBBY RAUCH, a single woman

**YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona--whether by direct service, by registered or certified mail, or by publication-- you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this State, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. **R.C.P. 4.1 and 4.2; A.R.S. §§ 20-222, 28-502, 28-503.**

**YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default  may be rendered against you for the relief demanded in the Complaint.

**YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorney. **R.C.P. 10(d); A.R.S. § 12-311; R.C.P. 5.**

1    Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least 3 judicial days in advance of a scheduled court proceeding.

2    The name and address of Plaintiff's attorney is:

3

Russell Piccoli, Esq.
6039 North 41st Place
Paradise Valley, Arizona   85253
602-285-5000

4

5

6

7    SIGNED AND SEALED: _____

8

9    **MICHAEL K. JEANES, Clerk**
**Maricopa County Superior Court**

10    **COPY**

11    By:_____
Deputy Clerk

12    AUG 2 9 2007

MICHAEL K. JEANES, CLERK
N. ZAMORA
DEPUTY CLERK

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2

# EXHIBIT 2

Russell Piccoli (#004492)
6039 North 41st Place
Paradise Valley, Arizona 85253
Phone: (602) 285-5000
Fax: (602) 285-5100

**COPY**

AUG 2 8 2007

MICHAEL K. JEANES, CLERK
N. ZAMORA
DEPUTY CLERK

Attorney Pro se

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| RUSSELL PICCOLI, a single man | NO.  CV2007-015784 |
| Plaintiffs, | COMPLAINT |
| vs. | |
| LIBBY RAUCH, a single woman | |
| Defendant. | |

Plaintiff, by way of Complaint, says:

### JURISDICTION AND VENUE

1.     Plaintiff is a resident of Maricopa County, Arizona.

2.     Defendant ("Libby") is full-time resident of San Diego, California and, as stated in the following paragraph, a part-time resident of La Paz County, Arizona.

3.     This Court has general jurisdiction over Libby because she owns a residence in Arizona and resides in this State part-time, traveling to and residing in her Lake Havasu residence nearly every weekend.

4.     This Court has specific jurisdiction over Libby regarding this action because she (a) directed fraudulent representations regarding her financial condition to plaintiff in Arizona upon which he relied to his detriment, and (b) directed false information to plaintiff in Arizona in breach of her fiduciary duty, all as more fully set forth below.

5.     Venue is proper in Maricopa County pursuant to A.R.S. §12-401(1).

U:\ATTORNEYS\RXP\Libby\Complaint.doc

## THE CONFIDENTIAL RELATIONSHIP

6.    Plaintiff met Libby in or about 1994, shortly before Libby's marriage to one of plaintiff's long time, closest friends, David Rauch. Plaintiff served as best man in Libby and Dave's wedding.

7.    Following Libby's marriage to Dave, plaintiff and Libby commenced to establish a close personal relationship. Libby and plaintiff's ex-wife became best friends, speaking on a daily basis. The two couples vacationed and spent holidays together and socialized on a nearly daily basis during the summer months. During this period, plaintiff and his ex-wife became godparents to Libby's oldest daughter, Samantha.

8.    Following plaintiff's separation from his ex-wife in 1998, plaintiff developed an even closer personal relationship with Libby, which they characterized as a "brother/sister" relationship. During this period, plaintiff also became godfather to Libby's youngest daughter, Abigail.

9.    During the years preceding this transaction, the parties continued a close personal relationship, speaking nearly everyday and plaintiff maintaining an extremely active relationship with both of his goddaughters. Libby had use of all plaintiff's residences, and keys to at least two (2) of them.

10.    In 2003, plaintiff hired Libby to assist in the interior decorating of a property he was restoring in Laguna Beach, California. Libby did a good job of sourcing and choosing electrical and plumbing materials, surface materials and other items.

11.    Thereafter, in 2004, plaintiff employed Libby to oversee the remodeling of another residence he had in Encinitas, California. Although there were a few minor problems, Libby was attentive to her duties and did a more than adequate job in that redevelopment project.

12.    During the Encinitas remodeling project, Libby became divorced from David Rauch. Concerned for her future, the parties had many conversations concerning what Libby could do to generate income for the independent support for herself and her daughters.

13.    Based upon Libby's hard work and successes in the Laguna Beach decorating and Encinitas remodeling, the parties agreed that Libby might be able to develop a substantial income stream by locating advantageous properties to remodel and overseeing their restoration. Plaintiff agreed to consider assisting Libby in providing financing for such endeavors, on a partnership basis.

### LIBBY'S REPRESENTATIONS AND AGREEMENT

14.    As a result of the parties' conversations, Libby commenced to locate suitable properties for remodeling in the latter part of 2005. Because this would be Libby's first remodeling project on her own, the parties had discussed locating a property in the range of $500,000.00, with a complete budget under $1,000,000.00.

15.    In or about February 2006, Libby advised plaintiff that she had found an excellent remodeling prospect in the Olivenhein area of Encinitas, California ("the property"). Although the property was listed at substantially over $1,000,000.00, Libby indicated to plaintiff that, based upon her research and construction analysis, after remodeling, the property could potentially generate over $500,000.00 in profit to the parties.

16.    Over the course of the parties' discussions regarding purchase of the property, they had numerous telephonic conversations as to how the project would work. During the course of those conversations, Libby represented to plaintiff, in Arizona, that:

(a)    She would work virtually full time on the remodeling project to ensure its success;

(b)    She would obtain three (3) bids from subcontractors in each trade, to ensure the project be completed in the most economical fashion; and

3

(c)    In the meantime, as Libby had become engaged to another framing contractor who plaintiff did not trust, that Libby's fiancé would not be permitted to do any work on the project unless she obtained three (3) independent bids for any work he would do, and the fiancé was the low bidder.

17.    Additionally, because the property had been so much more expensive than that which the parties initially contemplated, plaintiff advised Libby that the maximum he could invest in the project would be $600,000.00. As the purchase and remodeling costs of the property would very likely exceed that amount, plaintiff asked Libby about her financial resources to contribute funds to complete any remodeling over that amount.

18.    In response to plaintiff's inquiries, Libby advised plaintiff – in representations directed to plaintiff in Arizona – that she personally had financial resources available to her exceeding $300,000.00, which funds she had obtained from the sale of the marital residence she had with David Rauch, and that her father would contribute any additional funds necessary to permit her to complete the remodeling.

19.    As a result of Libby's representations, the parties agreed that plaintiff would contribute up to $600,000.00 for the purchase and remodeling of the property, utilizing his credit to purchase the property and place the property in his name; that Libby would perform all work necessary for the successful remodeling of the property; that Libby would contribute all funds necessary to complete the project beyond the $600,000.00 to be invested by plaintiff, and that the parties would split the profits in the venture equally.

20.    To that end, plaintiff prepared a simple hand-written agreement memorializing the four points of the agreement. Because the property would be held in plaintiff's name, providing him protection and because of the confidential relationship between the parties, plaintiff entrusted the agreement, executed by both of them, to Libby for safekeeping.

## LIBBY'S ABUSES AND NON-PERFORMANCE

21.    In early 2006, while the parties negotiated the purchase of the property, plaintiff renegotiated a line of credit to provide for the purchase and remodeling of the property, keeping Libby advised of the timing and charges. Plaintiff completed the purchase of the property pursuant to the parties' agreement in or about May 2006. Libby immediately took possession and ostensibly commenced to prepare plans and obtain permits to start the remodeling project. Plaintiff established a checking account tied to the line of credit to fund the purchase and construction, on which Libby was a signee.

22.    Progress was apparently slow during 2006. After obtaining plans and permits, Libby had erred as to the home's connection to public sewer and could not proceed with the remodeling until after that connection was completed.

23.    Believing that the residential housing market was soft anyway, plaintiff did not press Libby as to her progress during 2006 and January 2007.

24.    However, in February 2007, plaintiff discovered that Libby had given away his vacation home in a charity auction without his knowledge or consent, falsely advising plaintiff that she would be utilizing the home herself with his goddaughters and some of her friends. As a result of this deceit, plaintiff pressed Libby as to the progress of the remodeling project which had now allegedly been ongoing for approximately 8 months.

25.    Plaintiff met with Libby at the property in March 2007. Progress was minimal and the remodeling project had been much greater than originally explained by Libby to plaintiff. Although demolition was ostensibly completed, the only construction that had been accomplished was the pouring of some new pads and skeletal framing on a portion of the house. Although plaintiff had requested Libby to bring her records pertaining to the project with her on that date, she allegedly forgot to do so.

26.     During the following weeks, the parties had numerous conversations concerning the project. Libby indicated that she had secured multiple bids from subcontractors for work on the project and that work had been progressing quickly.

27.     On April 16, plaintiff requested Libby to gather all of her records pertaining to the project and meet him at the property to inspect its progress either later that week or early the following week.

28.     The parties met at the property on April 23, 2007.  Although a great of additional work had occurred at the property, Libby's records pertaining to the project were a shambles, consisting simply of scores of pieces of paper placed randomly into a file. There were no bids from subcontractors, no check register and no discernable accounting as to what had been expended on the project.

29.     More troubling, upon observing that Libby's fiancé's construction company was working on the project, and seeing no bid from the fiancé's company or any other framing contractor, plaintiff asked Libby why the fiancé was working on the property under the circumstances.  In response, Libby represented that her fiancé was working on the property at his actual, out of pocket costs, in order to help her "and the girls".

30.     Although such made sense as to Libby's half of the profits, plaintiff was quizzical as to how her fiancé would be compensated for work he did benefitting plaintiff. Plaintiff requested Libby to ask her fiancé to call to discuss their arrangements regarding his work. Despite that request, and numerous others, the fiancé never called.   Plaintiff also requested, and Libby agreed, to keep daily detailed records of the actual hours her fiancé's employees worked on the project.

31.     Additionally, because Libby had maintained no check register or any other record of the checks she had written on the construction account, plaintiff requested that Libby balance the account immediately.  She promised to do so.

32.   Two days later, on April 25, plaintiff received a telephone call from the bank holding the construction account indicating that two (2) checks, collectively exceeding $110,000.00, had been presented to the bank for payment and that there were insufficient funds in the account and the accompanying line of credit to pay both checks.

33.   Plaintiff immediately contacted Libby regarding the bounced checks and asked her if she had balanced the account.  She indicated that she had not yet had time to do so. During the next several hours, plaintiff made an analysis of the amounts he had advanced on the project, and incorrectly concluded that he had expended about $560,000.00 relating to the project at that time.

34.   Understanding that he was obligated to make further mortgage payments on the property until it sold and concerned that Libby might fail to make payments leaving him exposed, plaintiff contacted Libby and advised that he had already invested about $560,000.00 of the $600,000.00 he had agreed to invest.  He requested that Libby start making her contributions into the remodeling project at that time – inclusive of covering the bounced check to the lumber company – and that plaintiff would continue to make the monthly mortgage payments until the property sold.  Libby acknowledged their original agreement and agreed that plaintiff could retain the additional $40,000.00 as a reserve.

35.   Within a day, plaintiff discovered that his housekeeper had been making tax and debt service payments on the property from another account, such that his investment already exceeded $600,000.00. He advised Libby.  Libby again acknowledged her obligation to complete financing of the remodel and indicated that she would be paying the bounced check shortly.

36.   On April 30, Libby telephoned plaintiff in Arizona indicating that:

(a)   She had thought about their agreement over the weekend and now, five days after having bounced the checks, now recalled that plaintiff had agreed to invest $600,000.00 or $650,000.00 (she couldn't recall which)

7

for construction expenses and that there had been no agreement regarding his payment of the down payment to purchase the home (over $125,000.00) or the monthly mortgage payments. She indicated that she "assumed" that plaintiff would be reimbursed for all of these amounts, but that there had never been any discussion or agreement as to these investments;

    (b)    She had little or no money to invest into the project, because she had placed all of her funds in investments with her father, in which they were unavailable to her; and

    (c)    If plaintiff simply wanted to keep the uncompleted house, he could have it.

37.    During the next several days, Libby alternatively claimed she could not locate the written agreement by which the parties had memorialized in their relationship, that there had never been any written agreement, or that she had lost it. She made constant, varying representations of her financial capabilities, ranging from $20,000.00 one day to over $200,000.00 the next. Ultimately, Libby's father advised plaintiff that he would not disclose Libby's financial condition to him and that Libby had no intention of doing so either.

38.    In point of fact:

    (a)    After performing some initial work on the project, Libby essentially abandoned the project to her fiancé, traveling on near continuous vacations to Durango, Colorado, Telluride, Colorado, Hawaii, Texas, Louisiana and every intervening weekend to her new residence in Lake Havasu;

    (b)    Libby obtained no competitive bids for any subcontractor. Instead, Libby's fiancé simply gave the work to his friends, who charged whatever they pleased;

(c)   Libby wrote herself checks totaling $34,500 from the construction account, some with no notation and most without any backup.

(d)   Libby's fiancé was not actually performing labor on the property for free. In fact, she had agreed to pay him pursuant to a "bid" (with no competing bids) under which his labor charges were inflated nearly 100% over that which could have been obtained through competitive bidding.

(e)   On April 17, the day following plaintiff's advice to Libby that he would be coming to California to review all of the records, Libby apparently realized the construction line of credit would quickly be exhausted or that plaintiff might cutoff her access to the account. As a result, she simply "cleaned out" the account, running off the remaining $126,330 from the credit line, with checks, to or for the benefit of her fiancé – including $35,000.00 in checks to "Ford Credit", apparently to pay for new vehicles for herself and her fiancé. Libby paid the inflated amounts of her fiancé's bid to him, even though his work was nowhere near complete and was defective.

(f)   Libby embezzled thousands of dollars from the construction checking account and credit card for trips to Las Vegas, including lodging at the Bellagio Hotel, Babies "R" Us, Neiman Marcus, Nordstrom's, groceries, doctors, babysitters and cash, most of, but not all of which, have been returned. Libby treated herself to tickets for her Las Vegas trip from the construction credit card the same day she cleaned out the line of credit by writing $126,879 in check to or for the benefit of her fiancé.

(g)   Much of the work on the project was horrifically defective. For example, her fiancé's electrician had wires strewn all over, had attached a 20 amp line to a 40 amp fuse to service a 50 amp oven, overloaded circuits by

9

over one hundred percent and had misaligned the new breaker box with the new power stub out by over nine inches. The electrician's response, in part was "if the inspector catches it we'll correct it". Other work was similarly defective.

(h) Construction planning was also idiotic. For example, in order to install sprinklers, Libby's fiancé directed the installer simply to assume (and obtain city approval for sprinklers utilizing) a 2-inch water line to the property for purposes of his calculations, although no such line existed and could not be installed without inordinate expense. Because of the magnitude of the false presentation to the city, construction was delayed by nearly two (2) months.

(i) Libby failed to pay various venders resulting in five (5) liens against the property, aggregating over $150,000.

(j) As a result of Libby's malfeasance, it took months of effort by plaintiff simply to make corrections necessary to place the property in a position to continue with drywalling and stucco.

### THE SETTLEMENT AND ITS BREACH

39.     As plaintiff came to discover the circumstances set forth in the preceding paragraph, he became increasingly irate and threatened Libby with suit (and her fiancé with a complaint to the California Registrar of Contractors) unless Libby undertook reasonable actions to mitigate the problem.

40.     Plaintiff's aggregation was exacerbated by the fact that Libby continued to take virtually continuous vacations to Lake Havasu, Hawaii, Texas and Louisiana, while these problems persisted and no resolution had been reached.

41.     On June 16, between Libby's vacations to Hawaii and Texas and Louisiana, the parties had numerous discussions concerning a settlement of their dispute without litigation.

10

As a result, the parties agreed that Libby would pay off and obtain releases from three (3) subcontractors and "agree to indemnify Russ from loss on deal". (See Exhibit "A"). Following that agreement, plaintiff faxed a copy of the written terms to Libby after which she again acknowledged her agreement to the terms, but indicated that she was having difficulty in securing her fiancé's agreement to the terms pertaining to him. Later that day, at Libby's request, plaintiff agreed that the settlement would resolve any disputes between them, irrespective of whether her fiancé would agree or not.

42.    During the next two days, plaintiff was still without information as to the fiancé's agreement and as to certain aspects of the construction, for which he was attempting to obtain an inspection to move forward with the remodeling. Libby did not answer her cell phone, nor did she return any messages. As a result, on June 18, plaintiff received several text messages from Libby reading in pertinent parts as follows:

> "Russ got your message. Not avoiding any calls, just with family that I haven't seen in five years. I agreed to your terms, Simon agreed and your message is still threatening. I can't take it.
>
> . . .
>
> We're trying to do everything you ask . . . I am sorry you are dealing with this. I will be home next week. I agreed to your terms.

43.    Libby's agreement to the settlement terms was further evidenced by a text message to plaintiff on June 26, indicating she had paid two of the subcontractors pursuant to the settlement terms, asking plaintiff "Have you received releases for Inland Truss and Ganahl yet?"

44.    As a result of Libby's written confirmation of her agreement to the terms of Exhibit "A", plaintiff withheld suit against Libby and a complaint against her fiancé to the California Registrar of Contractors.

45.    Notwithstanding, Libby has failed to pay at least two of the three subcontractors who she promised to pay and is now denying her agreement to indemnify plaintiff for any loss on the property.

## FIRST CLAIM FOR RELIEF

### (Fraud)

46.    Plaintiff repeats each preceding allegation of this complaint as if set forth in their entirety herein.

47.    Prior to any investment in the subject property, in February and March 2006, Libby several times represented to plaintiff by telephone, to Arizona, that she had the financial capabilities to fund construction of the remodeling project for all amounts necessary after plaintiff completed his investment of $600,000.00 into the project, and specifically that she had over $300,000.00 available for this purpose from the sale of her marital residence and that her father had promised to assist with any additional amounts necessary.

