1  Russell Piccoli
   6039 North 41st Place
2  Paradise Valley, Arizona 85253
   Telephone: (602) 315-3848
3
   Appearing Pro Se
4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10  RUSSELL PICCOLI,

11                 Plaintiff,                **NO. 08-CV-104(JAH)(NLS)**

12     v.                                    **MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT OF
13  LIBBY RAUCH,                             MOTIONS TO DISMISS
                                             COUNTERCLAIM AND TO STRIKE
14                 Defendant.                UNTIMELY JURY DEMAND**

15                                           DATE: March 10, 2008
                                             TIME: 2:30 p.m.
16                                           COURTROOM: 11

17

18                         **TABLE OF CONTENTS**

19                                                                    Page

20  I.    A THUMBNAIL SKETCH OF THE ACTION ........................................................1

21       A.    Federal Court?...............................................................................1

22       B.    The Complaint................................................................................1

23       C.    Defendant's Counterclaim .............................................................1

24  II.   DEFENDANT'S CONTRACT CLAIMS MUST BE DISMISSED .......................3

25       A.    Summary of Argument .................................................................3

26

                                     i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

B.    The Law ...................................................................................................3

C.    No Pleading of Damages "Proximately Caused" .........................................4

III.    DEFENDANT'S MISCELLANEOUS "GOOD FAITH" CLAIMS ARE
SUBSTANTIVELY DEFECTIVE .................................................................6

A.    Summary of Argument ..............................................................................6

B.    The Basic Rules of Law .............................................................................6

C.    The Second Through Fourth Claims for Relief State No Cognizable
Additional Theories of Recovery ...............................................................6

IV.    DEFENDANT'S EMOTIONAL DISTRESS CLAIMS ALSO FAIL ....................7

A.    Summary of Argument ..............................................................................7

B.    California Law as to NIED Claim ...............................................................7

C.    Defendant's NIED Claim Must Be Dismissed ............................................8

D.    Pleading Requirements for Emotional Distress ...........................................8

E.    Defendant's  Conclusory  Allegation  of  Emotional  Distress
is Insufficient............................................................................................8

V.    Defendant Fails to State any Claim for Abuse of Process ......................................9

A.    Summary of Argument ..............................................................................9

B.    The Elements for Abuse of Process Under Arizona Law .............................9

C.    Defendant Fails to Allege Any Subsequent Misuse of Any Process.............9

VI.    Defendant's DEFAMATION Claims Fail for Lack of Specificity.........................10

A     Summary of Argument .............................................................................10

B.    Modern Federal Defamation Pleading Standards .......................................10

C.    The  Counterclaim  Lacks  any  Specificity  as  to  what
the Defamatory Statements Were, When They Were Made or to
Whom They Were Made...........................................................................11

VII.    DEFENDANT'S  UNTIMELY  JURY  DEMAND  SHOULD  BE
STRICKEN ..............................................................................................11

ii

1

      A.     Procedural Facts................................................................................11

2

      B.     The Law and Appropriate Disposition......................................................12

3

CONCLUSION ...................................................................................................13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

08-CV-104(JAH)(NLS)

1

**TABLE OF AUTHORITIES**

2

<u>Federal Cases</u>                                                                                               Page

3

*In re: American Continental/Lincoln Sav. and Loan Sec. Litig.*, 845 F.Supp. 1377
(D. Ariz. 1993) a*ff'd* 102 F.3d 1524 (9th Cir. 1996)..................................................................9

4

*Blanck v. Hager*, 360 F.Supp.2d 1137 (D. Nev. 2005)...........................................................10

5

*Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695 (9th Cir. 1981) ......................9

6

*Bogosin v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003)......................................12

7

*Edwards v. U.S. Fidelity & Guar. Co.*, 848 F.Supp. 1460 (N.D.Cal. 1994), *aff'd* 74
F.3d 1245 (9th Cir. 1996)..........................................................................................................8

8

9

*Ersek v. Township of Springfield*, 822 F.Supp. 218 (E.D.Pa. 1993), a*ff'd* 102 F.3d
1979 (3rd Cir., 1996) ..........................................................................................................10-11

10

11

*Holliday v. Great Atlantic and Pacific Tea, Co.*, 256 F.2d 297 (8th Cir. 1958) .....................10

12

*Jones v. Capital City/ABC, Inc.*, 874 F.Supp. 626 (S.D.N.Y. 1995) ....................................10

13

*In re Jurcich, 238 F.3d 1202 (9th Cir. 2001)* .........................................................................6

