Russell Piccoli
6039 North 41st Place
Paradise Valley, Arizona 85253
Telephone: (602) 315-3848

Appearing Pro Se

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RUSSELL PICCOLI,

Plaintiff,

v.

LIBBY RAUCH,

Defendant.

**NO. 08-CV-104(JAH)(NLS)**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM AND TO STRIKE UNTIMELY JURY DEMANDS**

DATE: August 25, 2008
TIME: 2:30 p.m.
COURTROOM: 11

**Oral Argument Not Required**

**TABLE OF CONTENTS**

Page

I. DEFENDANT'S COUNTERCLAIMS REMAIN DEFECTIVE ........ 1

*A. The Original Pleadings* ........ 1

*B. Defendant's Deposition and Failures to Make Written Discovery.* ........ 2

*C. The Counterclaim Remains Defective.* ........ 3

II. DEFENDANT'S CONTRACT CLAIMS MUST BE DISMISSED ........ 4

*A. SUMMARY OF ARGUMENT* ....4

*B. THE LAW* ....4

*C. NO PLEADING OF DAMAGES "PROXIMATELY CAUSED"* ....5

III. DEFENDANT'S "GOOD FAITH" CLAIM IS SUBSTANTIVELY DEFECTIVE ....6

*A. SUMMARY OF ARGUMENT* ....6

*B. THE BASIC RULES OF LAW* ....6

*C. THE SECOND CLAIM FOR RELIEF STILL STATES NO COGNIZABLE ADDITIONAL THEORY OF RECOVERY* ....6

IV. DEFENDANT FAILS TO STATE ANY CLAIM FOR ABUSE OF PROCESS ....7

*A. SUMMARY OF ARGUMENT* ....7

B. *THE ELEMENTS FOR ABUSE OF PROCESS UNDER ARIZONA LAW* ....7

*C. DEFENDANT STILL FAILS TO ALLEGE ANY SUBSEQUENT MISUSE OF ANY PROCESS* ....8

V. DEFENDANT'S DEFAMATION CLAIMS STILL FAIL FOR LACK OF SPECIFICITY ....8

*A SUMMARY OF ARGUMENT* ....8

*B. MODERN FEDERAL DEFAMATION PLEADING STANDARDS* ....9

*C. THE AMENDED COUNTERCLAIM STILL LACKS ANY SPECIFICITY AS TO WHAT THE DEFAMATORY STATEMENTS WERE, WHEN THEY WERE MADE OR TO WHOM THEY WERE MADE* ....9

VI. DEFENDANT'S UNTIMELY JURY DEMAND SHOULD BE STRICKEN ....10

A. *PROCEDURAL FACTS* ....10

B. *THE LAW AND APPROPRIATE DISPOSITION* ....11

CONCLUSION ....12

# TABLE OF AUTHORITIES

Federal Cases Page

*In re: American Continental/Lincoln Sav. and Loan Sec. Litig.*, 845 F.Supp. 1377 (D. Ariz. 1993) a*ff'd* 102 F.3d 1524 (9th Cir. 1996) ........ 7, 8

*Blanck v. Hager*, 360 F.Supp.2d 1137 (D. Nev. 2005) ........ 9

*Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695 (9th Cir. 1981) ........ 7, 8

*Bogosin v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003) ........ 11

*Ersek v. Township of Springfield*, 822 F.Supp. 218 (E.D.Pa. 1993), a*ff'd* 102 F.3d 1979 (3rd Cir., 1996) ........ 9

*Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274 (1990) ........ 7

*Holliday v. Great Atlantic and Pacific Tea, Co.*, 256 F.2d 297 (8th Cir. 1958) ........ 9

*Jones v. Capital City/ABC, Inc.*, 874 F.Supp. 626 (S.D.N.Y. 1995) ........ 9

*In re Jurcich, 238 F.3d 1202 (9th Cir. 2001)* ........ *6*

*Moreau v. Airfrance*, 356 F.3d 942 (9th Cir. 2003) ........ 6

*Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952 (S.D.Cal. 2007) ........ 6

*River Colony Estates G.P. v. Bayview Fin. Trad. Group, Inc.,* 2003 U.S. Dist. LEXIS 23555 (S.D.Cal. 2003) ........ 4