48.    Upon information and belief, these representations were false and made with knowledge of falsity, based upon Libby's later statements, in April and May of 2007: (a) that she had little or no money to fund construction, and only had amounts between $20,000.00 and $200,000.00 in her savings; (b) that virtually all of her available funds were tied up in investments with her father and inaccessible to her; and (c) that her father had never agreed to assist with any funds, and her father's statement that he had never agreed to invest any funds in the project.

49.    Plaintiff relied upon Libby's representations in purchasing the property in his own name and investing $600,000.00 into the project, as he had a right to do in light of long confidential relationship between the parties.  Libby's representations were material, in that plaintiff would have never made any investment in the remodeling project without sufficient funds from Libby to complete it.

50.   Plaintiff has been damaged by Libby's false representations in that he has now invested nearly $1,700,000.00 in a half completed house, with no means to complete it.

51.   Libby's misrepresentations were made intentionally, with consciousness of the harm they could cause and with the evil mind necessary that a substantial award of punitive damages should be made against her.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty: Dealings with Fiancé)

52.   Plaintiff repeats each preceding allegation of this complaint as if set forth in their entirety herein.

53.   As a result of the circumstances set forth in ¶¶ 6-9, plaintiff trusted Libby like a family member, and Libby knew it.

54.   By virtue of the long personal relationship between the parties and their partnership as to the remodeling project, Libby had numerous fiduciary duties to plaintiff including those of honesty, information, diligence and to avoid the making of any transaction for her own benefit.

55.   On April 23, 2007, when first asked the basis upon which her fiancé was providing labor to the project, Libby represented to plaintiff that he was providing labor at his own, actual cost.  In a meeting with Libby's fiancé and another contractor in May 2007, Libby's fiancé made the same representations to plaintiff as to having performed labor on the project at his actual cost.

56.   Libby's representation as to her fiancé performing labor at cost was also supported by her file which contained no contract with her fiancé or any bid or estimate for framing labor.

57.   However, after obtaining and investigating records of the construction checking account, plaintiff discovered that Libby had written tens of thousands of dollars in checks to or

13

1    for the benefit of her fiancé during the week of April 16, before overdrafting the account,

2    including two checks to "Ford Credit" totaling $35,000.00.

3        58.    The checks were not accompanied by any time records in Libby's files for the

4    number of employees and time expended by her fiancé's employees, as Libby had promised to

5    keep.

6        59.    Thereafter, plaintiff questioned Libby's fiancé as to his compensation in the

7    absence of any records.  At that time, for the first time, Libby's fiancé claimed he had been

8    providing framing services as a "bid job," and about ten days later produced his purported bid

9    allegedly dated January 2007.

10       60.    Although the typical labor charge for residential framing is roughly equal to the

11   cost of lumber, Libby's fiancé's purported bid marked up labor services to nearly 200% of the

12   cost of the lumber, over that which was customary and which could have been obtained had

13   Libby obtained competing bids.

14       61.    On April 17, 2007, Libby paid her fiancé (in checks to him or for his benefit) for

15   more than the amount of his purported bid in full, although his work was nowhere near

16   completed, defective and with no hold back.

17       62.    In fact, on April 17, 2007, apparently with knowledge that such payments would

18   exhaust the construction line of credit, Libby wrote checks to or for the benefit of her fiancé

19   totaling $126,879, over drafting the account the following week.  Such wrongful diversion – to

20   overpay for work not complete – depleted available funds necessary to pay suppliers who had

21   already delivered, and an earned progress payment to the roofer, causing over $150,000 in

22   liens against the property.

23       63.    As Libby was living with her fiancé, had comingled their finances and was

24   engaged to marry him at the time, her contract with and payments to her fiancé were in conflict

25   with the partnership's interests and breaches of her fiduciary duties to plaintiff.

26

14

64.    Libby is liable to plaintiff for all amounts paid to, or for the benefit of, her fiancé.

65.    Libby's actions were committed with express knowledge that they were cheating someone who trusted her, wrongful, in breach of her fiduciary duties and with an evil mind such that an award of punitive damages be made against her.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty:  Embezzlement)

66.    Plaintiff repeats each preceding allegation of this complaint as if set forth in their entirety herein.

67.    In order to complete the remodeling project, plaintiff established a construction checking account at American National Bank in Colorado, which account was tied to a construction line of credit which plaintiff had established for the project.  Libby was made a signer on the account for purposes of the project.

68.    Additionally, because some construction expenses are easier to pay by credit card, plaintiff established a construction credit card at Chase Bank and provided Libby a card in her name in order to pay construction expenses.

69.    Libby abused both accounts in violation of her fiduciary duties by, without plaintiff's knowledge or permission, (a) directing tens of thousands of dollars in checks and credit card charges for her own benefit including airfares to Las Vegas, charges at the Bellagio Hotel in Las Vegas, for Babies "R" Us, Neiman Marcus, Nordstrom, and her babysitter and (b) writing herself checks totaling $34,500, many without notations, and pocketing yet unknown amounts for herself.

70.    Although Libby has repaid some of these amounts to plaintiff, it was not until after plaintiff discovered these defalcations independently and threatened Libby with embezzlement charges.

71. Libby is liable for any amounts not yet repaid, together with interest on all amounts.

72. Libby's embezzlements were made with a consciousness that they constituted theft, cheated someone who trusted her and an evil mind such that punitive damages should be awarded against her.

### FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty: Abandonment of Project)

73. Plaintiff repeats each preceding allegation of this complaint as if set forth in their entirety herein.

74. By virtue of her representations and the partnership relationship, Libby had an express duty to plaintiff to utilize her diligent and best efforts to successfully complete the remodeling project.

75. In direct violation of her obligations, Libby essentially abandoned the project by embarking upon continual vacations during the course of the construction, and essentially "dumping" the project into the control of her fiancé.

76. Libby obtained no competitive bids for any subcontractor, instead leaving it to her fiancé to have his friends perform work on the project at essentially whatever they chose. On average, the lack of any competitive bidding on the project caused the charges to be about 30% higher than what they should have been had competitive bidding been employed.

77. Additionally, much of the work on the project was shoddy. In part:

    a)     the electrical work was completely botched, requiring corrective work at a cost of nearly 20% of the original work;

    b)     the framing work had not been completed, resulting in nearly a full page of corrections when the house failed inspection, and numerous re-trips to the property to correct the defective work, so the construction could later proceed;

16

     c)    the sprinkler system had been designed and installed based upon a 2-inch water pipe to the property that did not exist and could not have been furnished to the property without tens of thousands of dollars in additional, inordinate expense, alone delaying construction activities for a month and a half; and

     d)    various other defalcations by the framers and heating and air conditioning contractors.

78.    Libby's defalcations in this regard increased the cost of construction in an amount to be determined at trial.

79.    Libby's defalcations were so wanton and reckless and committed with such an evil mind, that an award of punitive damages must be made against her.

**FIFTH CLAIM OF RELIEF**

**(Breach of Fiduciary Duty:  False Information)**

80.    Plaintiff repeats each preceding allegation of this complaint as if set forth in their entirety herein.

81.    During the months of March and April 2007, Libby directed numerous false statements to plaintiff, in Arizona, regarding the basis upon which her fiancé was working on the project, as to having obtained competitive bids for the project and as to the progress of construction.

82.    All of these statements were false and in breach of Libby's fiduciary duties to plaintiff.

83.    Moreover, on April 23, 2007, when Libby falsely advised plaintiff that her fiancé was working on the house at his actual, out of pocket cost – and agreed to maintain time records of his employees to make sure any charges were legitimate – she failed to advise plaintiff that she had paid him checks totaling $126,879 (to or for his benefit) six days earlier, and well before his work was completed.

17

84.     Libby's false statements to plaintiff during these months caused him not to assume control of the project at an earlier time and prevent financial losses which thereafter occurred.

85.     Libby's false statements in this respect were made knowingly and with the intent to deceive plaintiff and with an evil mind sufficient that an award of punitive damages must be made against her.

## SIXTH CLAIM FOR RELIEF

### (Breach of Settlement Agreement)

86.     Plaintiff repeats each preceding allegation of this complaint as if set forth in their entirety herein.

87.     On or about June 16, 2007, Libby and plaintiff agreed to settle their disputes pursuant to the "settlement terms" set forth on Exhibit A.

88.     Libby confirmed her agreement to the settlement terms by two text messages to plaintiff on June 18, 2007.

89.     Plaintiff has complied with all of this obligations under the "settlement terms".

90.     Libby has breached the settlement terms by refusing to pay Ganahl Lumber Company and Donny Atherton and by denying her obligation to indemnify plaintiff against all loss.

91.     Plaintiff is liable in damages to plaintiff for the amounts due and owing to Ganahl Lumber Company, to Donny Atherton and to indemnify plaintiff against any loss on the property.

## SEVENTH CLAIM FOR RELIEF

### (Equitable Indemnity)

92.     Plaintiff repeats each preceding allegation of this complaint as if set forth in their entirety herein.

1      93.    Under the circumstances set forth above, equity demands that Libby indemnify

2  plaintiff against any loss on this transaction.

3      WHEREFORE, plaintiff demands:

4          1)    Actual damages in an amount to be established at trial;

5          2)    Punitive damages to be established by the trier of fact;

6          3)    Costs of suit;

7          4)    An award of attorneys' fees; and

8          5)    For whatever further relief the Court may deem proper under the

9              circumstances.

10

11      RESPECTFULLY SUBMITTED this _____ day of August, 2007.

12

13

14          _____

15          Russell Piccoli
           6039 North 41st Place

16          Paradise Valley, Arizona   85253
           Attorney Pre se

17

18

19

20

21

22

23

24

25

26

Settlement Terms

LIBBY:

- Pay off Ganahl, Truss, Atherton (Roof + Lather) and deliver release documents

- Agree to indemnify Russ from loss on deal
- Deliver/explain all pre pays

Dave Simon:

- Prove lumber expense on project

- return overpayment on framing (any amount for labor over lumber cost)

- Move studs to straighten out breaker box / align with stub out for SDGE by end of weekend

- Deliver structural engineer letter / install tie down by end of weekend

- fix windows / install door hardware

- install front Door after stucco

RUSS:

- Finish Rough electric / Dry wall / insulation Stucco / Garage door

- Pay Alpha sprinkler

- try to sell for maximum amount possible for 60 days — all amounts to Libby after Russ breakeven

- Release Libby / Dave Simon after full performance

Summer Leopard Shark Recipe, Fish Sniffer Online

(A)

# EXHIBIT 3

Russell Piccoli (#004492)
6039 North 41st Place
Paradise Valley, Arizona 85253
Phone: (602) 285-5000
Fax: (602) 285-5100

**COPY**

AUG 2 8 2007

MICHAEL K. JEANES, CLERK
N. ZAMORA
DEPUTY CLERK

Attorney Pro se

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| RUSSELL PICCOLI, a single man | NO.  CV2007-015784 |
|---|---|
| Plaintiffs, | **CERTIFICATE RE: COMPULSORY ARBITRATION** |
| vs. | |
| LIBBY RAUCH, a single woman | |
| Defendant. | |

The undersigned certifies that the largest award sought by the Plaintiff, including punitive damages but excluding interest, attorneys' fees and costs, exceeds the limits set by the Local Rule for Compulsory Arbitration.   Therefore, this case is not subject to the Uniform Rules of Procedure for Arbitration.

RESPECTFULLY SUBMITTED this _28th_ day of August, 2007.

_____
Russell Piccoli
6039 North 41st Place
Paradise Valley, Arizona  85253
Attorney Pro se

U:\ATTORNEYS\RXP\Libby\Cert re compulsory arbitration.doc

# EXHIBIT 4

1  Russell Piccoli (#004492)
   6039 North 41st Place
   Paradise Valley, Arizona 85253
2  Phone: (602) 285-5000
   Fax: (602) 285-5100

3

4  Attorney Pro se

5          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

6          IN AND FOR THE COUNTY OF MARICOPA

7  RUSSELL PICCOLI, a single man          NO. CV2007-015784

8              Plaintiffs,               ACCEPTANCE OF SERVICE

9  vs.

10 LIBBY RAUCH, a single woman

11             Defendant.

12

13        I, STERLING STIRES, of the Law Offices of Charles Li Mandri, one of the attorneys for

14 Defendant herein, hereby accept service of the Complaint and Certificate re: Compulsory Arbitration, to

15 which was attached a copy of the Summons issued herein by the Clerk of the above-captioned Court on

16 August 27, 2007.

17        RESPECTFULLY SUBMITTED this 27 day of August, 2007..

18

19

20        _____
          Sterling Stires, Esq.
21        LAW OFFICES OF CHARLES LI MANDRI
          16236 San Dieguito Road
22        Building 3, Suite 315
          Rancho Santa Fe, CA 92067

23

24

25

26

U:\ATTORNEYS\RXP\Libby\Acceptance of Service.doc

# EXHIBIT 5

1   Mark Deatherage (010208)
    C. Lincoln Combs (#025080)
2   GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
3   Phoenix, Arizona 85016
    Telephone: (602) 530-8000
4   Facsimile: (602) 530-8500



5   Attorneys for Defendant Rauch

6

                  IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7                     IN AND FOR THE COUNTY OF MARICOPA

8

9   RUSSELL PICCOLI, a single man,          No. CV2007-015784

10                Plaintiff,                 **NOTIFICATION OF FILING OF**
                                             **NOTICE OF REMOVAL TO THE**
11      vs.                                  **DISTRICT COURT FOR THE**
                                             **DISTRICT OF ARIZONA**
12  LIBBY RAUCH, a single woman

13                Defendant.                 (Assigned to the Honorable A. Craig
                                             Blakey, II)
14

15          PLEASE TAKE NOTICE THAT:  On September 25, 2007, Defendant Libby

16  Rauch filed a Notice of Removal of the above-captioned State Court action to the United

17  States District Court for the District of Arizona.  A copy of the Notice of Removal is

18  attached hereto as Exhibit 1.

19  ///

20  ///

21  ///

22

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1    Respectfully submitted this 25 day of September, 2007.

2                                            GALLAGHER & KENNEDY, P.A.

3

4                                            By: _____
                                                 Mark Deatherage
5                                                C. Lincoln Combs
                                                 2575 East Camelback Road
6                                                Phoenix, Arizona 85016-9225
                                                 Attorney for Defendant Rauch
7

    **COPY** of the foregoing hand-delivered
8    this 25 day of September, 2007, to:

9    Honorable A. Craig Blakey, II
     Maricopa County Superior Court
10   201 West Jefferson Street
     Phoenix, Arizona  85003
11
     **COPY** of the foregoing mailed this date,
12   to:

13   Russell Piccoli
     6039 North 41st Place
14   Paradise Valley, Arizona 85253
     Attorney for Plaintiff

15

16   _____

17   20487-0001/1649712

18

19

20

21

22

                                            2

# SUPPLEMENTAL CIVIL COVER SHEET
# FOR CASES REMOVED FROM ANOTHER JURISDICTION

This form must be attached to the Civil Cover Sheet at the time
the case is filed in the United States District Clerk's Office.

Additional sheets may be used as necessary.

1.    **Style of the Case:**

Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s),
Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate
their party type. Also, please list the attorney(s) of record for each party named and
include their bar number, firm name, correct mailing address, and phone number
(including area code).

| Party | Party Type | Attorney(s) |
|-------|-----------|-------------|
| Russell Piccoli | Plaintiff | pro se |
| Libby Rauch | Defendant | C. Lincoln Combs |

2.    **Jury Demand:**

Was a Jury Demand made in another jurisdiction?        Yes        ~~No~~

If "Yes," by which party and on what date?

Plaintiff                    8/25/07

3.    **Answer:**

Was an Answer made in another jurisdiction?    NO    Yes    ~~No~~

If "yes," by which party and on what date?

4.    **Served Parties:**
The following parties have been served at the time this case was removed:

| Party | Date Served | Method of Service |
|-------|-------------|-------------------|
| Defendant | 8/29/07 | Acceptance of Service |

**5.      Unserved Parties:**

The following parties have not been served at the time this case was removed:

         Party                              Reason Not Served

**6.      Nonsuited, Dismissed or Terminated Parties:**

Please indicate changes from the style of the papers from another jurisdiction and the reason for the change:

         Party                              Reason for Change

**7.      Claims of the Parties:**

The filing party submits the following summary of the remaining claims of each party in this litigation:

         Party                      Claim(s)

         Plaintiff              Breach of fiduciary duty, fraud, breach of contract,
                                equitable indemnity

**Pursuant to 28 USC § 1446(a) a copy of all process, pleadings, and orders served in another jurisdiction (State Court) shall be filed with this removal.**

Mark Deatherage (010208)
C. Lincoln Combs (#025080)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
E-mail: mmd@gknet.com
E-mail: Lincoln.Combs@gknet.com

Attorneys for Defendant Rauch

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man,<br><br>Plaintiff,<br><br>vs.<br><br>Libby Rauch, a single woman<br><br>Defendant. | No. _____<br><br>**LOCAL RULE 3.7 NOTIFICATION OF FILING OF NOTICE OF REMOVAL IN STATE COURT** |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA:**

**PLEASE TAKE NOTICE**, pursuant to Local Rule 3.7 and 28 U.S.C. § 1446(d), that a Notification of Filing of Notice of Removal in Federal Court, a true and correct copy of which is attached hereto, has been filed in the Arizona Superior Court for Maricopa County on behalf of Defendant Libby Rauch.

/ / /

/ / /

/ / /

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1    Respectfully submitted this 26th day of September, 2007.