14

*Moreau v. Airfrance*, 356 F.3d 942 (9th Cir. 2003).................................................................6

15

*Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952 (S.D.Cal. 2007) .................................6

16

*River Colony Estates G.P. v. Bayview Fin. Trad. Group, Inc.,* 2003 U.S. Dist.
LEXIS 23555 (S.D.Cal. 2003) ..................................................................................................3

17

18

*Thomas v. St. Louis Board of Educ.*, 933 F.Supp. 817 (E.D. Mo. 1996)...............................10

19

*Tu v. UCSD Medical Center*, 201 F.Supp.2d 1126 (S.D.Cal. 2002) .......................................7

20

<u>State Cases</u>

21

*Aas v. Superior Court* (2000) 24 Cal. 4th 627, 12 P.3d 1125 .................................................6

22

*Accounts Adjustments Bureau v. Cooperman* (1984) 158 Cal. App. 3d 844, 204
Cal. Rptr. 881 ............................................................................................................................8

23

*Barr v. Rhoades* (1969) 274 Cal. App. 2d 852, 79 Cal. Rptr. 505...........................................3

24

25

*Benach v. County of Los Angeles* (2007) 149 Cal. App. 4th 836, 57 Cal. Rptr. 3d
363 ..............................................................................................................................................6

26

iv

1
*Bogard v. Employer's Casualty Co.* (1985) 164 Cal. App. 3d 602, 210 Cal. Rptr. 578 ........................................................................................................................ 8

2

3
*Colvig v. RKO General, Inc.* (1965) 232 Cal. App. 2d 56, 42 Cal. Rptr. 473 .......................... 3

4
*Comstock v. Coronette Heating Supply Co., Inc.* (Cal. App. 1952) 245 P.2d. 357 ................. 4

5
*Erlich v. Menezes* (1999) 21 Cal. 4th 543, 550, 981 P.2d 978 ................................................. 3

6
*Gautier v. General Telephone Co.* (1965) 234 Cal. App. 2d 302, 44 Cal. Rptr. 404 ............... 3

7
*Gu v. BMW of North America, L.L.C.* (2005) 132 Cal. App. 4th 195, 33 Cal. Rptr. 3d. 617 ................................................................................................................... 7

8

9
*Guz v. Bectel Nat. Inc.* (2000) 24 Cal. 4th 317, 8 P.3d 1089 .................................................. 6

10
*Kelly v. General Telephone Co.* (1982) 136 Cal. App. 3d. 278, 186 Cal. Rptr. 184 ............... 8

11
*Lortz v. Connell* (1969) 273 Cal. App. 2d 286, 78 Cal. Rptr. 6 ............................................... 3

12
*Michaelian v. State Compensation Ins. Fund* (1996) 50 Cal. App. 4th 1093, 58 Cal. Rptr. 2d. 133 ................................................................................................. 8

13

14
*Moon v. Guardian Post-Acute Services, Inc.* (2002) 95 Cal. App. 4th 1005, 116 Cal. Rptr. 2d 218 ................................................................................................. 8

15
*Neinstedt v. Wetzel*, 133 Ariz., 348, 651 P.2d 876 (App. 1982) ............................................. 9

16
*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal. 4th 965, 863 P.2d 795 .......................... 7

17
*Robinson Helicopter Co. Inc. v. Danacorp* (2004) 34 Cal. 4th 979, 102 P.3d 268 .................. 6

18
*Stop Loss Ins. Brokers Inc. v. Brown & Tollin Medical Group* (2006) 143 Cal. App. 4th 1036, 49 Cal. Rptr. 3d 609 ............................................................... 6

19

20
<u>Other Authorities</u>                                                                                      <u>Page</u>

21
F.R.Civ.P. Rule 11 ....................................................................................................... 5

22
F.R.Civ.P. Rule 38 ..................................................................................................... 12

23
16 A.R.S. Rules of Civil Procedure Rule 4.2 ........................................................... 11

24
5 *Wright and Miller*, FEDERAL PRACTICE AND PROCEDURE, §1245 .......................... 10

25
9 *Wright and Miller*, FEDERAL PRACTICE AND PROCEDURE, §2320 .......................... 12

26

v

1    **I.    A THUMBNAIL SKETCH OF THE ACTION.**

2    *A.    Federal Court*?  The instant action was filed in Arizona State Court on August

3    28, 2007.  Despite the absence of any federal claims (or any other issue that would merit the

4    attention of a federal court), defendant removed it to the District of Arizona on September 26,

5    2007.  Plaintiff stipulated to the transfer of this action to this District in exchange for

6    defendant's participation in a settlement conference.  Notwithstanding that proceeding, he still

7    consented to transfer to this District by motion on January 2, 2008.  An Order of Transfer

8    followed the following day.