*Thomas v. St. Louis Board of Educ.*, 933 F.Supp. 817 (E.D. Mo. 1996) ........ 9

State Cases

*Aas v. Superior Court,* 24 Cal. 4th 627, 12 P.3d 1125 (2000) ........ 6

*Barr v. Rhoades,* 274 Cal. App. 2d 852, 79 Cal. Rptr. 505 (1969) ........ 4

*Benach v. County of Los Angeles*, 149 Cal. App. 4th 836, 57 Cal. Rptr. 3d 363 (2007) ........ 6

*Colvig v. RKO General, Inc.,* 232 Cal. App. 2d 56, 42 Cal. Rptr. 473 (1965) ........ 4

*Comstock v. Coronette Heating Supply Co., Inc.,* 245 P.2d. 357 (*Cal. App*. 1952) ........ 4

*Erlich v. Menezes,* 21 Cal. 4th 543, 550, 981 P.2d 978 (1999) ........ 3

*Gautier v. General Telephone Co.*, 234 Cal. App. 2d 302, 44 Cal. Rptr. 404 (1965) ............. 4

*Guz v. Bectel Nat. Inc.,* 24 Cal. 4th 317, 8 P.3d 1089 (2000) ............................................. 6

*Lortz v. Connell,* 273 Cal. App. 2d 286, 78 Cal. Rptr. 6 (1969) ............................................ 4

*Moon v. Guardian Post-Acute Services, Inc.,* 95 Cal. App. 4th 1005, 116 Cal. Rptr. 2d 218 (2002) ........................................................................................................ 8

*Neinstedt v. Wetzel*, 133 Ariz., 348, 651 P.2d 876 (App. 1982) ............................................ 8

*Robinson Helicopter Co. Inc. v. Danacorp,* 34 Cal. 4th 979, 102 P.3d 268 (2004) ................ 6

*Stop Loss Ins. Brokers Inc. v. Brown & Tollin Medical Group,* 143 Cal. App. 4th 1036, 49 Cal. Rptr. 3d 609 (2006) ........................................................................... 6

*Webster v. Culbertson*, 158 Ariz. 159, 761 P.2d 1063 (1988) ................................................ 7

<u>Other Authorities</u> <u>Page</u>

F.R.Civ.P. Rule 11 ......................................................................................... 5, 10

F.R.Civ.P. Rule 38 ......................................................................................... 11

16 A.R.S. Rules of Civil Procedure Rule 4.2 .................................................. 10

5 *Wright and Miller*, FEDERAL PRACTICE AND PROCEDURE, §1245 ........................... 9

9 *Wright and Miller*, FEDERAL PRACTICE AND PROCEDURE, §2320 ......................... 12

RESTATEMENT (Second) CONFLICT OF LAWS § 155 .................................................... 8

# I. <u>DEFENDANT'S COUNTERCLAIMS REMAIN DEFECTIVE</u>.

*A. <u>The Original Pleadings</u>*. The instant action seeks damages and/or recessionary relief from a failed remodeling project in Encinitas. The complaint alleges that the parties, long-time, trusted friends, agreed to a joint-venture to remodel a residential property. Plaintiff would advance the first $600,000.00 for the purchase and remodeling of the property. Defendant agreed to put up the remaining funds and manage the project. The parties would split profits 50/50.

Plaintiff asserts the project failed and was terminated after defendant obtained few or no bids, essentially abandoned the project to her then- fiancée, and reneged on her investment. More importantly, the complaint detailed how defendant embezzled $34,500.00 in checks to herself -- many with forged notations, and ultimately diverted the remaining $126,630.00 from the construction line of credit in checks to her fiancée and/or for their joint-benefit on a single day. Her embezzlement resulted in over $70,000 in bounced checks to legitimate subcontractors. The complaint sought relief for fraud, breach of fiduciary duty and breach of a settlement agreement to which defendant repeatedly consented, both orally and by text messages, prior to litigation.