2                                    **GALLAGHER & KENNEDY, P.A.**

3

4                            By:  /s/     C. Lincoln Combs
                                   Mark Deatherage
5                                  C. Lincoln Combs
                                   2575 East Camelback Road
6                                  Phoenix, Arizona 85016
                                   Attorneys for Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

2

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on September 26, 2007, I electronically transmitted a PDF

3   version of this document to the Clerk of the Court, using the CM/ECF System for filing,

4   and that I sent by United States mail a copy of this document, along with a copy of the

5   Notice of Electronic Filing to the following:

6

             Russell Piccoli
7           6039 North 41st Place
            Paradise Valley, Arizona 85253
8           Plaintiff Pro se

9      /s/   Cherise M. Gilbert

10

11  20487-0001/1650311

12

13

14

15

16

17

18

19

20

21

22

# UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA
### OFFICE OF THE CLERK

**RICHARD H. WEARE**
DISTRICT COURT EXECUTIVE / CLERK OF COURT
SANDRA DAY O'CONNOR U. S. COURTHOUSE,
SUITE 130
401 WEST WASHINGTON STREET, SPC 1
PHOENIX, ARIZONA 85003-2118

*Visit our website at www.azd.uscourts.gov*

**RONNIE HONEY**
CHIEF DEPUTY CLERK
SANDRA DAY O'CONNOR U. S. COURTHOUSE,
SUITE 130
401 WEST WASHINGTON STREET, SPC 1
PHOENIX, ARIZONA 85003-2118

**MICHAEL O'BRIEN**
CHIEF DEPUTY CLERK
EVO A. DECONCINI U.S. COURTHOUSE
405 W. CONGRESS, SUITE 1500
TUCSON, ARIZONA 85701-5010

September 27, 2007

TO:   **Counsel of Record/Parties**

RE:   **Case Title:** Piccoli v. Rauch

      **District Court Case Number:** CV07-1844-PHX-SMM

      **Superior Court Case Number:** CV2007-015784

The above case has been removed to the United States District Court for the District of Arizona from the Maricopa County Superior Court.

All subsequent documents in this case are to be filed in compliance with the Federal Rules of Civil Procedure and District of Arizona Local Rules. Any pending matters from the Superior Court are to be refiled in accordance with the rules of this court.

You may contact the docket section at (602)322-7210 with any questions you may have regarding this removal action.

                       Sincerely,

                       **RICHARD H. WEARE, CLERK/DCE**

                       By: s/H. Hand
                              **Deputy Clerk**

---

*The staff of the Clerk's Office ensures the effective, efficient and professional delivery of clerical and administrative services, while fostering a customer-friendly and employee-friendly environment.*

AO 85 (Rev. 8/97) Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge

## (For Use In Civil Cases With District Judge as Presider)

### UNITED STATES DISTRICT COURT

_____ District of _____

|  |  |
|---|---|
| Plaintiff | NOTICE, CONSENT, AND ORDER OF REFERENCE-EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE |
| v. | |
| | Case Number: |
| Defendant | |

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. 636© and Fed.R.Civ.P.73, you are hereby notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. 636© and Fed.R.Civ.P. 73, the parties in this case hereby voluntarily consent to have a United States magistrate judge conduct any and all further proceedings in the case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Signatures | Party Represented | Date |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

### ORDER OF ASSIGNMENT

IT IS HEREBY ORDERED that this case be assigned to _____
United States Magistrate Judge, for all further proceedings and the entry of judgment in accordance with 28 U.S.C. 636(c), Fed.R.Civ.P. 73 and the foregoing consent of the parties. All further documents filed with the court are to carry the following case number
_____.

_____                _____
Date                                              United States District Judge

**NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED <u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.**

Mark Deatherage (010208)
Lincoln Combs (025080)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
E-mail: mmd@gknet.com
E-mail: Lincoln.combs@gknet.com
Attorneys for Defendant Libby Rauch

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man, | Case No. CV07-01844-PHX-SMM |
| Plaintiff, | **ANSWER OF DEFENDANT LIBBY RAUCH** |
| vs. | |
| Libby Rauch, a single woman, | |
| Defendant. | |

Defendant Libby Rauch answers the Complaint as follows:

1.      Ms. Rauch admits the allegations in paragraph 1.

2.      Ms. Rauch is a full-time resident of Carlsbad, California; she denies all other allegations in paragraph 2.

3.      Ms. Rauch owns real property in Arizona but lacks sufficient knowledge or information to form a belief as to the jurisdiction of the Arizona state courts over her and this matter.

4.      Ms. Rauch denies the allegations in paragraph 4.

GALLAGHER & KENNEDY, P.A.
2575 E. CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1615143v1/20487-0001

1    5.    This action has been properly removed to the United States District Court

2    pursuant to 28 U.S.C. § 1441, and Ms. Rauch believes and alleges that the case would be

3    more properly venued in the Southern District of California.

4    6.    Ms. Rauch admits the allegations in paragraph 6.

5    7.    Ms. Rauch admits the allegations in paragraph 7.

6    8.    Ms. Rauch admits the allegations in paragraph 8.

7    9.    Ms. Rauch admits the allegations in paragraph 9.

8    10.    Ms. Rauch admits the allegations in paragraph 10.

9    11.    Ms. Rauch oversaw the remodeling of a residence in Encinitas, California

10    in 2004, but denies the other allegations in paragraph 11.

11    12.    Ms. Rauch admits the allegations in paragraph 12.

12    13.    Ms. Rauch admits the allegations in paragraph 13.

13    14.    Ms. Rauch admits the allegations in paragraph 14.

14    15.    Ms. Rauch denies the allegations in paragraph 15

15    16.    Ms. Rauch denies the allegations in paragraph 16.

16    17.    Ms. Rauch denies the allegations in paragraph 17.

17    18.    Ms. Rauch denies the allegations in paragraph 18.

18    19.    Ms. Rauch denies the allegations in paragraph 19.

19    20.    Ms. Rauch denies the allegations in paragraph 20.

20    21.    Ms. Rauch denies the allegations in paragraph 21.

21    22.    Ms. Rauch denies the allegations in paragraph 22.

22    23.    Ms. Rauch denies the allegations in paragraph 23.

1    24.    Ms. Rauch denies the allegations in paragraph 24.

2    25.    Ms. Rauch denies the allegations in paragraph 25.

3    26.    Ms. Rauch admits the allegations in paragraph 26.

4    27.    Ms. Rauch denies the allegations in paragraph 27.

5    28.    Ms. Rauch denies the allegations in paragraph 28.

6    29.    Ms. Rauch denies the allegations in paragraph 29.

7    30.    Ms. Rauch denies the allegations in paragraph 30.

8    31.    Ms. Rauch denies the allegations in paragraph 31.

9    32.    Ms. Rauch denies the allegations in paragraph 32.

10    33.    Ms. Rauch denies the allegations in paragraph 33.

11    34.    Ms. Rauch denies the allegations in paragraph 34.

12    35.    Ms. Rauch denies the allegations in paragraph 35.

13    36.    Ms. Rauch denies the allegations in paragraph 36.

14    37.    Ms. Rauch denies the allegations in paragraph 37.

15    38.    Ms. Rauch denies the allegations in paragraph 38.

16    39.    Ms. Rauch agrees that on multiple occasions Mr. Piccoli threatened legal

17    and regulatory action against her and her fiancé, but denies the other allegations in

18    paragraph 39.

19    40.    Ms. Rauch denies the allegations in paragraph 40.

20    41.    Ms. Rauch agrees that the parties had numerous discussions towards

21    resolving their dispute in June 2007, but denies the other allegations in paragraph 41.

22    42.    Ms. Rauch denies the allegations in paragraph 42.

43. Ms. Rauch denies the allegations in paragraph 43.

44. Ms. Rauch denies the allegations in paragraph 44.

45. Ms. Rauch denies the allegations in paragraph 45.

46. All admissions, denials and allegations set forth in the preceding paragraphs 1 through 45 are incorporated in answering the allegations in paragraph 46.

47. Ms. Rauch denies the allegations in paragraph 47.

48. Ms. Rauch denies the allegations in paragraph 48.

49. Ms. Rauch denies the allegations in paragraph 49.

50. Ms. Rauch denies the allegations in paragraph 50.

51. Ms. Rauch denies the allegations in paragraph 51.

52. All admissions, denials and allegations set forth in the preceding paragraphs 1 through 51 are incorporated in answering the allegations in paragraph 52.

53. Ms. Rauch denies the allegations in paragraph 53.

54. Ms. Rauch denies the allegations in paragraph 54.

55. Ms. Rauch denies the allegations in paragraph 55.

56. Ms. Rauch denies the allegations in paragraph 56.

57. Ms. Rauch denies the allegations in paragraph 57.

58. Ms. Rauch denies the allegations in paragraph 58.

59. Ms. Rauch denies the allegations in paragraph 59.

60. Ms. Rauch denies the allegations in paragraph 60.

61. Ms. Rauch denies the allegations in paragraph 61.

62. Ms. Rauch denies the allegations in paragraph 62.

1    63.    Ms. Rauch denies the allegations in paragraph 63.

2    64.    Ms. Rauch denies the allegations in paragraph 64.

3    65.    Ms. Rauch denies the allegations in paragraph 65.

4    66.    All admissions, denials and allegations set forth in the preceding

5    paragraphs 1 through 65 are incorporated in answering the allegations in paragraph 66.

6    67.    Ms. Rauch has been a signer on the construction checking account since

7    2003, when she assisted Plaintiff with remodeling of the Laguna Beach residence, and

8    admits the other allegations in paragraph 67.

9    68.    Ms. Rauch denies the allegations in paragraph 68.

10    69.    Ms. Rauch denies the allegations in paragraph 69.

11    70.    Ms. Rauch denies the allegations in paragraph 70.

12    71.    Ms. Rauch denies the allegations in paragraph 71.

13    72.    Ms. Rauch denies the allegations in paragraph 72.

14    73.    All admissions, denials and allegations set forth in the preceding

15    paragraphs 1 through 72 are incorporated in answering the allegations in paragraph 73.

16    74.    Ms. Rauch denies the allegations in paragraph 74.

17    75.    Ms. Rauch denies the allegations in paragraph 75.

18    76.    Ms. Rauch denies the allegations in paragraph 76.

19    77.    Ms. Rauch denies the allegations in paragraph 77.

20    78.    Ms. Rauch denies the allegations in paragraph 78.

21    79.    Ms. Rauch denies the allegations in paragraph 79.

22    80.    All admissions, denials and allegations set forth in the preceding

1653914v1/20487-0001

1 paragraphs 1 through 79 are incorporated in answering the allegations in paragraph 80.

2    81.    Ms. Rauch denies the allegations in paragraph 81.

3    82.    Ms. Rauch denies the allegations in paragraph 82.

4    83.    Ms. Rauch denies the allegations in paragraph 83.

5    84.    Ms. Rauch denies the allegations in paragraph 84.

6    85.    Ms. Rauch denies the allegations in paragraph 85.

7    86.    All admissions, denials and allegations set forth in the preceding

8 paragraphs 1 through 85 are incorporated in answering the allegations in paragraph 86.

9    87.    Ms. Rauch denies the allegations in paragraph 87.

10    88.    Ms. Rauch denies the allegations in paragraph 88.

11    89.    Ms. Rauch denies the allegations in paragraph 89.

12    90.    Ms. Rauch denies the allegations in paragraph 90.

13    91.    Ms. Rauch denies the allegations in paragraph 91.

14    92.    All admissions, denials and allegations set forth in the preceding

15 paragraphs 1 through 91 are incorporated in answering the allegations in paragraph 92.

16    93.    Ms. Rauch denies the allegations in paragraph 93.

17    94.    Any and all other allegations not specifically admitted herein are denied.

18    95.    Ms. Rauch hereby alleges the affirmative defenses of accord and

19 satisfaction, duress, estoppel, failure of consideration, fraud, illegality, license, payment,

20 and release. Future discovery may reveal additional facts which support other affirmative

21 defenses presently available to, but unknown by, Ms. Rauch. Accordingly, if and when

22

1653914v1/20487-0001

1 | additional defenses become known to Ms. Rauch, upon information and belief she will

2 | supplement her disclosure statement to reflect those defenses.

3 |     WHEREFORE, having fully answered and defended, Ms. Rauch asks the Court

4 | for relief as follows:

5 |     1.    That the Complaint be dismissed;

6 |     2.    That she be awarded attorneys' fees and costs as provided by law;

7 |     3.    That the Court grant such other and further relief as appears just and proper.

8 | Respectfully submitted this 3rd of October, 2007.

9 |     **GALLAGHER & KENNEDY, P.A.**

10

11 |     By:  /s/ Mark Deatherage
        Mark Deatherage
        C. Lincoln Combs

12 |         2575 East Camelback Road
        Phoenix, Arizona 85016

13 |         Attorneys for Defendant

14

15

16

17

18

19

20

21

22

1653914v1/20487-0001

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on October 3, 2007, I electronically transmitted a PDF version

3    of this document to the Clerk of the Court, using the CM/ECF System for filing, and that

4    I sent by United States mail a copy of this document, along with a copy of the Notice of

5    Electronic Filing to the following:

6                    Russell Piccoli
                     6039 North 41st Place
7                    Paradise Valley, Arizona 85253
                     Plaintiff Pro se

8

9          _____ /s/  Carolyn Sullivan _____

10

11

12

13

14

15

16

17

18

19

20

21

22

1653914v1/20487-0001

1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT
7                   FOR THE DISTRICT OF ARIZONA
8
9   Russell Piccoli,                    )    No. CV-07-1844-PHX-SMM
                                        )
10            Plaintiff,                )    ORDER  SETTING  RULE  16
                                        )    PRELIMINARY   PRETRIAL
11  v.                                  )    CONFERENCE
                                        )
12  Libby Rauch,                        )
                                        )
13            Defendant.                )
                                        )
14  _____    )

15          This matter now being ready for a Rule 16 scheduling conference,

16          **IT IS HEREBY ORDERED** that pursuant to Rule 16 of the Federal Rules of Civil

17  Procedure a Preliminary Pretrial Conference is set for **January 7, 2008 at 10:00 a.m.** before

18  the Honorable Stephen M. McNamee, in Courtroom #605, sixth floor, Sandra Day O'Connor

19  U.S. Courthouse, 401 W. Washington Street, Phoenix, Arizona.

20              **\* \* \* N O T I C E \* \* \***

21

22          **IT IS FURTHER ORDERED:**

23  1.      **COUNSEL WHO WILL BE RESPONSIBLE FOR TRIAL OF THE**

24          **LAWSUIT FOR EACH PARTY SHALL PERSONALLY APPEAR AND**

25          **PARTICIPATE IN THE PRELIMINARY PRETRIAL CONFERENCE.**

26          Counsel for all parties are directed to Rule 16 of the Federal Rules of Civil

27          Procedure for the objectives of the conference. At least one of the attorneys

28          for each party attending the conference shall have authority to enter into

stipulations and make admissions regarding all matters which may be discussed.

2.    **IN ADDITION TO COUNSEL OF RECORD, EACH PARTY, OR A REPRESENTATIVE OF EACH PARTY (WHO IS <u>NOT</u> COUNSEL OF RECORD) WITH BINDING SETTLEMENT AUTHORITY IF THE PARTY IS AN ENTITY, SHALL BE PRESENT AT THE PRELIMINARY PRETRIAL CONFERENCE.    NO PARTY OR COUNSEL SHALL BE EXCUSED FROM PERSONALLY APPEARING AT THE CONFERENCE WITHOUT PRIOR PERMISSION OF THE COURT. See Fed. R. Civ. P. 16(f).**

3.    Counsel must be prepared to discuss what the parties must prove in order to prevail on their respective claims or defenses at the time of the Preliminary Pretrial Conference.

4.    Counsel should be prepared to discuss logistical matters.

**IT IS FURTHER ORDERED** that all parties are directed to meet at least fourteen (14) days before the Preliminary Pretrial Conference, in accordance with Rule 26(f) of the Federal Rules of Civil Procedure, to discuss the following matters:

1.    The possibility of consent to trial before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), the suitability for referral of this matter to this District's court-annexed voluntary arbitration program or any other alternative dispute resolution mechanism, or the reference of this matter to a special master;

2.    Any matters relating to jurisdiction or venue or the joinder of additional parties;

3.    The nature and bases of their claims and defenses and the possibilities for a prompt settlement or resolution of the case;

4.    A schedule of all pre-trial proceedings;

5.    Modification of pre-trial procedures due to the simplicity or complexity of the case;

- 2 -

1    6.    Arrangements for Initial Disclosures in compliance with Rule 26(a)(1) of the

2    Federal Rules of Civil Procedure.  Unless otherwise stipulated in writing by the

3    parties or otherwise directed by a written Order of this Court, Initial Disclosures shall

4    be made at the initial Rule 26(f) case management meeting or within ten (10) days

5    after the meeting; and

6    7.    Any other matters which counsel may feel will help dispose of the matter in

7    an efficient manner.