9    *B.    The Complaint*.  The instant action seeks damages and/or recessionary relief

10    from a failed remodeling project in Encinitas.  The complaint alleges that the parties, long-

11    time, trusted friends, agreed to a joint-venture to remodel a residential property.  Plaintiff

12    would advance the first $600,000.00 for the purchase and remodeling of the property.

13    Defendant agreed to put up the remaining funds and manage the project.  The parties would

14    split profits 50/50.

15    Plaintiff asserts the project failed and was terminated after defendant obtained few or no

16    bids, essentially abandoned the project to her then- fiancée, and reneged on her investment.

17    More importantly, the complaint detailed how defendant embezzled $34,500.00 in checks to

18    herself -- many with forged notations, and ultimately diverted the remaining $126,630.00 from

19    the construction line of credit in checks to her fiancée and/or for their joint-benefit on a single

20    day.    Her  embezzlement  resulted  in  over  $70,000  in  bounced  checks  to  legitimate

21    subcontractors.  The complaint sought relief for fraud, breach of fiduciary duty and breach of a

22    settlement  agreement  to  which  defendant  repeatedly  consented,  both  orally  and  by  text

23    messages, prior to litigation.

24    *C.    Defendant's Counterclaim.*    The  counterclaim  morphed  the  embezzling

25    defendant into a victim.  It justified her over $100,000.00 in embezzlements by an allegation

26

1

08-CV-104(JAH)(NLS)

1   that she "would often use the Construction Account for personal expenditures unrelated to

2   [prior] remodeling projects…[and that she] always reimbursed the Counterdefendant for her

3   personal expenditures, or [the parties] orally agreed that her personal expenditures would be

4   offset against her compensation or share of the profits from the joint-venture." Counterclaim

5   ("**CC**") at ¶¶ 13-15.    Not surprisingly, although the complaint detailed defendant's

6   embezzlements to the penny, the counterclaim failed to identify a single instance in which she

7   had previously been permitted to divert construction funds to her own personal uses. Insulated

8   from the impact of her numerous embezzlements and defalcations, the counterclaim asserts

9   claims for four species of breach of contract, libel, slander, intentional and negligent infliction

10  of emotional distress, abuse of process, breach of fiduciary duty and unjust enrichment.

11          Predictably, defendant's blunderbuss of counterclaims is lacking in essential

12  allegations. Although defendant twice alleges her *only* compensation from the instant project

13  would be an equal split of profits. (**CC** ¶¶ 29, 62), she never alleges that any profit would

14  have been realized from the project even had plaintiff not terminated her – a not so shocking

15  omission given the widespread deterioration of the residential market. Rather, insofar as her

16  counterclaim is intelligible, she appears to improperly claim damages based upon the profits

17  that had originally been "expected." *See* **CC** ¶¶ 66, 81. Moreover, the counterclaim alleges no

18  legally cognizable basis for parsing defendant's breach of contract claim into four separate

19  causes of action. It provides no detail as to how defendant was supposedly emotionally

20  distressed, nor any act of negligence to underpin her NIED claim. The counterclaim provides

21  no allegation of any misuse of any process to support her abuse of process claim, nor does it

22  provide any identification of who defendant was supposedly defamed to, or exactly what was

23  allegedly said.

24

25

26

2

1    Plaintiff recognizes that any pleading must be permitted a liberal construction on a

2  motion to dismiss.  However, a random statement of half the torts catalogued by Prosser

3  without essential elements will not survive such a motion.

4  **II.    DEFENDANT'S CONTRACT CLAIMS MUST BE DISMISSED.**

5    *A.    Summary of Argument*.  Pursuant to Civil Code § 3300, damages for breach of

6  contract are limited to those "proximately caused" by the breach.  The counterclaim

7  affirmatively alleges that defendant's only compensation would result from a split of any

8  ultimate profit.  However, it fails to allege that any profit would have ever been realized from

9  this venture irrespective of any breach by plaintiff.  As such, no damages could have been

10  "proximately caused" by any alleged breach.