The counterclaim morphed the embezzling defendant into a victim. It justified her over $100,000.00 in embezzlements by an allegation that she "would often use the Construction Account for personal expenditures unrelated to [prior] remodeling projects…[and that she] always reimbursed the Counterdefendant for her personal expenditures, or [the parties] orally agreed that her personal expenditures would be offset against her compensation or share of the profits from the joint-venture." Counterclaim ("**CC**") at ¶¶ 13-15. Not surprisingly, although the complaint detailed defendant's embezzlements to the penny, the counterclaim failed to identify a single instance in which she had previously been permitted to divert construction funds to her own personal uses. Insulated from the impact of her numerous embezzlements

and defalcations, the counterclaim asserted claims for four species of breach of contract, libel, slander, intentional and negligent infliction of emotional distress, abuse of process, breach of fiduciary duty and unjust enrichment.

Predictably, defendant's blunderbuss of counterclaims was lacking in essential allegations. Although defendant twice alleged her *only* compensation from the instant project would be an equal split of profits. (**CC** ¶¶ 29, 62), she never alleged that any profit would have been realized from the project even had plaintiff not terminated her – a not so shocking omission given the widespread deterioration of the residential market. Rather, insofar as her counterclaim was intelligible, she appeared to improperly claim damages based upon the profits that had originally been "expected." *See* **CC** ¶¶ 66, 81. Moreover, the counterclaim alleged no legally cognizable basis for parsing defendant's breach of contract claim into four separate causes of action. It provides no detail as to how defendant was supposedly emotionally distressed, nor any act of negligence to underpin her NIED claim. The counterclaim provided no allegation of any misuse of any process to support her abuse of process claim, nor did it provide any identification of who defendant was supposedly defamed to, or exactly what was allegedly said.

*B.* *Defendant's Deposition and Failures to Make Written Discovery*. Defendant was deposed on May 21, 2008. Remarkably, she claimed she had never seen her counterclaim before, in draft or in final. Rauch Dep. at 5-6, 10. She had no idea if any of the allegations were true, and quickly admitted many were baseless. *Id.* at 5-10. She was thoroughly impeached as to numerous key allegations. *See e.g. Id.* at 26, 34-37 and 62-70. She provided absurd explanations for false notations she had written on checks she had pocketed and false reportings that she had provided to plaintiff. *Id.* at 115-127. Significantly as to any potential "third amended" counterclaim, she had virtually no details as to how she had allegedly been libeled or slandered. *Id.* at 141-150.

Her interrogatory answers were similarly devoid of any detail as to how she had been defamed. Exhibit A.

*C.* *The Counterclaim Remains Defective*. Given the bad faith of her earlier actions, it is no surprise that defendant's counterclaims remain defective. Although she cleared up numerous allegations whose falsity she conceded at deposition, several key false allegations remain. For example, she continues to underpin her claims of emotional distress with an allegation that "threats to and harassment of [her] . . .escalated throughout May [2007]" (Second Amended Counterclaim "2 **CC**" at ¶ 56) – abuse she described at deposition as "[h]orrific voicemails calling, screaming, threatening me, threatening to take everything . . .". Rauch dep. at 62. However, after being confronted with telephone records establishing that plaintiff actually refused to speak with her during this period (*Id*. at 67-71) she conceded that:

> Q: Let's get down to what really happened. There are no phone calls at all from me to you during the month of May. May 31 you called me. I called you back. We talk for 29 minutes. That's our first contact during the month of May. Correct or not? You can check the phone bill.
>
> A: I'm sure that's correct since this is all coming back to me now. Yes, that's right.

*Id*. at 70.

More critically, her substantive claims are still infested with the same flaws she was noticed of in January. Her contract claims are still defective for her failure to allege that any damage was caused by plaintiff's alleged breach. She still refuses to allege any required detail to her defamation claims. She still fails to allege any distinct "overt act" to support her abuse of process claims, as required by Arizona law.

Defendant had two opportunities to state legally cognizable claims. She cannot. Dismissal of her contract and abuse of process claims should be without leave to amend. She should only be permitted amendment of her defamation claims to the extent she properly details those claims in her response.

## II. DEFENDANT'S CONTRACT CLAIMS MUST BE DISMISSED.

*A.* *Summary of Argument*. Pursuant to Civil Code § 3300, damages for breach of contract are limited to those "proximately caused" by the breach. The amended counterclaim still affirmatively alleges that defendant's only compensation would result from a split of any ultimate profit. However, it fails to allege that any profit would have ever been realized from this venture irrespective of any breach by plaintiff. As such, no damages could have been "proximately caused" by any alleged breach.