8    **IT IS FURTHER ORDERED** that to satisfy the requirements of Federal Rule of

9    Civil Procedure 26(a) the parties shall file with the Clerk of the Court a Notice of Initial

10    Disclosure; copies of the actual disclosures shall therefore not be filed.

11    **IT IS FURTHER ORDERED** that at the Rule 26(f) case management meeting, the

12    parties shall develop a **Proposed Case Management Plan** which shall include brief

13    statements or proposals concerning:

14    1.    The nature of the case, setting forth in brief statements the factual and legal

15    basis of plaintiff's claims and defendant's defenses;

16    2.    A list of the elements of proof necessary for each count of the complaint and

17    each affirmative defense.  Where the burden of proof shifts, each party shall list the

18    elements of the claim or defense that the party must prove in order to prevail.  The list

19    of the elements of proof must contain citations to relevant legal authority (i.e., United

20    States statutory and/or administrative law, U.S. Supreme Court case law, Ninth

21    Circuit Court of Appeals case law, Arizona state case and statutory law, or other

22    authority as dictated by conflicts of law rules);

23    3.    The factual and legal issues genuinely in dispute, and whether they can be

24    narrowed by stipulation or motion;

25    4.    The jurisdictional basis of the case, citing specific statutes;

26    5.    Parties, if any, which have not been served, as well as parties which have not

27    filed an answer or other appearance.  Unless counsel can otherwise show cause, a

28    proposed form of order shall accompany the joint Case Management Plan which

- 3 -

dismisses any party which has not been served, or seeks default judgment on any non-appearing party;

6. The names of parties not subject to the Court's jurisdiction;

7. Whether there are further dispositive or partially dispositive issues to be decided by pretrial motions, and the legal issues about which any pretrial motions are contemplated;

8. Whether the case is suitable for reference to arbitration, to a special master, or to a United States Magistrate Judge for trial;

9. The status of related cases pending before other judges of this Court or before other courts;

10. Suggested changes, if necessary, in the timing, form, or requirement for disclosures under Rule 26(a), Federal Rules of Civil Procedure, including a statement of when Initial Disclosures were made or will be made;

11. Proposed deadlines for:

    (a)    discovery;

    (b)    filing dispositive motions; and

    (c)    disclosure of expert testimony under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure;

12. The scope of discovery and whether discovery should be conducted in phases or should be limited to or focused upon particular issues. For example, where dispositive motions will be filed (*e.g.*, motions for summary judgment or a defense relying on the statute of limitations) counsel should consider limiting discovery to the issue at hand until the court has ruled on the motion;

13. Suggested changes, if any, in the limitations on discovery imposed by the Federal Rules of Civil Procedure;

14. Estimated date that the case will be ready for trial, the estimated length of trial, and any suggestions for shortening the trial;

15.     Whether a jury trial has been requested and whether the request for a jury trial is contested.   If the request for a jury trial is contested, the Proposed Case Management Plan shall set forth the reasons that a trial by jury is in dispute;

16.     The prospects for settlement, including any request to have a settlement conference before another United States District Court Judge or Magistrate Judge, or other request of the court for assistance in settlement efforts; and

17.     Any other matters which counsel feel will aid the Court in resolving this dispute in a just, speedy, and inexpensive manner.

**IT IS FURTHER ORDERED** that all deadlines to which the parties stipulate in the Proposed Case Management Plan shall fall on a Friday barring extenuating circumstances which make doing so impracticable.

**IT IS FURTHER ORDERED** that counsel shall <u>jointly file</u> their Proposed Case Management Plan with the Clerk of the Court **not less than five (5) business days** before the Preliminary Pretrial Conference.  Absent extraordinary circumstances, no extensions of time will be granted.

**IT IS FURTHER ORDERED** that it is the responsibility of counsel for the Plaintiff(s) to initiate the communications necessary to prepare the joint Proposed Case Management Plan. Once contacted by counsel for Plaintiff(s), counsel for Defendant(s) shall act in an expeditious manner to effectuate the preparation of the Case Management Plan.

**IT IS FURTHER ORDERED** that counsel for all parties are expected to comply with Rule 26 of the Federal Rules of Civil Procedure, and to minimize the expense of discovery.

**IT IS FURTHER ORDERED** that the Court, after consultation with counsel and the parties, will enter a Rule 16(b) Scheduling Order concerning, inter alia, discovery and dispositive motions.  To the extent that the Court's Rule 16 Scheduling Order differs from the parties' Proposed Case Management Plan, the provisions of the Court's Order shall supersede the parties' Proposed Case Management Plan and shall control the course of this

1 | action unless modified by subsequent Order of this Court. The parties and their counsel are
2 | all cautioned that the deadlines set in the Rule 16 Scheduling Order shall be strictly enforced.

3 | **IT IS FURTHER ORDERED** that counsel review the requirements of LRCiv 7.1
4 | and LRCiv 7.2, Rules of Practice of the United States District Court for the District of
5 | Arizona ("Local Rules"), with their administrative/support personnel to ensure that all
6 | pleadings are in compliance with the rules.

7 | **IT IS FURTHER ORDERED** that this Court views the Preliminary Pretrial
8 | Conference as critical to its case management responsibilities and the responsibilities of the
9 | parties under Rule 16 of the Federal Rules of Civil Procedure. **FAILURE TO COMPLY**
10 | **WITH EVERY PROVISION OF THIS ORDER MAY LEAD TO SANCTIONS**
11 | **PURSUANT TO FEDERAL RULE.**

12 | **IT IS FURTHER ORDERED** that the Clerk of the Court send copies of this Order
13 | to all counsel of record and to all parties, if any, appearing in propria persona.

DATED this 5th day of October, 2007.

Stephen M. McNamee
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Russell Piccoli, | ) | No. CV 07-1844-PHX-SMM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Libby Rauch, | ) | |
| Defendants. | ) | |
| | ) | |

I hereby recuse myself from any further action in the above-captioned matter and refer this case to the Clerk of Court to be reassigned, by random lot, to another judge in the District of Arizona.

Therefore,

**IT IS ORDERED** that this matter has been reassigned by the Clerk of Court, by random lot, to the <u>Honorable Earl H. Carroll</u>. All future pleadings and papers submitted for filing shall bear the following complete case number: <u>CV 07-1844-PHX-EHC</u>.

DATED this 10th day of October, 2007.

Stephen M. McNamee
United States District Judge

cc: Judge Carroll

1

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7 FOR THE DISTRICT OF ARIZONA

8 Russell Piccoli, a single man )  No. CIV 07-1844-PHX-EHC

9     Plaintiff, )  **ORDER**

10 )

vs. )

11 )

12 )

Libby Rauch, a single woman. )

13 )

14     Defendant. )

15 )

16 )

17 )

                                )

18

19     The Court, being fully advised,

20     IT IS ORDERED that the undersigned hereby recuses himself from further

21 participation in the above-entitled case and the case is reassigned to Magistrate Judge

22 Edward C. Voss by random draw.  Future pleadings filed in this case shall bear the new

23 case number: CIV 07-1844-PHX-ECV.

24     DATED this 10th day of October, 2007.

25

26

27                                            Earl H. Carroll

28                                 United States District Judge

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

## CONSENT TO EXERCISE OF JURISDICTION
## BY UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS TO ALL PARTIES

Pursuant to Local Rule 3.8(a), all civil cases will be randomly assigned to a U.S. District Court Judge or to a U.S. Magistrate Judge.

When a case is filed and assigned to a U.S. Magistrate Judge, consent forms, for all parties, are stamped with a case number and given to the individual who is filing the case. On these forms, consent may be give to the jurisdiction of the magistrate judge by signing the consent section of the form. If all parties consent, the case will remain with the magistrate judge, pursuant to 28:636(c)(1). These cases are assigned to a magistrate judge for all purposes, including trial and final entry of judgment. Any appeal from a judgment entered by the Magistrate Judge may be taken directly to the United States Court of Appeals for the Ninth Circuit in the same manner as an appeal from any other judgment of a district court.

Magistrate Judges do not conduct trials in felony criminal cases. Because of this, criminal cases will not interfere with scheduling and trials before a Magistrate Judge. It is likely that a consent to a Magistrate Judge assignment will mean that this civil case will be resolved sooner and less expensively. However, consent is voluntary, and no adverse consequences of any kind will be felt by any party or attorney who objects to assignment of a case to the Magistrate Judge.

**The party filing the case or removal is responsible for serving all parties with the consent forms.**

If any party chooses the district judge option, the case will be randomly reassigned to a U.S. District Court Judge. To elect to have the case heard before a U.S. District Court Judge, the District Judge Option section of the form must be completed.

**Each party must file the completed consent form and certificate of service with the court no later than 20 days after entry of appearance. This document should be filed in paper form only** and must serve a copy by mail or hand delivery upon all parties of record in the case.

**(FOR USE IN CIVIL CASES WITH MAG JUDGE AS PRESIDER)**

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

|  |  |  |  |
|---|---|---|---|
|  | ) |  |  |
|  | ) |  |  |
| Plaintiff(s) | ) | Case No._____ |  |
|  | ) |  |  |
| vs. | ) |  |  |
|  | ) |  |  |
| Defendant(s) | ) |  |  |
|  | ) |  |  |

**CONSENT TO EXERCISE OF JURISDICTION BY**
**UNITED STATES MAGISTRATE JUDGE**

In accordance with provisions of Title 28, U.S.C. Sec. 636(c)(1), the undersigned (party)(counsel of record for

_____) in the above-captioned civil matter hereby voluntarily consents to have a United States

Magistrate Judge conduct any and all further proceedings in the case, including trial and entry of a final judgment, with

direct review by the Ninth Circuit Court of Appeals if an appeal is filed.

Date: _____        _____
                              Signature

                              _____
                              Print Name

================================================================

**DISTRICT JUDGE OPTION**

Pursuant to Title 28, U.S.C. Sec. 636(c)(2) the undersigned (party)(counsel of record for _____

_____) in the above captioned civil matter acknowledges the availability of a United States Magistrate Judge

but elects to have this case randomly assigned to a United States District Judge.

Date: _____        _____
                              Signature

                              _____
                              Print Name

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Consent was served (by mail) (by hand delivery) on all parties

of record in this case, this _____ day of _____, 19___.

                              _____
                              Signature

**DO NOT ELECTRONICALLY FILE.** RETURN THIS FORM TO THE CLERK'S
OFFICE NOT LATER THAN TWENTY DAYS FROM
YOUR APPEARANCE IN THIS CASE

1
2
3
4
5
6              IN THE UNITED STATES DISTRICT COURT
7                  FOR THE DISTRICT OF ARIZONA
8
9   Russell Piccoli,                  )    No. CV-07-1844-PHX-ECV
                                       )
10            Plaintiff,               )    **ORDER**
                                       )
11  vs.                               )
                                       )
12                                     )
    Libby Rauch,                       )
13                                     )
              Defendant.               )
14                                     )
                                       )
15  ─────────────────────────────────  )
16
17
       This court having recused itself,
18
       IT IS ORDERED directing the Clerk of the Court to reassign this case to another
19
    judge, by random draw.
20
       DATED this 15th day of October, 2007.
21
22
23
24                              _____
                                       Edward C. Voss
25                              United States Magistrate Judge
26
27
28

**MEMORANDUM**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**OFFICE OF THE CLERK**

TO:        **All Counsel of Record**              **DATE: Oct. 16, 2007**

FROM:      **Clerk, U.S. District Court, District of Arizona**

RE:        **Reassignment of Judge**

           **CV 07-1844- PHX-ECV**
           **Piccoli v. Rauch**

_    Pursuant to Local Rule 3.8 (a) and by order of the Court dated ,
the above matter has been reassigned to.___ All future pleadings in this matter should
now list the following complete case number:


 **XX**  By order of the Court, the above matter has been reassigned by random draw
to  Judge James A. Teilborg.  All future pleadings in this matter should now list the
following complete case number: CV 07-1844-PHX-JAT

           **PLEASE CHANGE YOUR RECORDS ACCORDINGLY.**


**RICHARD H. WEARE**
**Clerk of Court/DCE**

by: **s/D. Taylor**_____
       **Deputy Clerk**



**cc: JAT, ECV**

1
2
3
4
5
6                  IN THE UNITED STATES DISTRICT COURT
7                     FOR THE DISTRICT OF ARIZONA
8
9   Russell Piccoli,                    )   No. CV 07-1844-PHX-JAT
                                         )
10           Plaintiff,                  )   **STANDARD CIVIL TRACK INITIAL**
                                         )   **ORDER**
11  vs.                                  )
                                         )
12  Libby Rauch,                         )
             Defendant.                  )
13                                       )
    _____       )
14                                       )
15
16
17       The case having been re-assigned to Judge James A. Teilborg on October 16, 2007,
18       Pursuant to the mandate of the Differentiated Case Management system set forth in
19  Civil Rule 16.2 of the Rules of Practice of the United States District Court for the District of
20  Arizona [hereinafter the "Local Rules"], this action, removed on September 26, 2007, is
21  designated a **STANDARD TRACK** case.
22       The Court notes that an Answer has been filed in this case.  The Court will issue a
23  separate Order which sets the time and date for the Preliminary Scheduling Conference in
24  accordance with Rule 16(b) of the Federal Rules of Civil Procedure.  Because this Court
25  requires a filing that is broader and more detailed than that proposed in a "Form 35 Report
26  of Parties' Planning Meeting," the Order setting the Rule 16 Preliminary Scheduling
27  Conference will also instruct the parties regarding the specific contents the Court expects in
28  their Proposed Case Management Plan.

1        **IT IS FURTHER ORDERED** that full compliance with Rule 26(f) is expected prior
2    to the date of the Rule 16 Scheduling Conference.

3        **IT IS FURTHER ORDERED** that to satisfy the requirements of Federal Rule of
4    Civil Procedure 26(a) the parties shall file with the Clerk of the Court a <u>Notice of Initial</u>
5    <u>Disclosure</u>; copies of the actual disclosures shall therefore not be filed.

6        **IT IS FURTHER ORDERED** that, absent Court approval, no party may seek
7    discovery from any source before the parties have met and conferred as required by Rule
8    26(f).  Fed. R. Civ. P. 26(d).

9        **THE PARTIES ARE CAUTIONED that it is the practice of this Court to not**
10    **extend the Dispositive Motion Deadline beyond the two year anniversary of the case**
11    **being filed in or removed to Federal Court, nor to allow the Discovery Cut-Off to**
12    **extend beyond 30 days before the Dispositive Motion Deadline.** Accordingly, delays in
13    effectuating service of process, delays in seeking a Rule 16 Scheduling Conference,  the
14    filing of or pendency of motions, settlement discussions or mediation, etc, will not be
15    considered as justification to exceed the above referenced two year deadline.

16        DATED this 16th day  of October, 2007.

 

                                       James A. Teilborg
                              United States District Judge

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                        FOR THE DISTRICT OF ARIZONA
8
9   Russell Piccoli,                      )     CV 07-1844-PHX-JAT
10                  Plaintiff,             )
                                           )
11      v.                                 )     **ORDER SETTING RULE 16**
                                           )     **SCHEDULING CONFERENCE**
12  Libby Rauch,                           )
                    Defendants.            )
13  _____)
                                           )
14

15          **IT IS ORDERED** that pursuant to Rule 16 of the Federal Rules of Civil Procedure

16  a Scheduling Conference is reset from January 7, 2008 to **Monday, December 10, 2007**

17  **at 11:30 AM,** before Judge James A. Teilborg. Courtroom 503, Fifth Floor, Sandra Day

18  O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151.

19

20                      **\* \* \* N O T I C E \* \* \***

21          **IT IS FURTHER ORDERED THAT COUNSEL WHO WILL BE**

22  **RESPONSIBLE FOR TRIAL OF THE LAWSUIT FOR EACH PARTY SHALL**

23  **APPEAR AND PARTICIPATE IN THE SCHEDULING CONFERENCE.**

24          **IT IS FURTHER ORDERED** that Counsel for all parties are directed to Rule 16 of

25  the Federal Rules of Civil Procedure for the objectives of the conference.

26          **IT IS FURTHER ORDERED** that at least one of the attorneys for each party

27  attending the conference shall have authority to enter into stipulations and make admissions

28  regarding all matters which may be discussed.

1    **IT IS FURTHER ORDERED** that at the time of the Scheduling Conference, counsel

2    must be prepared to discuss logistical matters and what the parties must prove to prevail on

3    their respective claims or defenses.

4    **IT IS FURTHER ORDERED** that all parties are directed to meet at least **twenty-one**

5    **(21) days** before the Scheduling Conference, in accordance with Rule 26(f) of the Federal

6    Rules of Civil Procedure to discuss the following matters and shall develop a **Joint Proposed**

7    **Case Management Plan** which shall include brief statements or proposals concerning:

8        **1.**    The nature of the case, setting forth in brief statements the factual and legal

9    basis of plaintiff's claims and defendant's defenses;

10       **2.**    The jurisdictional basis of the case, citing specific statutes;[1]

11       **3.**    The parties, if any, which have not been served, as well as any parties which

12   have not filed an answer or other appearance. Unless counsel can otherwise show cause, a

13   proposed form of order shall accompany the <u>Joint</u> Proposed Case Management Plan that

14   dismisses any party which has not been served, <u>including</u> fictitious and unnamed parties;[2]

15       **4.**    The names of parties not subject to the Court's jurisdiction;

16       **5.**    Whether the case is suitable for reference to arbitration, to a special master, or

17   to a United States Magistrate Judge for trial, and, if so, whether the parties consent to trial

18   before a Magistrate Judge;

19

20       **6.**    The status of related cases pending before other judges of this Court or before

21

22   ─────────────────────

23      [1]    If the basis of jurisdiction is diversity, the jurisdictional basis shall include a
statement of the citizenship of every party, including entities. The parties are reminded that

24   a corporation is a citizen of the state where it is incorporated <u>and</u> the state that is its principle
place of business. *See Industrial Tectonics v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990)

25   (citing 28 U.S.C. § 1332(c)). The parties are further reminded that a LLC, like a partnership,

26   is a citizen of every state in which one of its members (or partners) resides. *See Belleville
Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003).

27

28      [2]    Plaintiff shall also move under Federal Rule of Civil Procedure 55 for default
against any party who has been timely served and has not timely answered.

1    other courts;

2        **7.**     Suggested changes, if necessary, in the timing, form, or requirement for

3    disclosures under Rule 26(a), Federal Rules of Civil Procedure, including a statement of

4    when Initial Disclosures were made or will be made. Initial disclosures shall be in

5    compliance with Rule 26(a)(1) of the Federal Rules of Civil Procedure. Unless otherwise

6    stipulated to in writing by the parties or directed by a written order of this Court, Initial

7    Disclosures shall be made at the initial Rule 26(f) Case Management Meeting or within ten

8    (10) days after the meeting. **IT IS FURTHER ORDERED** that to satisfy the requirements

9    of Federal Rule of Civil Procedure 26(a), the parties shall file with the Clerk of the Court a

10   Notice of Initial Disclosure; copies of the actual disclosures shall not be filed.

11        **8.**     Proposed deadlines for:

12           **a.**     filing a motion to amend the pleadings;

13           **b.**     disclosure of expert testimony under Rule 26(a)(2)(C) of the Federal

14                 Rules of Civil Procedure;

15           **c.**     discovery;[3] and

16           **d.**     filing dispositive motions.