11    *B.    The Law*.  As indicated, Civil Code § 3300 provides that the measure of damages

12  for any breach of contract is limited to "the amount which will compensate the party aggrieved

13  for all of the detriment proximately caused thereby."  (Emphasis added).  The California courts

14  have consistently enforced this limitation on contract damages.  *See e.g.*, *Erlich v. Menezes*

15  (1999) 21 Cal. 4th 543, 550, 981 P.2d 978.  "'Stated simply, the measure of damages for

16  breach of a contract has been said to be the actual loss sustained by the party aggrieved as a

17  result of the breach.'"  *Barr v. Rhoades* (1969) 274 Cal. App. 2d 852, 855, 79 Cal. Rptr. 505.

18  Similarly, as this Court has held, "an element of a breach of fiduciary duty is damages

19  proximately caused by the breach."  *River Colony Estates G.P. v. Bayview Fin. Trad. Group,*

20  *Inc.* 2003 U.S. Dist. LEXIS 23555 *19 (S.D.Cal. 2003) (Gonzales D.J.).

21    "[N]ot only must the facts constituting the defendant's breach be stated with certainty,

22  but there must also be an allegation that the damages to plaintiffs resulting therefrom is legally

23  actionable."  *Gautier v. General Telephone Co.* (1965) 234 Cal. App. 2d 302, 305, 44 Cal.

24  Rptr. 404.  A*ccord Lortz v. Connell* (1969) 273 Cal. App. 2d 286, 290, 78 Cal. Rptr 6; *Colvig*

25  *v. RKO General, Inc.* (1965) 232 Cal. App. 2d 56, 69, 42 Cal. Rptr 473.  In the absence of a

26

3

1    proper pleading of contract damages, "a general allegation of damages is insufficient against a

2    special demurrer for uncertainty and/or unintelligibility." *Comstock v. Coronette Heating*

3    *Supply Co., Inc.* (Cal. App. 1952) 245 P.2d. 357, 360.

4          C.     *No Pleading of Damages "Proximately Caused"*.     Defendant has failed to

5    properly plead damage pursuant to any of her six contract or quasi-contract claims[1]  In this

6    respect, she twice affirmatively alleges that the only compensation she would have received

7    absent any breach or termination by plaintiff, was "half of the profit realized from" a sale of

8    the property.  **CC** §§ 62, 29.  She moreover concedes that even as early as "late April" "the

9    potential for profiting from the project had been greatly reduced or eliminated." *Id*. ¶¶ 48-49.

10   Yet, although asserting six separate contract-based claims, she apparently only seeks the

11   originally "expected benefit from the Oral Agreement of the sale of the Olivenhain property at

12   a profit."  **CC** §§ 66, 81.  *Critically, nowhere does defendant allege that the property would*

13   *have <u>ever</u> been sold at a profit – or that she would have realized any compensation whatsoever*

14   *in the absence of plaintiff's alleged breach and/or termination of the venture*.

15          The absence of this critical allegation – *i.e.*, that defendant would have obtained some

16   profit in the absence of plaintiff's alleged breach and/or termination – was likely no mere

17   oversight.  More importantly, it does not appear curable by amendment.  Specifically, under

18   Rule 11, neither defendant nor her counsel may put forth any allegation in the absence of a

19   certification "that to the best of their knowledge, information and belief…formed after an

20   inquiry reasonable under the circumstances…the allegations…have an evidentiary support or,

21   if specifically so identified, are likely to have evidentiary support after a reasonable

22   opportunity for further investigation or discovery."  F.R.Civ.P. Rule 11(b).  Here, Defendant

23

24   [1]  Claims one through four, ten (breach of fiduciary duty) and eleven (unjust enrichment).  As
     to the latter claim, although the courts state the elements broadly, no defendant can have a
25   claim for unjust enrichment where the plaintiff's actions were irrelevant to the loss of her time,
     and the pleading concedes the plaintiff failed to benefit anyway.
26

                                        4

1  affirmatively alleged that the property was purchased for $1,100,000.00 (**CC** § 32) and that as

2  of the time of termination, over $456,610.00 had already been spent on construction, with

3  bounced checks of $74,233.11 remaining unpaid.  **CC** §§ 44-45.  Defendant also knew that

4  plaintiff had incurred carrying costs regarding the property, and that some substantial amount

5  exceeding $250,000.00 would have to be expended to complete the remodel.

6       The Court may take judicial notice of the drastic decline in the residential real estate

7  market in North County.  Using defendant's own figures, the remodel could not have been

8  completed for anything less than $1,900,000.00.  Plaintiff is informed and believes that the

9  highest sale price of any similar property in the Olivenhain area after July 2007 (the absolute

10 earliest this property could have been completed) is substantially less than $1,900,000.00.

11 Under such circumstances, it would appear doubtful that defendant could actually find any

12 reasonable comparable sale upon which to ever base an allegation that she would have realized

13 some profit from this transaction in the absence of plaintiff's alleged breach or termination.