*B.* *The Law*. As indicated, Civil Code § 3300 provides that the measure of damages for any breach of contract is limited to "the amount which will compensate the party aggrieved for all of the detriment proximately caused thereby." (Emphasis added). The California courts have consistently enforced this limitation on contract damages. *See e.g.*, *Erlich v. Menezes,* 21 Cal. 4th 543, 550, 981 P.2d 978 (1999). "'Stated simply, the measure of damages for breach of a contract has been said to be the actual loss sustained by the party aggrieved as a result of the breach.'" *Barr v. Rhoades,* 274 Cal. App. 2d 852, 855, 79 Cal. Rptr. 505 (1969). Similarly, as this Court has held, "an element of a breach of fiduciary duty is damages proximately caused by the breach." *River Colony Estates G.P. v. Bayview Fin. Trad. Group, Inc.,* 2003 U.S. Dist. LEXIS 23555 *19 (S.D.Cal. 2003) (Gonzales D.J.).

"[N]ot only must the facts constituting the defendant's breach be stated with certainty, but there must also be an allegation that the damages to plaintiffs resulting therefrom is legally actionable." *Gautier v. General Telephone Co.,* 234 Cal. App. 2d 302, 305, 44 Cal. Rptr. 404 (1965). A*ccord Lortz v. Connell,* 273 Cal. App. 2d 286, 290, 78 Cal. Rptr 6 (1969); *Colvig v. RKO General, Inc.,* 232 Cal. App. 2d 56, 69, 42 Cal. Rptr 473 (1965). In the absence of a proper pleading of contract damages, "a general allegation of damages is insufficient against a special demurrer for uncertainty and/or unintelligibility." *Comstock v. Coronette Heating Supply Co., Inc.,* 245 P.2d. 357, 360 (Cal. App. 1952).

*C.* *No Pleading of Damages "Proximately Caused"*. Defendant has still failed to properly plead damage pursuant to any of her four contract or quasi-contract claims[1] In this respect, she twice affirmatively alleges that the only compensation she would have received absent any breach or termination by plaintiff, was an equal "split" of "all profits after sale of the new property." 2 **CC** ¶ 31. She moreover still concedes that even as early as "late April," "the potential for profiting from the project had been greatly reduced or eliminated." *Id.* ¶¶ 50-51. Yet, although asserting four separate contract-based claims, she apparently only seeks the originally "expected benefit from the Oral Agreement of the sale of the Olivenhain property at a profit." 2 **CC** ¶¶ 69, 78. *Critically, nowhere does defendant allege that the property would have ever been sold at a profit – or that she would have realized any compensation whatsoever in the absence of plaintiff's alleged breach and/or termination of the venture*.

The absence of this critical allegation – *i.e.*, that defendant would have obtained some profit in the absence of plaintiff's alleged breach and/or termination – was likely no mere oversight. More importantly, it does not appear curable by amendment. Specifically, the original motion to dismiss underscored this defect and detailed the reasons it could not be cured by any amendment consistent with Rule 11. Memorandum in Support of Motion to Dismiss at 4-5. Defendant's response to the original motion never contended she could properly allege that she would have realized a profit in the absence of plaintiff's breach. She has now repled these same claims with no allegation that plaintiff's alleged breach caused her damage. Enough is enough. Defendant's contract claims must be dismissed without leave to replead.

---

[1] Claims one, two, seven (breach of fiduciary duty) and eight (unjust enrichment). As to the latter claim, although the courts state the elements broadly, no defendant can have a claim for unjust enrichment where the plaintiff's actions were irrelevant to the loss of her time, and the pleading concedes the plaintiff failed to benefit anyway.

**III. <u>DEFENDANT'S MISCELLANEOUS "GOOD FAITH" CLAIM IS SUBSTANTIVELY DEFECTIVE</u>.**

*A. <u>Summary of Argument</u>.* For all intents and purposes, defendant re-states her basic breach of contract claim in two different ways, in two different claims for relief. The additional claim adds nothing more than defendant's assertion that she was threatened to settle (which allegations are irrelevant to her contract claims) and that plaintiff acted wilfully. As such, this "remix" does not provide any basis for an additional claim.