17        **9.**     Suggested changes, if any, in the limitations on discovery imposed by the

18    Federal Rules of Civil Procedure and/or Civil Local Rule 16.2 of the Rules of Practice for

19    the United States District Court for the District of Arizona;

20        **10.**    The estimated date that the case will be ready for trial, the estimated length of

21    trial, and any suggestions for shortening the trial;

22        **11.**    Whether a jury trial has been requested and whether the request for a jury trial

23

24        [3] In preparing the <u>Joint</u> Proposed Case Management Plan, the parties shall suggest

25   their proposed deadlines keeping in mind that the Court will **not** entertain discovery disputes after the close of discovery barring extraordinary circumstances. Therefore, the proposed

26   deadlines shall give sufficient time to **complete** discovery by the deadline (**complete** being

27   defined as including the time to propound discovery, the time to answer all propounded discovery, the time for the Court to resolve all discovery disputes, and the time to complete

28   any final discovery necessitated by the Court's ruling on any discovery disputes).

1  is contested. If the request for a jury trial is contested, the <u>Joint</u> Proposed Case Management

2  Plan shall set forth the reasons why a trial by jury is in dispute;

3       **12.**    The prospects for settlement, including (a) any request to have a settlement

4  conference before another United States District Court Judge or a Magistrate Judge, or

5  (b) other request of the Court for assistance in settlement efforts; and

6       **13.**    Modification of pretrial procedures due to the simplicity or complexity of the

7  case, and any other matters which counsel believes will aid the Court in resolving this dispute

8  in a just, speedy, and inexpensive manner

9       **IT IS FURTHER ORDERED** that counsel shall **<u>jointly file</u>** their Proposed Case

10 Management Plan with the Clerk of the Court **not less than seven (7) business days** before

11 the Scheduling Conference. Absent extraordinary circumstances, no extensions of time will

12 be granted.

13      **IT IS FURTHER ORDERED** that it is the responsibility of Plaintiff(s) to

14 expeditiously initiate the communications necessary to prepare the <u>Joint</u> Proposed Case

15 Management Plan. Once contacted by Plaintiff(s), Defendant(s) shall act in an expeditious

16 manner to effectuate the preparation of the Plan.

17      **IT IS FURTHER ORDERED** that counsel for all parties are expected to comply

18 with Rule 26 of the Federal Rules of Civil Procedure and minimize the expense of discovery.

19      The Court, after consultation with counsel and the parties, will enter a Rule 16

20 Scheduling Order concerning, inter alia, discovery and dispositive motions. To the extent

21 that the Court's Rule 16 Scheduling Order differs from the parties' Proposed Case

22 Management Plan, the provisions in the Court's Order shall supersede the parties' Proposed

23 Case Management Plan and shall control the course of this action unless modified by

24 subsequent Order of this Court. The parties and their counsel are all cautioned that the

25 deadlines set forth in the Rule 16 Scheduling Order shall be strictly enforced.

26

27

28

1

2      **IT IS FURTHER ORDERED** that counsel review the requirements of Civil Local

3   Rule 7.1 and Civil Local Rule 7.2, Rules of Practice of the United States District Court for

4   the District of Arizona, with their administrative/support personnel to ensure that all

5   pleadings are in compliance with the Rules.

6      **IT IS FURTHER ORDERED** that this Court views the Scheduling Conference as

7   critical to its case management responsibilities and the parties' responsibilities under Rule

8   1 of the Federal Rules of Civil Procedure.

9      DATED this 16th day of October, 2007.

10

11

12

13                              James A. Teilborg
                                United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Mark Deatherage (010208)
   C. Lincoln Combs (025080)
2  GALLAGHER & KENNEDY, P.A.
   2575 East Camelback Road
3  Phoenix, Arizona 85016
   Telephone: (602) 530-8000
4  Facsimile: (602) 530-8500
   E-mail: mmd@gknet.com
5  E-mail: Lincoln.combs@gknet.com

6  Attorneys for Defendant Rauch

7            **IN THE UNITED STATES DISTRICT COURT**

8               **FOR THE DISTRICT OF ARIZONA**

9  Russell Piccoli, a single man,          | No. Case No. CV07-01844-PHX-JET

10          Plaintiff,

11     vs.                                  **JOINT STIPULATION FOR
                                            SETTLEMENT CONFERENCE**

12 Libby Rauch, a single woman

13          Defendant.

14       Plaintiff Russell Piccoli and Defendant Libby Rauch hereby stipulate and agree to

15 the following.

16       1.    The parties, pursuant to Federal Rule of Civil Procedure 16(a)(5) and LRCiv

17 72.2(5), jointly request that the Court assign a Magistrate Judge to schedule a Settlement

18 Conference for a date at the earliest convenience of all of the parties.

19       2.    The parties stipulate that the Defendant's twenty (20) day time period to file

20 an amended responsive pleading without leave of Court, pursuant to Federal Rule of Civil

21 Procedure 15(a), be stayed pending the scheduling and completion of a Settlement

22 Conference, and that if the case is not resolved at the Settlement Conference, Defendant

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1  shall then have an additional ten (10) days from that date to file an amended responsive

2  pleading without leave of Court, except nothing in this stipulation shall revive any

3  procedural right previously waived by defendant prior to October 19, 2007.

4      3.    The parties further stipulate that if the case is not resolved at the Settlement

5  Conference, venue of this case shall and should then be transferred to the Southern District

6  of California, pursuant to 28 U.S.C. § 1404(a), as the more appropriate venue for

7  convenience of the parties and witnesses and in the interests of justice.

8      DATED this ____ day of October, 2007.

9  **GALLAGHER & KENNEDY, P.A.**

10

11  By: _/s/___ C. Lincoln Combs_____    By: ___/s/___ C. Lincoln Combs_____
          Mark Deatherage                              Russell Piccoli
12        C. Lincoln Combs                             6039 North 41st Place
          2575 East Camelback Road                     Paradise Valley, Arizona 85253
13        Phoenix, Arizona 85016                        Plaintiff pro se
          Attorneys for Defendant

14

15

16

17

18

19

20

21

22

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on October 23, 2007, I electronically transmitted a PDF version

3    of this document to the Clerk of the Court, using the CM/ECF System for filing.

4

5          /s/    Cherise M. Gilbert

6    20487-0001 / 1663410

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 8   Russell Piccoli, a single man, | No. Case No. CV07-01844-PHX-JET |
| 9          Plaintiff, | |
| 10    vs. | **ORDER** |
| 11   Libby Rauch, a single woman | |
| 12         Defendant. | |

13         Pursuant to the Joint Stipulation for Settlement Conference submitted by the parties

14 on October __, 2007, and for good cause shown,

15         IT IS HEREBY ORDERED that this case be referred to a Magistrate Judge to

16 schedule and conduct a Settlement Conference at the earliest convenience of the parties;

17         IT IS FURTHER ORDERED that the Defendant's time to file an amended

18 responsive pleading without leave of Court pursuant to Federal Rule of Civil Procedure

19 15(a) is stayed pending the scheduling and completion of a Settlement Conference, and

20 that if the case is not resolved at the Settlement Conference, Defendant shall then have an

21 additional ten (10) days from that date to file an amended responsive pleading without

22

1  leave of Court.

2      IT IS FURTHER ORDERED that if the case is not resolved at the Settlement

3  Conference, venue of this case shall then be transferred to the Southern District of

4  California, pursuant to 28 U.S.C. § 1404(a), as the more appropriate venue for convenience

5  of the parties and witnesses and in the interests of justice.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



1  Mark D. Deatherage  (010208)
   C. Lincoln Combs  (025080)
2  GALLAGHER & KENNEDY, P.A.
   2575 E. Camelback Road, Suite 1100
3  Phoenix, Arizona 85016
   Telephone:    (602) 530-8000
4  Facsimile:    (602) 530-8500
   E-mail:        mmd@gknet.com
5  E-mail:        Lincoln.combs@gknet.com
   Attorneys for Defendant Libby Rauch

6

### IN THE UNITED STATES DISTRICT COURT

7

### FOR THE DISTRICT OF ARIZONA

8

9  Russell Piccoli, a single man,              No.  CV07-01844-PHX-JET

10        Plaintiff,

11  vs.                                          **JOINT STIPULATION FOR
                                                 SETTLEMENT CONFERENCE**

12  Libby Rauch, a single woman,

13        Defendant.

14        Plaintiff Russell Piccoli and Defendant Libby Rauch hereby stipulate and agree to

15  the following.

16        1.    The parties stipulate that the Defendant's twenty (20) day time period to file

17  an amended responsive pleading without leave of Court, pursuant to Federal Rule of Civil

18  Procedure 15(a), be stayed as of October 23, 2007, pending the scheduling and completion

19  of a Settlement Conference before Magistrate Judge David Duncan, as ordered by this

20  Court on October 24, 2007.  If the case is not resolved at the Settlement Conference,

21  Defendant shall then have an additional ten (10) days from that date to file an amended

22  responsive pleading without leave of Court, except nothing in this Stipulation shall revive

*GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000*

1   any procedural right previously waived by defendant prior to October 19, 2007.

2        2.    The parties further stipulate that if the case is not resolved at the Settlement

3   Conference, venue of this case shall and should then be transferred to the Southern District

4   of California, pursuant to 28 U.S.C. § 1404(a), as the more appropriate venue for

5   convenience of the parties and witnesses and in the interests of justice.

6        RESPECTFULLY SUBMITTED this 31st day of October, 2007.

7   GALLAGHER & KENNEDY, P.A.

8   By:   s/ C. Lincoln Combs                   /s/ C. Lincoln Combs
           Mark Deatherage                       Russell Piccoli
9          C. Lincoln Combs                       6039 North 41st Place
           2575 E. Camelback Road, Suite 1100     Paradise Valley, Arizona 85253
10         Phoenix, Arizona 85016                  Plaintiff *Pro Se*
           Attorneys for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

                                    2

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on October 31, 2007, I electronically transmitted a PDF version

3  of this document to the Clerk of the Court, using the CM/ECF System for filing.

4

                                        _s/ Dawn Sylvester_____

5

20487-0001/1663410

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man, | No. Case No. CV07-01844-PHX-JET |
| Plaintiff, | |
| vs. | **ORDER** |
| Libby Rauch, a single woman | |
| Defendant. | |

Pursuant to the Joint Stipulation for Settlement Conference submitted by the parties on October 31, 2007, and for good cause shown,

IT IS ORDERED that the Defendant's time to file an amended responsive pleading without leave of Court pursuant to Federal Rule of Civil Procedure 15(a) is stayed as of October 23, 2007, pending the scheduling and completion of a Settlement Conference, and that if the case is not resolved at the Settlement Conference, Defendant shall then have an additional ten (10) days from that date to file an amended responsive pleading without leave of Court.

IT IS FURTHER ORDERED that if the case is not resolved at the Settlement Conference, venue of this case shall then be transferred to the Southern District of

1    California, pursuant to 28 U.S.C. § 1404(a), as the more appropriate venue for convenience

2    of the parties and witnesses and in the interests of justice.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

2

1
2
3
4
5
6                   IN THE UNITED STATES DISTRICT COURT
7                     FOR THE DISTRICT OF ARIZONA
8
9   Russell Piccoli,                    )
10                  Plaintiff,           )    NO.  CIV 07-1844-PHX-JAT
11  vs.                                  )
                                         )    **SETTLEMENT CONFERENCE ORDER**
12  Libby Rauch,                         )
13                  Defendant.           )
14  _____  )
15          This case has been referred to United States Magistrate Judge David K. Duncan for a
16  Settlement Conference.
17          The purpose of the Settlement Conference is to facilitate settlement of this case, if that
18  is appropriate.  It will be conducted in such a manner as not to prejudice any party in the event
19  settlement is not reached.  To that end, all matters communicated to the undersigned expressly
20  in confidence will be kept confidential, and will not be disclosed to any other party.  Rule 408,
21  Federal Rules of Evidence, applies to all aspects of the Settlement Conference.   All
22  communications and information exchanges made in the settlement process, not otherwise
23  discoverable, will not be admissible in evidence for any purpose, and shall not be used for any
24  purpose outside the settlement process itself.  At the conclusion of the Settlement Conference,
25  all documents submitted by the parties shall be returned, destroyed, or otherwise disposed of
26  in the manner directed by the settlement judge.
27
28

1      At the Settlement Conference and subject to modification by the Court depending on the

2  uniqueness of each case, each party, through counsel or individually if unrepresented, may be

3  asked to give a brief presentation outlining the factual and legal highlights of that party's case

4  and may be asked general and specific questions by the Court. Thereafter, separate and private

5  caucuses will be held with each party, the party's representative and the settlement judge.

6      This Order mandating the parties', representatives', and insurers' physical appearance

7  is intended to increase the efficiency and effectiveness of the Settlement Conference by

8  reducing the time for communication of offers and expanding the ability to explore the varied

9  options for settlement; to give the adverse parties the opportunity to hear the rationale and

10  arguments regarding the likelihood of success of the claims/defenses directly from the lawyers

11  who will be trying the case; to meet the litigants and representatives themselves; and to hear

12  first-hand the candid, objective comments by a neutral settlement judge regarding the case or

13  the judicial process.

14      Experience has taught the undersigned that the physical presence, rather than the

15  availability by telephone, and participation of those individuals with the authority to settle cases

16  will substantially increase the likelihood of settlement and will lead to more meaningful

17  negotiations. Consequently, and pursuant to the authority granted to the Court in 28 U.S.C. §

18  473(b)(5), representatives of the parties with full, complete, and unlimited authority to discuss

19  and settle the case shall be physically present unless expressly excused by the undersigned by

20  formal motion and order issued prior to the subject settlement conference for good cause shown.

21      Accordingly,

22      Pursuant to Rule 16, Federal Rules of Civil Procedure, and 28 U.S.C. § 473(b)(5),

23      **IT IS ORDERED** that:

24      1. All parties and their counsel who are responsible for trial of this case **SHALL**

25  physically appear before the undersigned settlement judge, Courtroom 305, Sandra Day

26  O'Connor U. S. Courthouse, 401 West Washington Street, Phoenix, Arizona on **Monday,**

27  **December 10, 2007, at 1:30 p.m.**

28

1     If a Defendant is an insured party, a representative of that party's insurer with full,

2  complete, and unlimited authority to discuss and settle the case **SHALL** physically appear at

3  the aforesaid date and time.  An uninsured or self-insured corporate party **SHALL** physically

4  appear at aforesaid Settlement Conference through its authorized representative with full,

5  complete, and unlimited authority to discuss and settle the case.[1]

6     2. Experience also teaches that settlement conferences are often unproductive unless the

7  parties have exchanged demands and offers of compromise before the conference and have

8  made a serious effort to settle the case on their own.  Accordingly, before arriving at the

9  Settlement Conference the parties are to negotiate and make a good faith effort to settle the case

10  without the involvement of the Court.  The parties shall exchange written correspondence

11  regarding settlement. The Plaintiff's demand shall be delivered to defense counsel, the insurers'

12  and corporate representatives not less than **twenty (20) days** before the Settlement Conference

13  Memoranda are due.  Defendant's response to the demand shall be delivered to Plaintiff's

14  counsel not less than **fourteen (14) days** before the Settlement Conference Memoranda are due.

15     3.  If a third person or corporate entity is involved, such as a worker's compensation

16  carrier or a health insurance carrier, who asserts a substantial lien on any settlement monies for

17  medical and hospital expenses and/or lost wages, arrangements shall be made to notify said

18  person or entity of the Settlement Conference. Plaintiff's counsel shall promptly provide a true

---

[1]This requirement that a representative physically appear with full, complete, and unlimited authority is only satisfied where the representative is the decision-maker with full authority to settle the matter: for a party asserting a claim, this means full authority to stipulate to dismissal and release of all claims; for a party defending a claim, this means full authority to satisfy the opposing party's existing settlement demand or offer.  If it becomes apparent to the Court that a party has not complied with this requirement, the Court will recess the settlement conference until such time that the noncomplying party is in full compliance with this Order.  The Court may further order the noncomplying party to show cause why it should not pay the opposing party's reasonable attorney's fees and transportation costs incurred in attending the first conference.

- 3 -

1    and complete copy of this Order to said person, entity or its authorized representative. *See,*

2    A.R.S. § 23-1023(c); *Stout v. State Compensation Fund*, 197 Ariz. 238, 3 P.3d 1158 (2000).

3        4. In the absence of a prior Order by the undersigned to the contrary, all Settlement

4    Conference Memoranda are to be exchanged between counsel no later than **five (5) business**

5    **days prior to the Settlement Conference.** Counsel and all individuals attending the Settlement

6    Conference shall review all parties' memoranda and counsel shall explain the settlement

7    conference procedures to their clients and representatives before the Settlement Conference.

8        Each party shall provide the Court with that party's Settlement Conference

9    Memorandum, **at least five (5) business days before the Settlement Conference**. Said

10    Memoranda may be transmitted by facsimile (602-322-7639) or by such other method of

11    transmittal as will assure receipt by the undersigned by no later than the deadline prescribed in

12    the preceding sentence. The Settlement Conference Memoranda shall **NOT** be filed with the

13    Clerk. Each Memorandum shall address the following:

14        a. A brief statement of the facts of the case.

15        b. A brief statement of the claims or defenses as appropriate for the party, i.e., statutory

16    or other grounds upon which the claims or defenses are founded, including the citation to

17    appropriate authorities; a forthright evaluation of the parties' likelihood of prevailing on the

18    claims and defenses; and a description of the major issues in dispute.

19        c. A summary of the proceedings to date including rulings on motions and motions

20    outstanding, if any.

21        d. An estimate of the costs and time to be expended for further discovery, pretrial

22    litigation and trial, including past and future attorneys' and experts' fees.

23        e. A brief statement of the facts and issues upon which the parties agree.