14      In any event, the counterclaim is deficient for its failure to allege damages were

15 "proximately caused by plaintiff's alleged breach.  As a result, the first through fourth, tenth

16 and eleventh claims for relief and must be dismissed.  While defendant may obviously be

17 given leave to replead, plaintiff asserts that neither she nor her counsel may properly assert any

18 of these claims in the absence of some *real* market data indicating some profit could have

19 actually been realized. [2]

20

21

22 [2] Plaintiff recognizes defendant is not bound by his estimates of time or cost of completion or
survey of market data.  But, on amendment, defendant and her counsel are bound by Rule 11.

23 Consequently, should they proceed to allege any proximate damage from plaintiff's alleged
breach, they will have to consider (1) the actual out-of-pocket expenditures made on the

24 purchase and remodel as reflected in checking records they admit they have in hand (**CC** ¶¶
48-49), including carrying costs; (2) make good faith estimates of the time and costs of

25 completion based on facts actually known to them, and; (3) actually ascertain whether any
comparable sale in the relevant time frame would support an allegation a profit could have

26 been realized, after commissions and closing costs.  Any allegations made without such
analysis or consideration of true market value would necessarily violate Rule 11.

08-CV-104(JAH)(NLS)

1  **III.    DEFENDANT'S MISCELLANEOUS "GOOD FAITH" CLAIMS ARE
2         SUBSTANTIVELY DEFECTIVE**.

3      *A.    Summary of Argument*.  For all intents and purposes, defendant re-states her

4  basic breach of contract claim in four different ways, in four different claims for relief.  The

5  additional claims add nothing more than defendant's assertions that she was threatened to

6  settle (which allegations are irrelevant to her contract claims) and that plaintiff acted wilfully.

7  As such, these "remixes" do not provide any basis for additional claims.

8      *B.    The Basic Rules of Law*.  "'A person may not ordinarily recover in tort for the

9  breach of duties that merely restate contractual obligations".  *Stop Loss Ins. Brokers Inc. v.*

10 *Brown & Tollin Medical Group* (2006) 143 Cal. App. 4th 1036, 1041, 49 Cal. Rptr. 3d 609,

11 *quoting Aas v. Superior Court* (2000) 24 Cal. 4th 627, 643, 12 P.3d 1125.  "Instead, '[c]ourts

12 will generally enforce the breach of a contractual promise through contract law, except when

13 the actions that constitute the breach violate a social policy that merits the imposition of tort

14 remedies'".  *Stop Loss Ins. Brokers,* 143 Cal. App. 4th at 1041, *quoting* 24 Cal. 4th at 643.

15 *Accord In re Jurcich*, 238 F.3d 1202, 1206 (9th Cir. 2001); *Robinson Helicopter Co. Inc. v.*

16 *Danacorp* (2004) 34 Cal. 4th 979, 989-90, 102 P.3d 268.

17      Moreover, the implied covenant of good faith and fair dealing "'cannot impose any

18 substantive duty or limits on the contracting parties beyond those incorporated in the specific

19 terms of their agreement.'"  *Moreau v. Airfrance*, 356 F.3d 942, 954 (9th Cir. 2003), *quoting*

20 *Guz v. Bectel Nat. Inc.* (2000) 24 Cal. 4th 317, 350, 8 P.3d 1089; *Patriot Scientific Corp. v.*

21 *Korodi*, 504 F.Supp.2d 952, 963 (S.D.Cal. 2007) (Rhoades, D.J.); *Benach v. County of Los*

22 *Angeles* (2007) 149 Cal. App. 4th 836, 855 n.12, 57 Cal. Rptr. 3d 363.

23      *C.    The Second Through Fourth Claims for Relief State No Cognizable Additional*

24 *Theories of Recovery*.  It is difficult to ascertain what theories of relief are *supposed* to be

25 stated by these claims beyond breach of contract.  The second claim for relief alleges

26 plaintiff's breach of contract to have been wilful (**CC** § 68), made out of spite (**CC** § 71) and

6

1  with knowledge it was wrongful **CC** § 70.  The only additional conduct alleged was plaintiff's

2  purported threats regarding settlement.  **CC** § 69.  The third claim for relief alleges the same

3  wrongdoing.  The fourth claim for relief simply asserts the breach was wrongful and seeks

4  different remedies.

5       In order to state a tort claim for the breach of the implied covenant of good faith,

6  defendant was obligated to allege the breach of some independent duty.  She did not do so.