*B. <u>The Basic Rules of Law</u>.* "A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations". *Stop Loss Ins. Brokers Inc. v. Brown & Tollin Medical Group,* 143 Cal. App. 4th 1036, 1041, 49 Cal. Rptr. 3d 609 (2006), *quoting Aas v. Superior Court,* 24 Cal. 4th 627, 643, 12 P.3d 1125 (2000). "Instead, '[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies'". *Stop Loss Ins. Brokers,* 143 Cal. App. 4th at 1041, *quoting Aas,* 24 Cal. 4th at 643. *Accord In re Jurcich*, 238 F.3d 1202, 1206 (9th Cir. 2001); *Robinson Helicopter Co. Inc. v. Danacorp,* 34 Cal. 4th 979, 989-90, 102 P.3d 268 (2004).

Moreover, the implied covenant of good faith and fair dealing "'cannot impose any substantive duty or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Moreau v. Airfrance*, 356 F.3d 942, 954 (9th Cir. 2003), *quoting Guz v. Bectel Nat. Inc.,* 24 Cal. 4th 317, 350, 8 P.3d 1089 (2000); *Patriot Scientific Corp. v. Korodi*, 504 F.Supp.2d 952, 963 (S.D.Cal. 2007) (Rhoades, D.J.); *Benach v. County of Los Angeles,* 149 Cal. App. 4th 836, 855 n.12, 57 Cal. Rptr. 3d 363 (2007).

*C. <u>The Second Claim for Relief Still States No Cognizable Additional Theory of Recovery</u>.* It is difficult to ascertain what theories of relief are *supposed* to be stated by this claim beyond breach of contract. The second claim for relief alleges plaintiff's breach of contract to have been wilful (2 **CC** ¶¶ 68-75), made out of spite (*Id*. ¶ 76) and with knowledge

it was wrongful *Id*. ¶ 75. The only additional conduct alleged was plaintiff's purported threats regarding settlement. *Id*. ¶¶ 74, 77.

In order to state a tort claim for the breach of the implied covenant of good faith, defendant was obligated to allege the breach of some independent duty. She did not do so. Instead, she alleged wilfulness and added allegations of conduct unrelated to any breach of contract. However, without some allegation of an independent breach of duty, no additional claim for relief is stated by these counts and they must be dismissed.[2]

## IV. DEFENDANT FAILS TO STATE ANY CLAIM FOR ABUSE OF PROCESS.

*A.* *Summary of Argument*. The complaint was filed in Arizona State Court, with the result Arizona law must apply. Under Arizona law, no abuse of process can occur without some subsequent misuse or perversion of the process for improper purposes.

*B.* *The Elements for Abuse of Process Under Arizona Law.* "A transferee court must follow the choice of law rules of the transferor court." *In re American Continental/Lincoln Sav. & Loan Sec. Litig.*, 845 F.Supp. 1377, 1383 (D. Ariz. 1993) *aff'd* 102 F.3d 1524 (9th Cir. 1996), *citing Ferens v. John Deere Co.*, 494 U.S. 516, 519, 110 S.Ct. 1274, 1277 (1990). "In the absence of law to the contrary, Arizona follows the Restatement [of Laws.]" *Webster v. Culbertson*, 158 Ariz. 159, 162, 761 P.2d 1063, 1066 (1988). "The rights and liabilities of the parties for. . .abuse of process are determined by the local laws of the State where the proceeding complained of occurred, unless, with respect to the particular issue, some other State has a more significant relationship. . ." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 155; *Accord American Continental*, 845 F.Supp. at 1384.

"The essence of the tort of abuse of process is the perversion of legal proceedings properly set in motion to a purpose for which it was not intended." *Blue Goose Growers, Inc.*

---

[2] Defendant independently alleges a breach of fiduciary duty in her seventh claim for relief. That latter claim is only attacked because of the absence of any allegation of proximately caused damage, an issue addressed in the preceding point.