24        f. Whether there is/are any distinct or dominant issue(s) which, if resolved, would likely

25    aid in the disposition of the case.

26        g. The relief sought.

27

28                                             - 4 -

1       h.  Each party's position on settlement, including present demands and offers and the

2 history of past settlement discussions, offers and demands.

3       In the absence of any Order by the undersigned to the contrary, each party's Settlement

4 Conference Memorandum shall not exceed seventeen (17) pages exclusive of attachments and

5 shall otherwise comply with the Rules of Practice for the United States District Court for the

6 District of Arizona. *See*, LRCiv 7.2, 7.2(a) and 7.1(b)(1), Rules of Practice, District of Arizona.

7 No responsive memorandum shall be permitted.

8       5.  If the Settlement Conference is held, the Court will assume that the parties have

9 agreed to separate meetings (caucuses) with the settlement judge.  Ethical rules prohibit <u>ex parte</u>

10 caucuses without such agreement.  By appearing at this conference, the Court will deem that

11 the parties have consented to this procedure and have waived any objection thereto unless a

12 written Objection is filed not less than three (3) business days before the Settlement Conference.

13       6.  Absent good cause shown, if any party, counsel or representative fails to promptly

14 appear at the Settlement Conference, fails to comply with the terms of this Order, is

15 substantially unprepared to meaningfully participate in the Settlement Conference, or fails to

16 participate in good faith in the Settlement Conference, sanctions may be imposed pursuant to

17 Rules 16(f) and 37(b)(2)(D), Federal Rules of Civil Procedure, which may include an award of

18 reasonable attorney's fees and expenses and/or a finding of contempt. *See* 28 U.S.C. § 636(e).

19       7.  Counsel and any party, if unrepresented by counsel, shall notify the Court in writing

20 at least ten (10) business days before the Settlement Conference if an attorney or unrepresented

21 party believes that the Settlement Conference would be a futile act resulting in an economic

22 waste because, for example, a party or insurer has adopted a position from which that party or

23 insurer refuses to deviate.  The Court will then consider whether the Settlement Conference

24 would be helpful and, if not, whether the Settlement Conference should be canceled or whether

25 other forms of alternative dispute resolution should be considered.  If there is disagreement

26 between or among the attorneys or unrepresented parties on this issue or any other issue, they

27 are instructed to arrange for a telephonic conference with the Court and all counsel as soon as

28

1    reasonably practical.  If no such conference is arranged, it will be presumed that all counsel,

2    their clients and any unrepresented party believe that there is a reasonable, good faith

3    opportunity for settlement, and that the involvement of a settlement judge is needed to

4    accomplish it.

5            DATED this 31st day of October, 2007.

6

7

8    _____
                        David K. Duncan
9                 United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          - 6 -

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man, | No. CV 07-1844-PHX-JAT |
| Plaintiff, | |
| vs. | **ORDER** |
| Libby Rauch, a single woman | |
| Defendant. | |

Pursuant to the Joint Stipulation submitted by the parties on October 31, 2007 (Doc. #13),

IT IS ORDERED that the Defendant's time to file an amended responsive pleading without leave of Court pursuant to Federal Rule of Civil Procedure 15(a) is extended to December 21, 2007.

IT IS FURTHER ORDERED that if the case is not resolved at the Settlement Conference, by January 2, 2008, the parties shall move to transfer venue of this case to the Southern District of California, pursuant to 28 U.S.C. § 1404(a), as the more appropriate venue for convenience of the parties and witnesses and in the interests of justice.

Dated this 1st day of November, 2007.

James A. Teilborg
United States District Judge



1  Russell Piccoli  (004492)
   6039 North 41st Place
2  Paradise Valley, Arizona  85253
   Telephone:    (602) 285-5000
3  Facsimile:    (602) 285-5100
   Plaintiff *Pro Se*

4
   Mark Deatherage  (010208)
5  Lincoln Combs  (025080)
   GALLAGHER & KENNEDY, P.A.
6  2575 E. Camelback Road, Suite 1100
   Phoenix, Arizona 85016
7  Telephone:    (602) 530-8000
   Facsimile:    (602) 530-8500
8  E-mail:       mmd@gknet.com
   E-mail:       lincoln.combs@gknet.com
9  Attorneys for Defendant Libby Rauch

10
                    IN THE UNITED STATES DISTRICT COURT
11                    FOR THE DISTRICT OF ARIZONA

12  Russell Piccoli, a single man,          No.  CV07-01844-PHX-JAT

13                  Plaintiff,

14        vs.                               **JOINT MOTION TO VACATE
                                            RULE 16 SCHEDULING CONFERENCE**
15  Libby Rauch, a single woman,

16                  Defendant.

17        The parties to this action respectfully request that this Court vacate the Rule 16

18  Conference currently set for December 10, 2007 at 11:30 a.m.  The reason for this request

19  is that a settlement conference has been scheduled before the Honorable David Duncan on

20  that same date at 1:30 p.m. and the parties wish to give every opportunity to resolving this

21  matter at the settlement conference before undertaking the additional expense of preparing

22

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1  their Joint Proposed Case Management Plan.    Additionally, pursuant to this Court's

2  November 1, 2007 Order, if the settlement conference is unsuccessful the parties will then

3  move to transfer venue of this case to the Southern District of California by January 2,

4  2008, further obviating the need to prepare a case management plan in this Court.

5       RESPECTFULLY SUBMITTED this 28th day of November, 2007.

6

7       _____s/ Russell Piccoli_____
        6039 North 41st Place
8       Paradise Valley, Arizona  85253
        Plaintiff *Pro Se*

9

10      GALLAGHER & KENNEDY, P.A.

11      By _s/ C. Lincoln Combs_____
             Mark M. Deatherage
12           C. Lincoln Combs
             2575 E. Camelback Road, Suite 1100
13           Phoenix, Arizona 85016
             Attorneys for Defendant

14

15

16      20487-0001/1674298

17

18

19

20

21

22

2

1
2
3
4
5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

6

| Russell Piccoli, a single man, | No. CV07-01844-PHX-JAT |
|---|---|

7

Plaintiff,

8

vs.

**ORDER VACATING RULE 16 SCHEDULING CONFERENCE**

9

Libby Rauch, a single woman,

10

Defendant.

11      Having reviewed the Joint Motion of the parties, and good cause appearing therefor,

12      IT IS ORDERED vacating the Rule 16 Scheduling Conference currently scheduled

13 for December 10, 2007 at 11:30 a.m.

14
15
16
17
18      20487-0001/1674482
19
20
21
22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man,<br><br>     Plaintiff,<br><br>vs.<br><br>Libby Rauch, a single woman,<br><br>     Defendant. | No.  CV 07-1844-PHX-JAT<br><br><br>**ORDER VACATING RULE 16 SCHEDULING CONFERENCE** |

Having reviewed the Joint Motion of the parties (Doc. #16), and good cause appearing therefor,

IT IS ORDERED vacating the Rule 16 Scheduling Conference currently scheduled for December 10, 2007 at 11:30 a.m.

Dated this 29th day of November, 2007.

James A. Teilborg
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man, | No.  CV 07-1844-PHX-JAT |
| Plaintiff, | |
| vs. | **ORDER VACATING RULE 16 SCHEDULING CONFERENCE** |
| Libby Rauch, a single woman, | |
| Defendant. | |

Having reviewed the Joint Motion of the parties (Doc. #16), and good cause appearing therefor,

IT IS ORDERED vacating the Rule 16 Scheduling Conference currently scheduled for December 10, 2007 at 11:30 a.m.

Dated this 29th day of November, 2007.

James A. Teilborg
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
CIVIL MATTER - GENERAL

Phoenix/Prescott Division

CIV 07-1844-PHX-JAT                    DATE:  December 10, 2007

Piccoli v. Rauch

---

HONORABLE DAVID K. DUNCAN (70BL)

Deputy Clerk:            A. Herrera
Court Reporter/ECR:      N/A

APPEARANCE FOR PLAINTIFF(S):     APPEARANCE FOR DEFENDANT(S):

Russell Piccoli                  Lincoln Combs
                                 Sterling Stires
                                 Scot Clark

---

PROCEEDINGS:    _____ Open Court    _X_ Chambers    _____ Other

Settlement conference held.  Settlement not reached.

Time: 3 hrs. 45 mins.

Mark Deatherage (010208)
Lincoln Combs (025080)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
E-mail: mmd@gknet.com
E-mail: lincoln.combs@gknet.com
Attorneys for
    Defendant/Counterclaimant Libby Rauch

GALLAGHER & KENNEDY, P.A.
2575 E. CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Piccoli, a single man, | Case No. CV07-01844-PHX-SMM |
| Plaintiff, | |
| vs. | **AMENDED ANSWER** |
| | **-- AND --** |
| Libby Rauch, a single woman, | **COUNTERCLAIM** |
| Defendant. | |
| | **[JURY TRIAL DEMANDED]** |
| Libby Rauch, | |
| Counterclaimant, | |
| vs. | |
| Russell Piccoli, | |
| Counterdefendant. | |

///
///
///

16156936v1/20487-0001

1    Defendant Libby Rauch answers the Complaint as follows:

2    1.    Ms. Rauch admits the allegations in paragraph 1.

3    2.    Answering paragraph 2, Ms. Rauch is a full-time resident of Carlsbad,

4    California, and owns a vacation property in Lake Havasu, Arizona which she regularly

5    visits.

6    3.    Ms. Rauch owns real property in Arizona but lacks sufficient knowledge or

7    information to form a belief as to the jurisdiction of the Arizona state courts over this

8    matter.

9    4.    Ms. Rauch denies the allegations in paragraph 4.

10    5.    This action has been properly removed to the United States District Court

11    pursuant to 28 U.S.C. § 1441, and the parties have stipulated to jointly move that the case

12    be transferred to the Southern District of California where it would be more properly

13    venued.

14    6.    Ms. Rauch admits the allegations in paragraph 6.

15    7.    Ms. Rauch admits the allegations in paragraph 7.

16    8.    Ms. Rauch admits the allegations in paragraph 8.

17    9.    Ms. Rauch admits the allegations in paragraph 9.

18    10.    Ms. Rauch admits the allegations in paragraph 10.

19    11.    Ms. Rauch oversaw the remodeling of a residence in Encinitas, California

20    in 2004, but denies the other allegations in paragraph 11.

21    12.    Ms. Rauch admits the allegations in paragraph 12.

22

2

13.   Ms. Rauch admits the allegations in paragraph 13.

14.   Ms. Rauch admits that she attempted to locate suitable properties for remodeling and sale and that the parties had discussions regarding the potential budget for the project, but denies the other allegations in paragraph 14.

15.   Ms. Rauch admits that she located the Olivenhain property and recommended it for the joint venture's next remodeling project, and that she and the Plaintiff speculated about the profit potential of the project, but denies the other allegations in paragraph 15

16.   Ms. Rauch admits the parties had numerous telephone conversations regarding the project, but denies the other allegations in paragraph 16.

17.   Ms. Rauch denies the allegations in paragraph 17.

18.   Ms. Rauch denies the allegations in paragraph 18.

19.   Ms. Rauch denies the allegations in paragraph 19.

20.   Ms. Rauch denies the allegations in paragraph 20.

21.   Ms. Rauch admits that the Plaintiff purchased the Olivenhain property in May 2006, and that he established a checking account tied to line of credit for her to use for managing the remodeling of the property, but denies the other allegations in paragraph 21.

22.   Ms. Rauch denies the allegations in paragraph 22.

23.   Ms. Rauch admits that the Plaintiff did not express any concern about the progress of the Olivenhain remodeling project in 2006 and early 2007, but denies the

3

1 | other allegations in paragraph 23.

2 |     24.    Ms. Rauch denies the allegations in paragraph 24.

3 |     25.    Ms. Rauch admits that she met with the Plaintiff at the property in March

4 | 2007, but denies the other allegations in paragraph 25.

5 |     26.    Ms. Rauch admits the allegations in paragraph 26.

6 |     27.    Ms. Rauch denies the allegations in paragraph 27.

7 |     28.    Ms. Rauch denies the allegations in paragraph 28.

8 |     29.    Ms. Rauch denies the allegations in paragraph 29.

9 |     30.    Ms. Rauch denies the allegations in paragraph 30.

10 |     31.    Ms. Rauch denies the allegations in paragraph 31.

11 |     32.    Ms. Rauch denies the allegations in paragraph 32.

12 |     33.    Ms. Rauch admits that the Plaintiff called her on or about April 25

13 | regarding the returned checks, but denies the other allegations in paragraph 33.

14 |     34.    Ms. Rauch denies the allegations in paragraph 34.

15 |     35.    Ms. Rauch denies the allegations in paragraph 35.

16 |     36.    Ms. Rauch denies the allegations in paragraph 36.

17 |     37.    Ms. Rauch denies the allegations in paragraph 37.

18 |     38.    Ms. Rauch denies the allegations in paragraph 38.

19 |     39.    Ms. Rauch admits that on multiple occasions the Plaintiff threatened civil,

20 | criminal, and regulatory action against her and her family, but denies the other allegations

21 | in paragraph 39.

22 |

4

40.     Ms. Rauch denies the allegations in paragraph 40.

41.     Ms. Rauch admits that the parties had numerous discussions attempting to resolve their dispute in June 2007, but denies the other allegations in paragraph 41.

42.     Ms. Rauch denies the allegations in paragraph 42.

43.     Ms. Rauch denies the allegations in paragraph 43.

44.     Ms. Rauch denies the allegations in paragraph 44.

45.     Ms. Rauch denies the allegations in paragraph 45.

46.     All admissions, denials and allegations set forth in the preceding paragraphs 1 through 45 are incorporated in answering the allegations in paragraph 46.

47.     Ms. Rauch denies the allegations in paragraph 47.

48.     Ms. Rauch denies the allegations in paragraph 48.

49.     Ms. Rauch denies the allegations in paragraph 49.

50.     Ms. Rauch denies the allegations in paragraph 50.

51.     Ms. Rauch denies the allegations in paragraph 51.

52.     All admissions, denials and allegations set forth in the preceding paragraphs 1 through 51 are incorporated in answering the allegations in paragraph 52.

53.     Ms. Rauch denies the allegations in paragraph 53.

54.     Ms. Rauch denies the allegations in paragraph 54.

55.     Ms. Rauch denies the allegations in paragraph 55.

56.     Ms. Rauch denies the allegations in paragraph 56.

57.     Ms. Rauch denies the allegations in paragraph 57.

1    58.    Ms. Rauch denies the allegations in paragraph 58.

2    59.    Ms. Rauch denies the allegations in paragraph 59.

3    60.    Ms. Rauch denies the allegations in paragraph 60.

4    61.    Ms. Rauch denies the allegations in paragraph 61.

5    62.    Ms. Rauch denies the allegations in paragraph 62.

6    63.    Ms. Rauch denies the allegations in paragraph 63.

7    64.    Ms. Rauch denies the allegations in paragraph 64.

8    65.    Ms. Rauch denies the allegations in paragraph 65.

9    66.    All admissions, denials and allegations set forth in the preceding

10   paragraphs 1 through 65 are incorporated in answering the allegations in paragraph 66.

11   67.    Ms. Rauch has been a signer on the construction checking account since

12   2003, when she assisted Plaintiff with remodeling of the Laguna Beach residence, and

13   admits the other allegations in paragraph 67.

14   68.    Ms. Rauch denies the allegations in paragraph 68.

15   69.    Ms. Rauch denies the allegations in paragraph 69.

16   70.    Ms. Rauch denies the allegations in paragraph 70.

17   71.    Ms. Rauch denies the allegations in paragraph 71.

18   72.    Ms. Rauch denies the allegations in paragraph 72.

19   73.    All admissions, denials and allegations set forth in the preceding

20   paragraphs 1 through 72 are incorporated in answering the allegations in paragraph 73.

21   74.    Ms. Rauch denies the allegations in paragraph 74.

22

1     75.     Ms. Rauch denies the allegations in paragraph 75.

2     76.     Ms. Rauch denies the allegations in paragraph 76.

3     77.     Ms. Rauch denies the allegations in paragraph 77.

4     78.     Ms. Rauch denies the allegations in paragraph 78.

5     79.     Ms. Rauch denies the allegations in paragraph 79.

6     80.     All admissions, denials and allegations set forth in the preceding

7     paragraphs 1 through 79 are incorporated in answering the allegations in paragraph 80.

8     81.     Ms. Rauch denies the allegations in paragraph 81.

9     82.     Ms. Rauch denies the allegations in paragraph 82.

10    83.     Ms. Rauch denies the allegations in paragraph 83.

11    84.     Ms. Rauch denies the allegations in paragraph 84.

12    85.     Ms. Rauch denies the allegations in paragraph 85.

13    86.     All admissions, denials and allegations set forth in the preceding

14    paragraphs 1 through 85 are incorporated in answering the allegations in paragraph 86.

15    87.     Ms. Rauch denies the allegations in paragraph 87.

16    88.     Ms. Rauch denies the allegations in paragraph 88.

17    89.     Ms. Rauch denies the allegations in paragraph 89.

18    90.     Ms. Rauch denies the allegations in paragraph 90.

19    91.     Ms. Rauch denies the allegations in paragraph 91.

20    92.     All admissions, denials and allegations set forth in the preceding

21    paragraphs 1 through 91 are incorporated in answering the allegations in paragraph 92.

22

93.    Ms. Rauch denies the allegations in paragraph 93.

94.    Any and all other allegations not specifically admitted herein are denied.

95.    Ms. Rauch affirmatively alleges that the Complaint fails to state a claim for which relief can be granted.

96.    Ms. Rauch hereby alleges the affirmative defenses of accord and satisfaction, duress, estoppel, failure of consideration, fraud, illegality, license, payment, release, statute of frauds, and waiver. Future discovery may reveal additional facts which support other affirmative defenses presently available to, but unknown by, Ms. Rauch. Accordingly, if and when additional defenses become known to Ms. Rauch, upon information and belief she will supplement her disclosure statement to reflect those defenses.