7  Instead, she alleged wilfulness and added allegations of conduct unrelated to any breach of

8  contract.  However, without some allegation of an independent breach of duty, no additional

9  claim for relief is stated by these counts and they must be dismissed.[3]

10 **IV.    DEFENDANT'S EMOTIONAL DISTRESS CLAIMS ALSO FAIL.**

11       *A.    Summary of Argument*.  The counterclaim is devoid of any allegation as to how,

12 when or to what degree defendant supposedly sustained "emotional distress."  Her NIED claim

13 fails for two reasons.  She makes no claims of negligence.  She alleges the infliction of

14 emotional distress upon her to have been intentional.

15       *B.    California Law as to NIED Claim*.  "[T]here is no independent tort of negligent

16 infliction of emotional distress."  *Gu v. BMW of North America, L.L.C.* (2005) 132 Cal. App.

17 4th 195, 204, 33 Cal. Rptr. 3d. 617, *quoting Potter v. Firestone Tire & Rubber Co.* (1993) 6

18 Cal. 4th 965, 984, 863 P.2d 795.  A recovery for negligent infliction of emotional distress "is

19 available only if the emotional distress arises out of defendant's breach of some other legal

20 duty and the emotional distress is proximately caused by that breach of duty."  *Gu*, 132 Cal.

21 App. 4th at 204, *quoting Potter*, 6 Cal. 4th at 985.  More specifically, "[i]n order to state a

22 claim for NIED, Plaintiffs must point to *negligence* that fundamentally caused the harm."  *Tu*

23 *v. UCSD Medical Center*, 201 F.Supp.2d 1126, 1131 (S.D.Cal. 2002) (Whelan D.J*.) (emphasis*

24 

---

25 [3]  Defendant independently alleges a breach of fiduciary duty in her tenth claim for relief.
   That latter claim is only attacked because of the absence of any allegation of proximately
   caused damage, an issue addressed in the preceding point.

26 

7

1    *the Court's); Moon v. Guardian Post-Acute Services, Inc.* (2002) 95 Cal. App. 4th 1005, 1009,

2    116 Cal. Rptr. 2d 218.

3         Finally, "[a]s the Northern District states, 'when the conduct is intentional, it cannot be

4    used as the basis for a negligent infliction of emotional distress claim.'" *Tu*, 201 F.Supp.2d at

5    1131, *quoting Edwards v. U.S. Fidelity & Guar. Co.*, 848 F.Supp. 1460, 1466 (N.D.Cal. 1994),

6    *aff'd* 74 F.3d 1245 (9th Cir. 1996).

7         C.    *Defendant's NIED Claim Must Be Dismissed*.  Defendant's negligent infliction

8    of emotional distress claim makes no allegations of negligence, or of the breach of any other

9    separate duty.   Moreover, it is grounded on allegedly intentional conduct.  **CC** § 89.

10   Accordingly, it must be dismissed.

11        D.    *Pleading Requirements for Emotional Distress*.   The case law indicates that

12   California courts have had their fill of bogus claims for intentional infliction of emotional

13   distress.  Accordingly, in order to properly assert a claim for intentional infliction of emotional

14   distress, "[t]he Complaint must plead specific facts that establish severe emotional distress

15   resulting from defendant's conduct."  *Michaelian v. State Compensation Ins. Fund* (1996) 50

16   Cal. App. 4th 1093, 1114, 58 Cal. Rptr. 2d. 133, 146, *citing Bogard v. Employer's Casualty*

17   *Co.* (1985) 164 Cal. App. 3d 602, 617, 210 Cal. Rptr. 578; *Accounts Adjustments Bureau v.*

18   *Cooperman* (1984) 158 Cal. App. 3d 844, 848, 204 Cal. Rptr. 881 ("Sufficient circumstances

19   must be alleged for the emotional distress claim to survive demurrer"); *Kelly v. General*

20   *Telephone Co.* (1982) 136 Cal. App. 3d. 278, 287, 186 Cal. Rptr. 184 ("Demurrer sustained

21   when plaintiff 'failed to allege the degree of emotional distress suffered'").

22        E.    *Defendant's Conclusory Allegation of Emotional Distress is Insufficient*.  Given

23   the "kitchen sink" nature of the counterclaim, is not surprising defendant failed to provide the

24   slightest detail as to any emotional distress she supposedly suffered.  Her fifth claim for relief

25   is totally devoid of any allegation that she even suffered emotional distress.  A prior paragraph

26

8

1  no more than conclusorily alleges that she "and other [unidentified] members of her family"

2  suffered emotional distress by the escalation of the alleged threats and harassment.  **CC** § 54.