*v. Yuma Groves, Inc.*, 641 F.2d 695, 696 (9th Cir. 1981). The tort "requires an overt act other than the initiation of a lawsuit to affect the illegitimate end." *American Continental*, 845 F.Supp. at 1385; *Neinstedt v. Wetzel*, 133 Ariz., 348, 651 P.2d 876, 881 (App. 1982). Bad intentions alone are insufficient. *Id.*

"'It is the subsequent misuse which constitute the misconduct for which liability is imposed'". *American Continental*, 845 F.Supp. at 1385, *quoting Neinstedt,* 651 P.2d at 881. An act occurring prior to litigation is insufficient to constitute the tort. *Blue Goose Groves, Inc.*, 641 F.2d at 697.

*C.* *<u>Defendant Still Fails to Allege Any Subsequent Misuse of Any Process</u>*. Defendant continues to allege that plaintiff "is willfully using this civil action and has threatened other criminal and/or regulatory action primarily to accomplish the ulterior purpose of forcing [her] to alter the terms of the Oral Agreement to his benefit and her detriment." 2 **CC** ¶ 88. She likewise alleged that any threats terminated upon her retention of counsel in June 2007. 2 **CC** ¶ 58. Accordingly, defendant alleges nothing more than "bad intentions". Critically, she alleges no misuse of the complaint subsequent to its filing (in August). As such, the abuse of process claim must be dismissed. [3]

## V. <u>DEFENDANT'S DEFAMATION CLAIMS STILL FAIL FOR LACK OF SPECIFICITY</u>.

*A* *<u>Summary of Argument</u>*. Libel and slander are disfavored actions under federal practice. The modern rule of federal practice requires specification of the defamatory statements, and to whom they were made. These claims must be dismissed as defendant has continued to provide any such detail.

---

[3] In this respect, the counterclaim does not even properly allege "bad intentions". The complaint specifically, and properly, seeks to enforce a settlement to which defendant agreed in June 2007. This is undisputedly a proper purpose for litigation.

*B.* *<u>Modern Federal Defamation Pleading Standards</u>.* "Although special pleading requirements have not been set out in the federal rules for libel and slander actions, the standard for successfully pleading defamation tends to be more stringent than applicable to most other substantive claims because of the historically unfavored nature of this type of action, the First Amendment implications of many of these cases, and the desire to discourage what some believe to be all too frequently vexatious litigation." 5 *Wright and Miller*, FEDERAL PRACTICE AND PROCEDURE, §1245 at 429.

Accordingly, "[i]n an action for slander or libel the words alleged to be defamatory must be pleaded and proved." *Holliday v. Great Atlantic and Pacific Tea, Co.*, 256 F.2d 297, 302 (8th Cir. 1958); *Blanck v. Hager*, 360 F.Supp.2d 1137, 1159-60 (D. Nev. 2005); *Thomas v. St. Louis Board of Educ.*, 933 F.Supp. 817, 821 (E.D. Mo. 1996) (necessary "to allege in *haec verba* the exact words which are alleged to be defamatory"); *Jones v. Capital City/ABC, Inc.*, 874 F.Supp. 626, 628 (S.D.N.Y. 1995); *Ersek v. Township of Springfield*, 822 F.Supp. 218, 223 (E.D.Pa. 1993), a*ff'd* 102 F.3d 1979 (3rd Cir., 1996) ("what allegedly defamatory statements were made by whom and to whom").

*C.* *<u>The Amended Counterclaim Still Lacks any Specificity as to what the Defamatory Statements Were, When They Were Made or to Whom They Were Made</u>.* Although the amended counterclaim still alleges defamatory statements and letters to subcontractors accusing defendant of criminal conspiratorial actions, it still fails to allege precisely what was said. As indicated, defendant was unable to provide any details as to precisely how she was defamed at her deposition or her interrogatory answer. Rauch Dep. at 141-49; Exhibit A. Specifically, never having spoken to any but one of the persons she was allegedly slandered to, she could not identify what was allegedly said about her. *Id*. She was similarly unable to identify the writings that purportedly libeled her. *Id*.