WHEREFORE, having fully answered and defended the Complaint, Ms. Rauch asks the Court for relief as follows:

1.    That the Complaint be dismissed;

2.    That Ms. Rauch be awarded attorneys' fees and costs as provided by law;

3.    That the Court grant such other and further relief as appears just and proper.

///

///

///

## COUNTERCLAIM

### Venue and Jurisdiction

For her Counterclaim against Plaintiff Russell Piccoli, Counterclaimant Libby Rauch alleges as follows:

1. Counterclaimant Libby Rauch lives with her husband, Dave Simon, in Carlsbad, California.

2. Counterdefendant Russell Piccoli is a resident of Paradise Valley, Arizona.

3. This action has been properly removed to the United States District Court pursuant to 28 U.S.C. §§ 1332(a) and 1441, and the parties have stipulated to jointly move this action to the Southern District of California where it would be more properly venued.

4. This court has jurisdiction over the Counterdefendant as an Arizona resident, and the Southern District of California would also have personal jurisdiction over the Counterdefendant based on his extensive personal and business contacts with that jurisdiction, including his ownership of and business dealings and other actions pertaining to the California residential real properties at issue in this case.

### Background of the Personal and Business Relationship Between the Parties

5. Ms. Rauch met the Counterdefendant through her ex-husband and they have been friends for approximately thirteen years.

6. Ms. Rauch and the Counterdefendant had a close friendship and the Counterdefendant is godfather to her two daughters.

9

7.    In the years leading up to the transaction at issue in this case, Ms. Rauch and the Counterdefendant had such a close relationship that she had free access to stay with her daughters at any of the Counterdefendant's residences.

8.    Mr. Simon became acquainted with the Counterdefendant through Ms. Rauch approximately four years ago.

**The Joint Venture to Remodel and Sell California Residential Properties**

9.    In 2003, Ms. Rauch and the Counterdefendant entered into a business arrangement to purchase and remodel a residential property in Laguna Beach, California.

10.    Ms. Rauch and the Counterdefendant orally agreed that the Counterdefendant would purchase the Laguna Beach property and provide construction/remodeling funds, Ms. Rauch would supervise remodeling and decorating of the property, and the Counterdefendant would then sell the property and compensate Ms. Rauch for her time at an hourly rate.

11.    Because of the close friendship between the Counterdefendant and Ms. Rauch, all agreements related to the business arrangement and subsequent joint venture were oral.

12.    To facilitate Ms. Rauch's management of the remodeling projects and participation in the joint venture, the Counterdefendant set up a line of credit and, checking account, and credit card for Ms. Rauch to use to purchase remodeling and decorating materials and pay subcontractors ("the Construction Account").

13.    Because Ms. Rauch and the Counterdefendant had such a close personal relationship, Ms. Rauch would often use the Construction Account for personal expenditures unrelated to the remodeling projects, and would also sometimes use personal funds to pay remodeling expenses.

14.    The Counterdefendant also occasionally used the Construction Account for personal expenditures unrelated to the remodeling projects.

15.    Ms. Rauch always reimbursed the Counterdefendant for her personal expenditures, or Ms. Rauch and the Counterdefendant orally agreed that her personal expenditures would be offset against her compensation or share of the profits from the joint venture.

16.    The Counterdefendant was fully aware of Ms. Rauch's use of the Construction Account for personal expenditures for almost four years, and never raised any concerns with such use until this dispute arose in April 2007.

17.    Ms. Rauch has reimbursed the Counterdefendant for any and all personal use of the Construction Account during the four years of their business relationship.

18.    Except when the Counterdefendant wanted to discuss her personal expenditures, he did not regularly provide copies of the statements or copies of checks for the Construction Account to Ms. Rauch during any of the remodeling projects. When she did see records of the Construction Account, they were only partial statements and copies of selected checks.

19.     Mr. Simon, a licensed contractor in California, was a framing subcontractor for the remodeling of the Laguna Beach property, and informally advised Ms. Rauch in dealings with the other subcontractors and the general contractor she had hired to manage the remodeling.

20.     When difficulties arose in dealing with the general contractor for the remodeling of the Laguna Beach property, Ms. Rauch and the Counterdefendant agreed that Mr. Simon should step in and serve as general contractor for the project.

21.     The joint venture for remodeling of the Laguna Beach property was financially successful, and the Counterdefendant compensated Ms. Rauch for time spent managing the remodeling as the parties had agreed.

22.     Because of the financial success of the remodeling of the Laguna Beach property, Ms. Rauch and the Counterdefendant decided to remodel another residential property.

23.     Ms. Rauch was again to manage the remodeling of a residential property – this time a residence in Encinitas, California already owned by the Counterdefendant – but this time when the property was sold she and the Counterdefendant would split any profit from the remodeling equally between the two of them.

24.     Mr. Simon was indirectly and informally involved in the remodeling of the Encinitas property, occasionally drawing upon his background as a licensed contractor to advise Ms. Rauch but not otherwise directly participating in the remodeling project.

12

25.     The Counterdefendant chose not to sell the Encinitas property and instead kept it as a vacation home.   The Counterdefendant had the Encinitas property re-appraised and Ms. Rauch was paid based on the new appraisal.

26.     Throughout the remodeling and sale of the Encinitas property Ms. Rauch continued to occasionally use the Construction Account for personal expenditures unrelated to the joint venture, always later reimbursing the Counterdefendant in full for her personal use with his consent or orally agreeing with the Counterdefendant to have her personal expenditures offset against her share of the profits from sale of the property.

**The Counterdefendant Fails to Fully Fund the Olivenhain Property Project**

27.     After two successful projects together, Ms. Rauch and the Counterdefendant decided to continue the joint venture and purchase and remodel another residential property.

28.     This time the Counterdefendant expressly insisted that Mr. Simon officially be part of the joint venture and serve as the general contractor, because of his construction expertise.

29.     The parties orally agreed that all profits after sale of the new property would be split equally between the Counterdefendant and Ms. Rauch and Mr. Simon as a couple.

30.     To facilitate the joint venture, Ms. Rauch went to school for and obtained her California real estate license.

13

31.     Ms. Rauch located a property in the Olivenhain neighborhood of Encinitas, California ("the Olivenhain property") for the joint venture's next remodeling project.

32.     Ms. Rauch, Mr. Simon, and the Counterdefendant orally agreed and discussed that the Olivenhain property would have approximately a purchase price of $1.1 million, and that remodeling was expected to require another $650,000.

33.     The remodeling cost of $650,000 was based on a construction timeline and budget provided by Mr. Simon – in his capacity as general contractor for the remodeling project and partner in the joint venture – to the Counterdefendant that estimated construction costs at $506,887.20.  The $650,000 figure would accommodate any extra construction costs or overages.

34.     The parties agreed upon the choice of the Olivenhain property, and the Counterdefendant purchased the Olivenhain property in May 2006.

35.     In August 2006, the Counterdefendant selected and hired an architect to draw up plans for the remodeling of the Olivenhain property.

36.     On October 24, 2006, the plans were submitted to the City of Encinitas, and the plans were approved in early January 2007.

37.     Construction on the remodeling of the Olivenhain property began on January 10, 2007.

38.     Ms. Rauch regularly gave the Counterdefendant updates on the progress of construction in January, February, and March of 2007.  The Counterdefendant also regularly reviewed construction timelines and job lists submitted to him by Mr. Simon.

1    During this time the Counterdefendant did not raise any concerns about construction at

2    the Olivenhain property to either Ms. Rauch or Mr. Simon.

3        39.    In March 2007, the Counterdefendant visited the Olivenhain property with

4    Ms. Rauch, and told her he was pleased with the progress of construction.

5        40.    On or about April 12, 2007, the Counterdefendant again visited the

6    Olivenhain property with Ms. Rauch and indicated he was pleased with the progress of

7    construction.

8        41.    During the April 12, 2007 visit, Ms. Rauch informed the Counterdefendant

9    that several large payments to subcontractors were due on April 16, 2007.    The

10   Counterdefendant inquired about the balance of the Construction Account, and Ms.

11   Rauch replied that she did not know because the Counterdefendant was the only one who

12   regularly received bank statements for the Construction Account.  The Counterdefendant

13   laughed and said he would call the bank and check the status of the Construction

14   Account.

15       42.    On April 17, 2007, Ms. Rauch wrote several large checks drawn on the

16   Construction Account to pay subcontractors.

17       43.    On April 26, 2007 the Counterdefendant called Ms. Rauch and told her that

18   some of the checks she had written had been returned and that, because he was having

19   financial difficulties, he was unable to contribute the funds he had agreed to provide for

20   the remodeling project.  He further informed Ms. Rauch she was going to have to pay the

21   subcontractors and any other remaining costs of the remodeling project.

22

44.     The total amount of the three returned checks was $74,233.11.

45.     Upon information and belief, the total amount expended on construction costs to that date – not including the returned checks – was $456,610, far short of the $650,000 amount the Counterdefendant agreed to provide for construction costs and approximately $50,000 less than the construction budget of $506,887.20 provided to the Counterdefendant by Mr. Simon before the Counterdefendant closed on the purchase of the Olivenhain property.

46.     In May 2007, Ms. Rauch used the limited records of the Construction Account she had been provided to investigate the status and statement history of the Construction Account and discovered that the Counterdefendant had never funded it to the $650,000 amount agreed to by the parties to the joint venture.

47.     Ms. Rauch discovered that not only had the Counterdefendant paid for the majority of the down payment and many of the regular mortgage payments out of the Construction Account – in violation of the parties' agreement that only construction or remodeling costs would be paid out of the Construction Account – but also the Counterdefendant had regularly withdrawn significant funds from the Construction Account for his personal use.

**The Counterdefendant's Campaign of Harassment, Threats, Slander and Libel**

48.     In late April, Ms. Rauch informed the Counterdefendant that she did not have the funds to complete the remodeling of the Olivenhain property or pay the subcontractors whose checks had been returned.

49. At that time, the Counterdefendant asked if Ms. Rauch could still help him through his financial difficulties by overseeing the remodeling, even if the potential for profiting from the project had been greatly reduced or eliminated.

50. Ms. Rauch agreed to continue to manage the remodeling as a personal favor to the Counterdefendant.

51. Over the next several days, Ms. Rauch and the Counterdefendant had numerous discussions regarding financing options to complete the remodeling of the Olivenhain property, and the Counterdefendant continued to pressure her to advance her or her family's money in place of the amount he had promised but failed to provide.

52. On or about May 8, 2007, in conversations with both Ms. Rauch and members of her family, the Counterdefendant began making threats of civil and criminal legal action against Ms. Rauch if she did not contribute funding to the remodeling project or buy the Olivenhain property from him.

53. Subsequent to his initiating threats of legal action in May 2007, the Counterdefendant also expressly barred Ms. Rauch from entering the Olivenhain property, to continue overseeing the construction and remodeling or otherwise.

54. The threats to and harassment of Ms. Rauch and her family members continued and escalated throughout May, causing severe emotional distress to Ms. Rauch and other members of her family.

55. In June 2007, the Counterdefendant, an experienced litigator and member of the Arizona bar, prepared a written settlement agreement for Ms. Rauch and Mr.

Simon's signature wherein Ms. Rauch agreed to not only pay any outstanding amounts owed to subcontractors on the Olivenhain property but also to "indemnify [the Counterdefendant] from loss on the deal" in return for the Counterdefendant not pursuing criminal and civil legal action against her.

56.    Despite constant harassment and threats from the Counterdefendant, Ms. Rauch never signed the written settlement agreement, and in June 2007 retained San Diego counsel and ceased direct communications with the Counterdefendant.

57.    The Counterdefendant rejected all subsequent offers from Ms. Rauch through her San Diego counsel of settlement or alternative dispute resolution.

58.    The three subcontractors whose payment checks were returned filed liens on the Olivenhain property.

59.    In oral and written communications to the subcontractors seeking to have them release their liens on the Olivenhain property, the Counterdefendant made numerous allegations that Ms. Rauch defrauded and embezzled money from him, and that her criminal acts resulted in the subcontractors' payment checks being returned for insufficient funds.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

60.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

61.    Ms. Rauch and the Counterdefendant had an oral agreement to purchase, remodel, and sell the Olivenhain property ("the Oral Agreement").

18

1      62.    Under the terms of the Oral Agreement, Ms. Rauch was to oversee the

2  remodeling and use her California real estate license to sell the Olivenhain property in

3  return for half of the profit realized from its sale.

4      63.    Under the terms of the Oral Agreement, the Counterdefendant was to use

5  his funds to purchase the Olivenhain property and provide $650,000 to the Construction

6  Account to cover the expected $506,887.20 cost of construction plus any overages or

7  additional construction costs.

8      64.    The Counterdefendant did not fund the Construction Account as the parties

9  had agreed; in fact only approximately $465,000.00 was allotted for construction, far less

10  than even the $506,887.20 estimated cost.

11      65.    Instead, the Counterdefendant used the Construction Account to make the

12  down payment and mortgage payments for the Olivenhain property, and also for cash

13  advances for his own personal use.

14      66.    The Counterdefendant's failure to fund the Construction Account and his

15  misuse of the funds he placed into the Construction Account constituted a material breach

16  of the Oral Agreement, causing Ms. Rauch to fail to receive the expected benefit from the

17  Oral Agreement of the sale of the Olivenhain property at a profit, in an amount to be

18  determined at trial.

19
### SECOND CAUSE OF ACTION
**(Breach of Contract – Bad Faith)**

20

21      67.    Counterclaimant Rauch incorporates all previous allegations in this

Counterclaim as though fully set forth herein.

22

19

1    68.    The Counterdefendant willfully and intentionally failed to fund the

2    Construction Account in the amount of $650,000, as he was required to do under the Oral

3    Agreement.

4    69.    After willfully and intentionally failing to perform his duties under the Oral

5    Agreement, the Counterdefendant willfully and intentionally barred Ms. Rauch from

6    further performance of her duties under the Oral Agreement, and threatened her with

7    criminal and civil legal action if she did not agree to alter the terms of the Oral

8    Agreement to his benefit.

9    70.    The Counterdefendant was consciously aware that these actions were both

10    in violation of his duties under the Oral Agreement and wrongful and harmful, yet

11    continued to act in the same manner with deliberate disregard to Ms. Rauch's rights

12    under the Oral Agreement.

13    71.    The Counterdefendant's actions were done out of spite and created a

14    substantial risk of tremendous harm to Ms. Rauch such that the Counterdefendant should

15    be found liable for punitive damages, in an amount to be proven at trial.

16    **THIRD CAUSE OF ACTION**
**(Breach of Contract – Implied Covenant of Good Faith and Fair Dealing)**

17

18    72.    Counterclaimant Rauch incorporates all previous allegations in this

Counterclaim as though fully set forth herein.

19

20    73.    The Oral Agreement contained an implied covenant of good faith and fair

dealing, requiring that neither party do anything that would prevent the other party from

21    receiving the benefits of the agreement.

22

20

74.    Despite the presence of this implied covenant, the Counterdefendant intentionally failed to perform his contractual duty to fund the remodeling of the Olivenhain property, and expressly barred Ms. Rauch from further performance of her duties under the oral agreement.

75.    The Counterdefendant also made threats of criminal and civil legal action against Ms. Rauch to attempt to change the terms of the Oral Agreement.

76.    The Counterdefendant's actions in failing to perform under the Oral Agreement, barring Ms. Rauch from further performance under the Oral Agreement, and using threats of legal action to attempt to coerce Ms. Rauch into altering the terms of the Oral Agreement violated the duty of good faith and fair dealing the Counterdefendant owed to Ms. Rauch.

77.    The Counterdefendant's breach of the implied covenant of good faith and fair dealing was material and caused Ms. Rauch to fail to receive the expected benefits of the Oral Agreement, damaging her in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Contract – Failure of Consideration and Failure to Perform)

78.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

79.    The Counterdefendant did not perform his contractual duties under the Oral Agreement or provide sufficient consideration in return for Ms. Rauch's performance under the Oral Agreement.

80.    This breach was willful and material.

21

81.    As such, the Oral Agreement has been rendered unenforceable, and Ms. Rauch is entitled either to the expected profits from the sale of the Olivenhain property or to compensation for her time spent managing and overseeing the remodeling of the Olivenhain property, in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

82.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

83.    After failing to fund the Construction Account such that payment checks to subcontractors were returned, and after Ms. Rauch refused to advance her own or her family's money to pay the subcontractors and finish the remodeling of the Olivenhain property, the Counterdefendant began a campaign of threats and harassment against her and members of her family in order to coerce her into modifying the terms of the Oral Agreement so that she would absorb all the future costs and losses of the remodeling project.

84.    This campaign of harassment and threats included regular phone calls to Ms. Rauch, her father, her husband, and her home.

85.    In telephone conversations with Ms. Rauch or her family members, and in profane voice mails left on her cell phone and home answering machine, the Counterdefendant repeatedly accused her of criminal activity and threatened to report her to various law enforcement authorities, as well as pursue civil and regulatory action against her and her husband.

86.    The campaign of threats and harassment only ceased when Ms. Rauch obtained legal counsel, who instructed the Counterdefendant to direct all communications to counsel instead of Ms. Rauch personally.

87.    The Counterdefendant continued to defame Ms. Rauch and her family members to third parties even after commencing this litigation.

88.    Because of the position of trust the Counterdefendant had with Ms. Rauch as her partner, friend, and godfather to her children, his threats and harassment abused that position of trust, and his attempts to extort contractual concessions from Ms. Rauch constituted outrageous conduct that the Counterdefendant should have realized was nearly certain to cause severe emotional distress to Ms. Rauch.

89.    Ms. Rauch has been damaged by the Counterdefendant's outrageous, intentional conduct in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**(Negligent Infliction of Emotional Distress)**

90.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

91.    As described in paragraphs 81-85, *supra*, the Counterdefendant engaged in a campaign of threats and harassment against Ms. Rauch and members of her family in order to coerce her into modifying the terms of the Oral Agreement so that she would absorb all the future costs and losses of the Olivenhain property remodeling project.