3  Given this lack of specificity, these claims must be dismissed.   Should amendment be

4  permitted, defendant must allege when she supposedly became distressed, how such distress

5  manifested itself and what medical treatment (if any) she received therefor.

6  **V.        DEFENDANT FAILS TO STATE ANY CLAIM FOR ABUSE OF PROCESS.**

7         *A.      Summary of Argument*.  The complaint was filed in Arizona State Court, with the

8  result Arizona law must apply. Under Arizona law, no abuse of process can occur without

9  some subsequent misuse or perversion of the process for improper purposes.

10        *B.      The Elements for Abuse of Process Under Arizona Law.*  "The essence of the tort

11  of abuse of process is the perversion of legal proceedings properly set in motion to a purpose

12  for which it was not intended."  *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695,

13  696 (9th Cir. 1981).   The tort "requires an overt act other than the initiation of a lawsuit to

14  affect the illegitimate end."  *In re: American Continental/Lincoln Sav. and Loan Sec. Litig.*,

15  845 F.Supp. 1377, 1385 (D. Ariz. 1993) a*ff'd* 102 F.3d 1524 (9th Cir. 1996); *Neinstedt v.*

16  *Wetzel*, 133 Ariz., 348, 651 P.2d 876, 881 (App. 1982).  Bad intentions alone are insufficient.

17  *Id*.

18        "'It is the subsequent misuse which constitute the misconduct for which liability is

19  imposed'".  *American Continental*, 845 F.Supp. at 1385, *quoting Neinstedt,* 651 P.2d at 881.

20  An act occurring prior to litigation is insufficient to constitute the tort.  *Blue Goose Groves,*

21  *Inc.*, 641 F.2d at 697.

22        *C.      Defendant Fails to Allege Any Subsequent Misuse of Any Process*.  Defendant

23  alleges that plaintiff "is willfully using this civil action and has threatened other criminal

24  and/or regulatory action primarily to accomplish the ulterior purpose of forcing [her] to alter

25  the terms of the Oral Agreement to his benefit and her detriment."  **CC** ¶ 95.  She likewise

26

9

08-CV-104(JAH)(NLS)

1   alleged that any threats terminated upon her retention of counsel in June.   **CC ¶ 56.**

2   Accordingly, defendant alleges nothing more than "bad intentions". Critically, she alleges no

3   misuse of the complaint subsequent to its filing (in August). As such, the abuse of process

4   claim must be dismissed. [4]

5   ## VI.    DEFENDANT'S DEFAMATION CLAIMS FAIL FOR LACK OF SPECIFICITY.

6   *A    Summary of Argument.*  Libel and slander are disfavored actions under federal

7   practice. The modern rule of federal practice requires some specification of the defamatory

8   statements, and to whom they were made. These claims must be dismissed as defendant has

9   failed to provide any such detail.

10  *B.    Modern Federal Defamation Pleading Standards.*  "Although special pleading

11  requirements have not been set out in the federal rules for libel and slander actions, the

12  standard for successfully pleading defamation tends to be more stringent than applicable to

13  most other substantive claims because of the historically unfavored nature of this type of

14  action, the First Amendment implications of many of these cases, and the desire to discourage

15  what some believe to be all too frequently vexatious litigation."   5 *Wright and Miller*,

16  FEDERAL PRACTICE AND PROCEDURE, §1245 at 429.

17      Accordingly, "[i]n an action for slander or libel the words alleged to be defamatory

18  must be pleaded and proved." *Holliday v. Great Atlantic and Pacific Tea, Co.*, 256 F.2d 297,

19  302 (8th Cir. 1958); *Blanck v. Hager*, 360 F.Supp.2d 1137, 1159-60 (D. Nev. 2005); *Thomas v.*

20  *St. Louis Board of Educ.*, 933 F.Supp. 817, 821 (E.D. Mo. 1996) (necessary "to allege in *haec*

21  *verba* the exact words which are alleged to be defamatory"); *Jones v. Capital City/ABC, Inc.*,

22  874 F.Supp. 626, 628 (S.D.N.Y. 1995); *Ersek v. Township of Springfield*, 822 F.Supp. 218,

23

24  _____

    [4] In this respect, the counterclaim does not even properly allege "bad intentions". The

25  complaint specifically, and properly, seeks to enforce a settlement to which defendant agreed
    in June. This is undisputedly a proper purpose for litigation.