Again, enough is enough! Defendant should not have asserted claims for slander without verifying precisely what was said, when and to whom. She should not have sued for libel without obtaining a copy of the allegedly libelous writing, and ensuring it was not true. It is not enough for defendant to claim, as her counsel does now, that plaintiff should know what he said or that she should be provided an opportunity to discover if she actually has a claim. Exhibit A. Such argument stands Rule 11 on its ear. If defendant wishes to amend, she must be required to precisely allege the exact content of any purportedly defamatory statements, to whom they were made and when they were made *in her response*.[4] Such will serve to eliminate frivolous allegations, permit accurate pleading of the truth of the statements and provide a basis for the assertion of relevant privileges.

## VI. DEFENDANT'S UNTIMELY JURY DEMAND SHOULD BE STRICKEN.

A. *Procedural Facts*. The Complaint was filed in this action on August 28, 2007 in Arizona State Court. Service was accepted by defendant's counsel on August 29, which, by rule, obligated defendant to answer on or before September 28, 2007. 16 A.R.S. Rules of Civil Procedure, Rule 4.2(m).

Thereafter, defendant removed this case to Arizona federal court on September 26, 2007. She filed her answer on October 3, 2007. Subsequently, the parties stipulated to a settlement conference and a transfer to this district in the event no settlement was reached. However, that stipulation explicitly provided that "nothing in this Stipulation shall revive any procedural right previously waived by defendant prior to October 19, 2007." Joint Stipulation for Settlement Conference, dated October 31, 2007.

Notwithstanding the foregoing, defendant made no demand for a trial by jury until December 21, 2007, demands which she repeated multiple times in her amended answer and counterclaim in May and June 2008.

---

4 Additionally, prior to any amendment, her counsel must verify, as required by Rule 11, that any statement alleged to be defamatory is actually false.

B. *The Law and Appropriate Disposition*. In federal court, a trial by jury must be demanded "in writing at any time after the commencement of the action and not later than 10-days after the service of the last pleading directed to such issue." F.R.Civ.P. Rule 38(b). "The failure of a party to serve and file a demand as required by this Rule, constitutes a waiver of trial by jury". Rule 38(d).

"The matter becomes more complicated if a counterclaim is asserted, since this is a pleading which necessitates a reply". 9 Wright & Miller, FEDERAL PRACTICE OF PROCEDURE, § 2320 at 239. However, the initial filing of a jury demand with a counterclaim is not effective to obtain a trial by jury as to the original issues. As indicated by Professors Wright and Miller:

> However, if the counterclaim and reply raise new issues that were not contained in the Complaint and Answer, a demand served more than 10-days after the Answer, but within 10-day after the reply, is effective only for the issues raised in the counterclaim and reply and not those in the Complaint and Answer.

(emphasis added) *Id*. at 240-41. *See also e.g. Bogosin v. Woloohojian Realty Corp.*, 323 F.3d 55, (1st Cir. 2003).

Nor does the adding of a single claim based on the same facts open up any new time to request a jury. 9 *Wright & Miller* § 2320 at 245. Specifically, "if the amended or supplemental pleading does not raise a new issue, but merely changes the theory of the case or the relief requested, then a jury trial request waived by a failure to make demand in connection with the original pleading is not revived." *Id*.

Accordingly, should defendant's counterclaim be dismissed, her multiple jury demands ought to be stricken. In the event any of the amended counterclaim survives this motion, any subsequent motion to dismiss a "third amended" pleading and summary judgment, the Court may then determine what, if any, issue may be triable by jury. The Court will also resolve

whether or not such proceeding should follow a completion of any trial to the Court. Notice is rendered at this time to avoid any waiver or misleading.

**CONCLUSION**

The amended counterclaim is again plainly dominated by improperly pleaded claims. Defendant's contract and abuse of process claims are hopeless and must be dismissed with prejudice. Defendant should only be permitted leave to refile her defamation claims if she details exactly what those claims are in her response.

Dated: June 24, 2008.

Respectfully Submitted:

By: /s/ Russell Piccoli
RUSSELL PICCOLI
rxp@mwmf.com

Appearing Pro Se

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing paper was served upon all counsel of record by serving them electronically at kdenworth@limandri.com (Charles Limandri)

Phoenix, Arizona, this 24th day of June 2008

/s/ Russell Piccoli
RUSSELL PICCOLI