92.    Because of the position of trust the Counterdefendant had with Ms. Rauch as her business partner, friend, and godfather to her children, his threats and harassment

23

abusing that position of trust constituted outrageous conduct that the Counterdefendant knew or should have known would cause severe emotional injury to Ms. Rauch.

93.    Ms. Rauch has been damaged by the Counterdefendant's conduct in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Abuse of Process)

94.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

95.    The Counterdefendant is willfully using this civil action and has threatened other criminal and/or regulatory action primarily to accomplish the ulterior purpose of forcing Ms. Rauch to alter the terms of the Oral Agreement to his benefit and her detriment.

96.    The Counterdefendant's misuse of the legal process or procedure has caused injury and damages to Ms. Rauch in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### (Slander)

97.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

98.    In numerous conversations with subcontractors holding liens on the Olivenhain property, the Counterdefendant has alleged that Ms. Rauch was part of a criminal conspiracy to defraud and embezzle funds from the Counterdefendant, and that her criminal activity caused the subcontractors not to be paid.

24

99.    These oral communications are known by the Counterdefendant to be false.

100.    False, oral communications to a third party that allege criminal activity or dishonest conduct are per se slanderous, and Ms. Rauch can recover general and special damages from the Counterdefendant in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
### (Libel)

101.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

102.    In written communications with subcontractors holding liens on the Olivenhain property, the Counterdefendant has expressly stated that Ms. Rauch was part of a criminal conspiracy to defraud and embezzle funds from the Counterdefendant, and that her criminal activity caused the subcontractors not to be paid.

103.    These written communications are known by the Counterdefendant to be false.

104.    False, written communications to a third party that allege criminal or dishonest conduct are per se libelous, and Ms. Rauch can recover general and special damages from the Counterdefendant in an amount to be proven at trial.

## TENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty to a Partner)

105.    Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

106.   The Counterdefendant was Ms. Rauch's partner in an ongoing joint venture to purchase, remodel, and sell residential real property in southern California, with profits split equally between the Counterdefendant and Ms. Rauch.

107.   Partners owe fiduciary duties to one another requiring them to deal with one another in the utmost good faith and to fully disclose to one another all material facts relating to partnership affairs within their knowledge.

108.   By failing to fund the Construction Account, by misrepresenting to Ms. Rauch the status of the funding of the Construction Account, by barring Ms. Rauch from continuing performance of her duties under the Oral Agreement, and by threatening Ms. Rauch with criminal and civil legal action in order to coerce her into modifying the terms of the Oral Agreement, the Counterdefendant breached his fiduciary duty to Ms. Rauch.

109.   The Counterdefendant's breach of fiduciary duty caused Ms. Rauch to be denied the benefits of the partnership, damaging her in an amount to be proven at trial.

### ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

110.   Counterclaimant Rauch incorporates all previous allegations in this Counterclaim as though fully set forth herein.

111.   Ms. Rauch managed the remodeling of the Olivenhain property for over a year, working hundreds of hours on the project.

112.   Ms. Rauch performed these tasks in reliance upon the Oral Agreement with the Counterdefendant that she would share in the profits of the sale of the Olivenhain property once remodeling was completed and the Olivenhain property was sold.

113.   The Counterdefendant has now barred her from involvement with the remodeling project, reneged and failed to peform the Oral Agreement, and is continuing to remodel the Olivenhain property independent of Ms. Rauch.

114.   The Counterdefendant has benefited from the hundreds of hours Ms. Rauch spent managing the remodeling project, and owes Ms. Rauch compensation in an amount to be determined at trial.

WHEREFORE, Counterclaimant Rauch demands judgment against the Counterdefendant as follows:

A.   For Ms. Rauch's damages in an amount to be proved at trial;

B.   For Ms. Rauch's costs and reasonable attorneys' fees; and

C.   For such other and further relief as this Court deems just and proper under the circumstances.

DATED this 21st day of December, 2007.

GALLAGHER & KENNEDY, P.A.

By_____s/ Lincoln Combs_____
    Mark Deatherage
    Lincoln Combs
    2575 East Camelback Road
    Phoenix, Arizona 85016-9225
    Attorneys for Defendant/Counterclaimant

///
///
///

27

1  COPY of the foregoing electronically
   transmitted via the U.S. District Court
2  Electronic Case Filing System
   this 21st day of December, 2007 to:
3
   Russell Piccoli, Esq.
4  6039 North 41st Place
   Paradise Valley, Arizona  85253
5  Plaintiff *Pro Se*

6    s/ Dawn Sylvester
   1656936
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

28

1
2
3
4
5
6                  **IN THE UNITED STATES DISTRICT COURT**
7                      **FOR THE DISTRICT OF ARIZONA**
8
9    Russell Piccoli,                    )    CV 07-1844-PHX-JAT
                                         )
10             Plaintiff,                )
                                         )
11       v.                              )    **ORDER SETTING RULE 16**
                                         )    **SCHEDULING CONFERENCE**
12   Libby Rauch,                        )
                   Defendants.           )
13   _____ )
                                         )
14
15
16          **IT IS ORDERED** that pursuant to Rule 16 of the Federal Rules of Civil Procedure
17   a Scheduling Conference is set for **Monday, February 25, 2008 at 10:00 AM,**  Fifth Floor,
18   Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona
19   85003-2151.
20                        **\* \* \* N O T I C E \* \* \***
21          **IT IS FURTHER ORDERED THAT COUNSEL WHO WILL BE**
22   **RESPONSIBLE FOR TRIAL OF THE LAWSUIT FOR EACH PARTY SHALL**
23   **APPEAR AND PARTICIPATE IN THE SCHEDULING CONFERENCE.**
24          **IT IS FURTHER ORDERED** that Counsel for all parties are directed to Rule 16 of
25   the Federal Rules of Civil Procedure for the objectives of the conference.
26          **IT IS FURTHER ORDERED** that at least one of the attorneys for each party
27   attending the conference shall have authority to enter into stipulations and make admissions
28   regarding all matters which may be discussed.

1

2       **IT IS FURTHER ORDERED** that at the time of the Scheduling Conference, counsel

3  must be prepared to discuss logistical matters and what the parties must prove to prevail on

4  their respective claims or defenses.

5       **IT IS FURTHER ORDERED** that all parties are directed to meet at least **twenty-one**

6  **(21) days** before the Scheduling Conference, in accordance with Rule 26(f) of the Federal

7  Rules of Civil Procedure to discuss the following matters and shall develop a **Joint Proposed**

8  **Case Management Plan** which shall include brief statements or proposals concerning:

9       **1.**     The nature of the case, setting forth in brief statements the factual and legal

10  basis of plaintiff's claims and defendant's defenses;

11       **2.**     The jurisdictional basis of the case, citing specific statutes;[1]

12       **3.**     The parties, if any, which have not been served, as well as any parties which

13  have not filed an answer or other appearance.  Unless counsel can otherwise show cause, a

14  proposed form of order shall accompany the <u>Joint</u> Proposed Case Management Plan that

15  dismisses any party which has not been served, <u>including</u> fictitious and unnamed parties;[2]

16       **4.**     The names of parties not subject to the Court's jurisdiction;

17       **5.**     Whether the case is suitable for reference to arbitration, to a special master, or

18  to a United States Magistrate Judge for trial, and, if so, whether the parties consent to trial

19  before a Magistrate Judge;

20       **6.**     The status of related cases pending before other judges of this Court or before

21

22

23      [1]  If the basis of jurisdiction is diversity, the jurisdictional basis shall include a statement of the citizenship of every party, including entities.  The parties are reminded that

24  a corporation is a citizen of the state where it is incorporated <u>and</u> the state that is its principle place of business.  *See Industrial Tectonics v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990)

25  (citing 28 U.S.C. § 1332(c)).  The parties are further reminded that a LLC, like a partnership, is a citizen of every state in which one of its members (or partners) resides.  *See Belleville*

26  *Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003).

27

28      [2]  Plaintiff shall also move under Federal Rule of Civil Procedure 55 for default against any party who has been timely served and has not timely answered.

1  other courts;

2  **7.** Suggested changes, if necessary, in the timing, form, or requirement for

3  disclosures under Rule 26(a), Federal Rules of Civil Procedure, including a statement of

4  when Initial Disclosures were made or will be made.  Initial disclosures shall be in

5  compliance with Rule 26(a)(1) of the Federal Rules of Civil Procedure.  Unless otherwise

6  stipulated to in writing by the parties or directed by a written order of this Court, Initial

7  Disclosures shall be made at the initial Rule 26(f) Case Management Meeting or within ten

8  (10) days after the meeting. **IT IS FURTHER ORDERED** that to satisfy the requirements

9  of Federal Rule of Civil Procedure 26(a), the parties shall file with the Clerk of the Court a

10  Notice of Initial Disclosure; copies of the actual disclosures shall not be filed.

11  **8.** Proposed deadlines for:

12    **a.** filing a motion to amend the pleadings;

13    **b.** disclosure of expert testimony under Rule 26(a)(2)(C) of the Federal

14        Rules of Civil Procedure;

15    **c.** discovery;[3] and

16    **d.** filing dispositive motions.

17  **9.** Suggested changes, if any, in the limitations on discovery imposed by the

18  Federal Rules of Civil Procedure and/or Civil Local Rule 16.2 of the Rules of Practice for

19  the United States District Court for the District of Arizona;

20  **10.** The estimated date that the case will be ready for trial, the estimated length of

21  trial, and any suggestions for shortening the trial;

22  **11.** Whether a jury trial has been requested and whether the request for a jury trial

23

24  _____

    [3] In preparing the Joint Proposed Case Management Plan, the parties shall suggest

25  their proposed deadlines keeping in mind that the Court will **not** entertain discovery disputes
   after the close of discovery barring extraordinary circumstances.  Therefore, the proposed

26  deadlines shall give sufficient time to **complete** discovery by the deadline (**complete** being

27  defined as including the time to propound discovery, the time to answer all propounded
   discovery, the time for the Court to resolve all discovery disputes, and the time to complete

28  any final discovery necessitated by the Court's ruling on any discovery disputes).

1   is contested. If the request for a jury trial is contested, the <u>Joint</u> Proposed Case Management

2   Plan shall set forth the reasons why a trial by jury is in dispute;

3       **12.**    The prospects for settlement, including (a) any request to have a settlement

4   conference before another United States District Court Judge or a Magistrate Judge, or

5   (b) other request of the Court for assistance in settlement efforts; and

6       **13.**    Modification of pretrial procedures due to the simplicity or complexity of the

7   case, and any other matters which counsel believes will aid the Court in resolving this dispute

8   in a just, speedy, and inexpensive manner

9       **IT IS FURTHER ORDERED** that counsel shall **<u>jointly file</u>** their Proposed Case

10  Management Plan with the Clerk of the Court **not less than seven (7) business days** before

11  the Scheduling Conference. Absent extraordinary circumstances, no extensions of time will

12  be granted.

13      **IT IS FURTHER ORDERED** that it is the responsibility of Plaintiff(s) to

14  expeditiously initiate the communications necessary to prepare the <u>Joint</u> Proposed Case

15  Management Plan. Once contacted by Plaintiff(s), Defendant(s) shall act in an expeditious

16  manner to effectuate the preparation of the Plan.

17      **IT IS FURTHER ORDERED** that counsel for all parties are expected to comply

18  with Rule 26 of the Federal Rules of Civil Procedure and minimize the expense of discovery.

19      The Court, after consultation with counsel and the parties, will enter a Rule 16

20  Scheduling Order concerning, inter alia, discovery and dispositive motions. To the extent

21  that the Court's Rule 16 Scheduling Order differs from the parties' Proposed Case

22  Management Plan, the provisions in the Court's Order shall supersede the parties' Proposed

23  Case Management Plan and shall control the course of this action unless modified by

24  subsequent Order of this Court. The parties and their counsel are all cautioned that the

25  deadlines set forth in the Rule 16 Scheduling Order shall be strictly enforced.

26      **IT IS FURTHER ORDERED** that counsel review the requirements of Civil Local

27  Rule 7.1 and Civil Local Rule 7.2, Rules of Practice of the United States District Court for

28  the District of Arizona, with their administrative/support personnel to ensure that all

- 4 -

1    pleadings are in compliance with the Rules.

2        **IT IS FURTHER ORDERED** that this Court views the Scheduling Conference as

3    critical to its case management responsibilities and the parties' responsibilities under Rule

4    1 of the Federal Rules of Civil Procedure.

5        DATED this 2nd day of January, 2008.

6

7

8

9

10

11    _____
      James A. Teilborg
12    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1　Mark M. Deatherage  (010208)
　C. Lincoln Combs  (025080)
2　GALLAGHER & KENNEDY, P.A.
　2575 E. Camelback Road, Suite 1100
3　Phoenix, Arizona 85016
　Telephone:　(602) 530-8000
4　Facsimile:　(602) 530-8500
　E-mail:　　mmd@gknet.com
5　E-mail:　　Lincoln.combs@gknet.com
　Attorneys for Defendant/Counterclaimant Libby Rauch

6

7　　　　　　IN THE UNITED STATES DISTRICT COURT

8　　　　　　　　FOR THE DISTRICT OF ARIZONA

9　Russell Piccoli, a single man,　　　No.  CV07-01844-PHX-JAT

10　　　　　　Plaintiff,　　　　　**JOINT MOTION TO TRANSFER TO**
　　　　　　　　　　　　　　　**SOUTHERN DISTRICT OF**
11　vs.　　　　　　　　　　　　**CALIFORNIA**
　　　　　　　　　　　　　　　**UNDER 28 U.S.C. § 1404(A)**
12　Libby Rauch, a single woman,

13　　　　　　Defendant.

14

15　　　　Plaintiff/Counterdefendant Russell Piccoli and Defendant/Counterclaimant Libby

16　Rauch filed a Joint Stipulation on October 31, 2007, requesting a settlement conference
　and stating in part:

17　　　　The parties further stipulate that if the case is not resolved at the
　　　　Settlement Conference, venue of this case shall and should then be
18　　　　transferred to the Southern District of California, pursuant to 28
　　　　U.S.C. § 1404(a), as the more appropriate venue for convenience of
19　　　　the parties and witnesses and in the interests of justice.

20　　　　The Court entered an Order on November 1, 2007, referring the case to Magistrate

21　David Duncan for a settlement conference, and stating in part:

22

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1    if the case is not resolved at the Settlement Conference, by January
2    2, 2008, the parties shall move to transfer venue of this case to the
     Southern District of California, pursuant to 28 U.S.C. § 1404(a), as
     the more appropriate venue for convenience of the parties and
3    witnesses and in the interests of justice.

4    The parties participated in a Settlement Conference with Magistrate David Duncan

5    on December 10, 2007,[1] but the case was not resolved. The parties intend to continue with

6    efforts to reach a settlement. However, in compliance with the Court's November 1, 2007

     Order, the parties hereby jointly and respectfully move this Court to transfer venue of this

7    case to the Southern District of California, pursuant to 28 U.S.C. § 1404(a), as the more

8    appropriate venue for convenience of the parties and witnesses and in the interests of

     justice. This case could have been brought in the Southern District of California, the real

9    property at issue in this case lies within that District, most of the witnesses necessary to

10   adjudicate this action reside within or near that District, and there is no procedural

11   impediment to this case being heard in that District.

12   RESPECTFULLY SUBMITTED this 2nd day of January, 2008.

13   GALLAGHER & KENNEDY, P.A.

14   By:   s/ C. Lincoln Combs                              s/ Russell Piccoli (with permission)
           Mark Deatherage                                  Russell Piccoli
15         C. Lincoln Combs                                 6039 North 41st Place
           2575 E. Camelback Road, Suite 1100               Paradise Valley, Arizona 85253
16         Phoenix, Arizona 85016                           *Pro Se*
           Attorneys for Libby Rauch

17   ///
     ///
18   ///

19

20   _____

     [1]  Plaintiff contests that defendant participated in the settlement conference in good faith,
21   and questions satisfaction with ancillary agreements made in consideration of his
     stipulation to transfer. Nonetheless, in order not to embroil the Court in a dispute as to
22   whether the October 31, 2007 stipulation is enforceable, plaintiff joins in this Motion.

1   COPY of the foregoing electronically
    transmitted via the U.S. District Court
2   Electronic Case Filing System
    this 2nd day of January, 2008 to:

3
    Russell Piccoli, Esq.
4   6039 North 41st Place
    Paradise Valley, Arizona  85253
5   Plaintiff *Pro Se*

6     s/ Dawn Sylvester

7

8   1739856

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1
2
3
4
5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

6  Russell Piccoli, a single man,              No.  CV07-01844-PHX-JAT

7             Plaintiff,

8       vs.                                     **ORDER GRANTING TRANSFER TO**
                                                **THE SOUTHERN DISTRICT OF**
9  Libby Rauch, a single woman,                 **CALIFORNIA**

10            Defendant.

11        The Court having considered the Joint Motion to transfer this matter to the Southern

12  District of California pursuant to 28 U.S.C. § 1404(a), and good cause appearing therefor,

13        IT IS ORDERED granting the Motion and transferring the above captioned and

14  numbered action to the United States District Court for the Southern District of California.

15
16
17
18
19
20
21
22

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

**Russell Piccoli**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** Phoenix, AZ.
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

**Libby Rauch**

FILED
JAN 1 6 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Russell Piccoli
2901 North Central Ave, Ste 200
Phoenix, AZ 85012-2705
(602) 285-5100

**ATTORNEYS (IF KNOWN)**

'08 CV 0104 JAH NLS

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question
                              (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 USC 1441

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Electmant | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**      DISTRICT OF ARIZONA (PHOENIX)

☐ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☒ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**  JUDGE                              Docket Number

DATE 1/16/08                    SIGNATURE OF ATTORNEY OF RECORD
                               POC