26

10

1   223 (E.D.Pa. 1993), a*ff'd* 102 F.3d 1979 (3ʳᵈ Cir., 1996) ("what allegedly defamatory

2   statements were made by whom and to whom").

3       C.      *The Counterclaim Lacks any Specificity as to what the Defamatory Statements*

4   *Were, When They Were Made or to Whom They Were Made*.  Although the counterclaim

5   alleges defamatory statements and letters to subcontractors accusing defendant of criminal

6   conspiratorial actions, it fails to allege precisely what was said. Given the overall shotgun

7   approach of the counterclaim and the fact defendant will necessarily need to replead anyway,

8   she must be required to precisely allege the exact content of any purportedly defamatory

9   statements, to whom they were made and when they were made.  Such will serve to eliminate

10  frivolous allegations, permit accurate pleading of the truth of the statements and provide a

11  basis for the assertion of relevant privileges.

12  **VII.    DEFENDANT'S UNTIMELY JURY DEMAND SHOULD BE STRICKEN**.

13      A.      *Procedural Facts*.  The Complaint was filed in this action on August 28, 2007 in

14  Arizona State Court.  Service was accepted by defendant's counsel on August 29, which, by

15  rule, obligated defendant to answer on or before September 28, 2007.  16 A.R.S. Rules of Civil

16  Procedure, Rule 4.2(m).

17      Thereafter, defendant removed this case to Arizona federal court on September 26,

18  2007.  She filed her answer on October 3, 2007.  Subsequently, the parties stipulated to a

19  settlement conference and a transfer to this district in the event no settlement was reached.

20  However, that stipulation explicitly provided that "nothing in this Stipulation shall revive any

21  procedural right previously waived by defendant prior to October 19, 2007."  Joint Stipulation

22  for Settlement Conference, dated October 31, 2007.

23      Notwithstanding the foregoing, defendant made no demand for a trial by jury until

24  December 21, 2007.

25

26

11

08-CV-104(JAH)(NLS)

1    B.    *The Law and Appropriate Disposition*.  In federal court, a trial by jury must be

2  demanded "in writing at any time after the commencement of the action and not later than 10-

3  days after the service of the last pleading directed to such issue."  F.R.Civ.P. Rule 38(b).  "The

4  failure of a party to serve and file a demand as required by this Rule, constitutes a waiver of

5  trial by jury".  Rule 38(d).

6        "The matter becomes more complicated if a counterclaim is asserted, since this is a

7  pleading which necessitates a reply".   9 Wright & Miller, FEDERAL PRACTICE OF

8  PROCEDURE, § 2320 at 239.   However, the initial filing of a jury demand with a

9  counterclaim is effective to obtain a trial by jury as to the original issues.  As indicated by

10  Professors Wright & Miller:

11

12
> However, if the counterclaim and reply raise new issues that were not
> contained in the Complaint and Answer, a demand served more than 10-
> days after the Answer, but within 10-day after the reply, is effective only
13
> for the issues raised in the counterclaim and reply and not those in the
> Complaint and Answer.  Id. at 240-41.
14

15  *See also e.g. Bogosin v. Woloohojian Realty Corp.*, 323 F.3d 55, (1st Cir. 2003).

16        Accordingly, should defendant's counterclaim be dismissed, her jury demand ought to

17  be stricken  In the event any of the counterclaim survives this motion, any subsequent motion

18  to dismiss an amended pleading and summary judgment, the Court may then determine what,

19  if any, issue may be triable by jury.   The Court will also resolve whether or not such

20  proceeding should follow a completion of any trial to the Court.   Notice is provided at this

21  time to avoid any waiver or misleading.

22

23

24

25

26

12

1

**CONCLUSION**

2        The counterclaim is plainly dominated by redundant and improperly pleaded claims.

3    To the extent no claim is properly pled, it must be dismissed.

4    Dated: January 22, 2008.

5
                                        Respectfully Submitted:
6

7

8                                    By: /s/ Russell Piccoli
                                         RUSSELL PICCOLI
                                         rxp@mwmf.com
9

10                                      Appearing Pro Se

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13

08-CV-104(JAH)(NLS)

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing paper was served upon all counsel of record by serving them electronically at mmd@gknet.com (Mark Deatherage) and lincoln.combs@gknet.com (Lincoln Combs)

Phoenix, Arizona, this 22nd day of January 2008

/s/ Russell Piccoli

RUSSELL PICCOLI

U:\ATTORNEYS\RXP\Libby\Memo of Points & Authorities of Motion to Dismiss (1-22-08).doc

14

08-CV-104(JAH)(NLS)